Civil Action Nos. 3:21-cv-01974-X, 3:21-cv-01979-S

---

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS**

---

**In re: Highland Capital Management, L.P.,**
*Debtor.*

---

**The Charitable DAF Fund, L.P.; CLO Holdco, Ltd.; Mark Patrick; Sbaiti &
Company PLLC; Mazin A Sbaiti; Jonathan Bridges; and James Dondero,**
*Appellants,*

v.

**Highland Capital Management, L.P.,**
*Appellee.*

---

On Appeal from the United States Bankruptcy Court for
the Northern District of Texas, Case No. 19-34054
Hon. Stacey G.C. Jernigan, Presiding

---

**BRIEF OF APPELLANT JAMES DONDERO**

---

Jeffrey S. Levinger
LEVINGER PC
1700 Pacific Avenue
Suite 2390
Dallas, Texas 75201
(214) 855-6817

John T. Wilson IV
Clay M. Taylor
Bryan C. Assink
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900

**ATTORNEYS FOR APPELLANT JAMES DONDERO**

## CORPORATE DISCLOSURE STATEMENT

Appellant, James Dondero ("Mr. Dondero"), is a natural person and need not make a corporate disclosure. The other appellants, The Charitable DAF Fund, L.P.; CLO Holdco, Ltd.; Mark Patrick; Sbaiti & Company PLLC; Mazin A. Sbaiti; and Jonathan Bridges, are separately represented and will be filing their own corporate disclosure statement to the extent necessary. The Reorganized Debtor, Highland Capital Management, L.P., is a party to this appeal.

## LOCAL RULE 8012.1 CERTIFICATE OF INTERESTED PERSONS

Appellant, Mr. Dondero, certifies that the following list is, to the best of his knowledge, a complete list of all persons, associations of persons, firms, partnerships, corporations, guarantors, insurers, affiliates, parent corporations, and/or other legal entities who or which are financially interested in the outcome of this appeal.

1. James Dondero (Appellant)

   Counsel:
   Jeffrey S. Levinger
   LEVINGER PC

   Clay M. Taylor
   John T. Wilson IV
   Bryan C. Assink
   BONDS ELLIS EPPICH SCHAFER JONES LLP

2. The Charitable DAF Fund, L.P.;
   CLO Holdco Ltd.;
   Mark Patrick;

Sbaiti & Company PLLC;
Mazin A. Sbaiti; and
Jonathan Bridges (the other Appellants)

Counsel:
Erik S. Jaffe
Brian J. Field
SCHAERR | JAFFE LLP

Mazin A. Sbaiti
Jonathan Bridges
SBAITI & COMPANY PLLC

3. Highland Capital Management, L.P. (Reorganized Debtor & Appellee)

Counsel:
Melissa S. Hayward
Zachary Z. Annable
HAYWARD PLLC

Jeffrey Pomerantz
Ira Kharasch
John A. Morris
Gregory Demo
Hayley Winograd
PACHULSKI STANG ZIEHL & JONES LLP

# TABLE OF CONTENTS

**CORPORATE DISCLOSURE STATEMENT**........................................ i

**LOCAL RULE 8012.1 CERTIFICATE OF INTERESTED PERSONS** ........... i

**TABLE OF CONTENTS** ......................................................... iii

**TABLE OF AUTHORITIES** .....................................................v

**JURISDICTIONAL STATEMENT**............................................... 1

**STATEMENT REGARDING ORAL ARGUMENT** ........................... 2

**ISSUES PRESENTED**............................................................ 2

**INTRODUCTION**................................................................. 5

**STANDARD OF REVIEW** ....................................................... 7

**STATEMENT OF THE CASE**..................................................... 8

**SUMMARY OF THE ARGUMENT** ................................................ 18

**ARGUMENT** ..................................................................... 20

I.   THE BANKRUPTCY COURT ERRED BY HOLDING MR. DONDERO IN CONTEMPT FOR ACTIONS THAT WERE TAKEN BY THE OTHER APPELLANTS. .............................. 20

**A.  A person cannot be held in contempt for actions taken by others, and here Mr. Dondero was not a plaintiff in the DAF Action in which the Seery Motion was filed.**.......................................................... 21

**B.  There was no evidence that Mr. Dondero was a control person for the DAF or CLO Holdco or that he authorized either of them to file the Seery Motion, and the evidence is to the contrary.**................................. 22

    **1.  The evidence at the Show Cause hearing established that Mr. Patrick was the sole control person for the DAF and CLO Holdco.** ...................... 23

    **2.  The evidence established that Mr. Dondero had no authority or control over the DAF or CLO Holdco, and therefore cannot be held in contempt for actions they took**................................................ 25

II.  THE BANKRUPTCY COURT ERRED BY HOLDING MR. DONDERO IN CONTEMPT *SUA SPONTE*, AND THE COURT'S HOLDING VIOLATED MR. DONDERO'S DUE PROCESS RIGHTS. ............................................................................ 35

**A.  A bankruptcy court cannot impose civil contempt sanctions *sua sponte.*** 36

**B.  The bankruptcy court erred by holding Mr. Dondero in contempt *sua sponte*.**.................................................................... 39

**C.   The bankruptcy court violated Mr. Dondero's due process rights by holding him in contempt despite not finding him to be an "authorizing person" of the Seery Motion.**...............................................................42

III.  THE BANKRUPTCY COURT IMPROPERLY ASSESSED SANCTIONS AGAINST MR. DONDERO. ...............................................................................................43

   **A.   The bankruptcy court erred in imposing a $239,655 sanction consisting of attorney's fees that did not result from any contemptuous conduct.** ...........................................................................44

   **B.   The bankruptcy court lacked authority to assess a sanction that punishes Mr. Dondero for exercising his right to appeal.**...........................44

**CONCLUSION**...................................................................................47

**CERTIFICATE OF SERVICE** ........................................................49

**CERTIFICATE OF COMPLIANCE WITH RULE 8015(H)**...........................49

# TABLE OF AUTHORITIES

**Cases**

*Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574 (5th Cir. 2000) ..............7, 26

*Chambers v. Nasco, Inc.*, 501 U.S. 57 (1991) ........................................46

*Clark v. Boynton*, 362 F.2d 992 (5th Cir. 1966) ......................................43

*Conner v. Travis County*, 209 F.3d 794 (5th Cir. 2000)...................................46, 47

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)....................................7, 45

*Ex parte Chambers*, 898 S.W.2d 257 (Tex. 1995) ...................................26

*Fed. Home Loan Mortg. Corp. v. Berbod Realty Assocs., L.P.*,
     1994 U.S. Dist. LEXIS 21421 (S.D.N.Y. 1994) ...........................................29

*Franklin v. Elliott (In re Elliot)*,
     No. 93-1537, 1994 U.S. App. LEXIS 41963 (5th Cir. 1994) ................46, 47

*Grossman v. Belridge Grp. (In re Lothian Oil, Inc.)*,
     531 F. App'x 428 (5th Cir. 2013)...........................................................38, 45

*Hornbeck Offshore Services, L.L.C. v. Salazar*, 713 F.3d 787 (5th Cir. 2013).........7

*Ingalls v. Thompson (In re Bradley)*, 588 F.3d 254 (5th Cir. 2009)...................7, 43

*In re First City Bancorporation*, 282 F.3d 864 (5th Cir. 2002) ............................43

*In re Gervin*, 337 B.R. 854 (W.D. Tex. 2005).........................................38

*In re Hipp, Inc.*, 895 F.2d 1503 (5th Cir. 1990).........................................37, 38, 45

*Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821 (1994) ....38, 42

*Law Office of Francis O'Reilly, Esq. v. Silene Fin. L.P. (In re DiBattista)*, No. 20-cv-4620, 2020 U.S. Dist. LEXIS 222877 (S.D.N.Y. Nov. 25, 2020)......................47

*MacNeil v. United States*, 236 F.2d 149 (1st Cir. 1956).........................................36

*N.L.R.B. v. Maine Caterers, Inc.*, 732 F.2d 689 (1st Cir. 1984)..............................26

*Norman Bridge Drug Co. v. Banner*, 529 F.2d 822 (5th Cir. 1976) ......................21

*Official Unsecured Creditors' Comm. of Gen. Homes Corp. v. Am. Sav. & Loan
  Ass'n (In re Gen. Homes Corp.)*, 181 B.R. 870 (Bankr. S.D. Tex. 1994).....37

*Petroleos Mexicanos v. Crawford Enters., Inc.*,
  826 F.2d 392 (5th Cir. 1987) .........................................................1, 20, 21, 36

*Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries, Inc.*,
  177 F.3d 380 (5th Cir. 1999) .........................................................20

*Placid Refining Company v. Terrebonne Fuel and Lube, Inc.*,
  108 F.3d 609 (5th Cir. 1997) .........................................................20

*San Antonio Bar Ass'n v. Guardian Abstract & Title Co.*,
  291 S.W.2d 697 (Tex. 1956) .........................................................25

*SEC v. Am. Bd. of Trade, Inc.*, 830 F.2d 431 (2d Cir. 1987)...................................37

*Spallone v. United States*, 493 U.S. 265 (1990) ......................................................43

*Spiller* v. *Ella Smithers Geriatic Ctr.*, 939 F.2d 339 (5th Cir. 1990)....................42

*Travelhost, Inc. v. Blandford*, 68 F.3d 958 (5th Cir. 1995)..............................21, 43

*United States v. Russotti*, 746 F.2d 945 (2d Cir. 1984) ..........................................36

*United States v. United Mine Workers*, 330 U.S. 258 (1947)..................................38

*Wilson v. United States,* 221 U.S. 361 (1911) ..................................................25, 26

**Statutes**

28 U.S.C. § 158 .................................................................................................1

Cayman Islands Exempted Limited Partnership Act.................................27

# JURISDICTIONAL STATEMENT

The Contempt Order at issue in this appeal is final and appealable because it imposes final sanctions against Mr. Dondero and the other appellants. *See Petroleos Mexicanos v. Crawford Enters., Inc.*, 826 F.2d 392, 398, 400 (5th Cir. 1987). As a result, this Court has jurisdiction over the appeal. *See id.*; 28 U.S.C. § 158(a)(1) ("[t]he district courts of the United States shall have jurisdiction to hear appeals … from final orders.").

On April 23, 2021, the Debtor, Highland Capital Management, L.P. ("Debtor"), filed (a) *Debtor's Motion for an Order Requiring the Violators to Show Cause Why They Should Not be Held on Civil Contempt for Violating Two Court Orders* and (b) *Debtor's Memorandum of Law in Support of Motion for an Order Requiring the Violators to Show Cause Why They Should Not Be Held in Civil Contempt for Violating Two Court Orders* (collectively, the "Contempt Motion"). [R 004045][1] On April 29, 2021, the bankruptcy court issued a show cause order requiring the Appellants to appear on June 8, 2021 for a hearing on the Contempt Motion. [R004785]

---

[1] Unless otherwise indicated, record citations in this brief will refer to the record assembled and transmitted to this Court in Civil Action No. 3:21-cv-01974-X (the "DAF Appeal Record"). If a document is not included in the DAF Appeal Record, record citations will instead be made to the record transmitted in Mr. Dondero's appeal, civil action no. 3:21-cv-01979-S (the "Dondero Appeal Record") and identified as such.

The bankruptcy court heard the Contempt Motion on June 8, 2021 as scheduled.  On August 4, 2021, the bankruptcy court issued its *Memorandum Opinion and Order Holding Certain Parties and their Attorneys in Civil Contempt of Court for Violations of Bankruptcy Court Orders* (the "Contempt Order"). [R 000009] The Contempt Order contained the bankruptcy court's findings of fact and conclusions of law and is the subject of this appeal.

On August 16, 2021, Mr. Dondero timely filed his Notice of Appeal of the Contempt Order.  [Dondero R 000001][2]

## STATEMENT REGARDING ORAL ARGUMENT

Mr. Dondero respectfully requests oral argument.  This appeal presents important issues regarding the propriety of excessive contempt sanctions imposed in this case and the factual record necessary for a court to impose such excessive sanctions against Mr. Dondero for actions taken by others.

## ISSUES PRESENTED[3]

1.     Did the bankruptcy court err in holding The Charitable DAF Fund, L.P. ("DAF"), CLO Holdco, Ltd. ("CLO Holdco"), Mark Patrick ("Mr. Patrick"), Sbaiti & Company PLLC ("Sbaiti Firm"), Mazin Sbaiti ("Mr. Sbaiti"), and Jonathan Bridges ("Mr. Bridges," and collectively, the "Other Appellants") and James

---

[2] On the same day, the Other Appellants filed a Notice of Appeal. Mr. Dondero's appeal was subsequently consolidated with the Other Appellants' appeal in this action.

[3] Mr. Dondero also joins in and adopts the Issues Presented by the Other Appellants in their opening brief.

Dondero ("Mr. Dondero," and collectively with the Other Appellants, the "Appellants") in contempt for purported violations of the bankruptcy court's January 2020 Corporate Governance Order and July 2020 Seery CEO Order?

2.    Did the bankruptcy court err in holding Mr. Dondero in contempt of the January 2020 Corporate Governance Order and July 2020 Seery CEO Order when the Debtor presented no evidence establishing that Mr. Dondero:

>    A.    was a control or authorizing person of the entities (DAF and CLO Holdco) that filed the allegedly violative Seery Motion;
>
>    B.    was a person legally authorized to direct or control these entities; and
>
>    C.    caused the DAF or CLO Holdco to take any action or had the authority to make any decisions on behalf of the entities, including filing the Seery Motion in the DAF Action?

3.    Did the bankruptcy court err in holding Mr. Dondero in contempt when the bankruptcy court did not find that Mr. Dondero authorized the DAF and CLO Holdco to file the Seery Motion, and neither the Contempt Motion nor the Show Cause Order indicated that Mr. Dondero could be held in contempt if he was not an "authorizing person" responsible for the Seery Motion? Specifically:

>    A.    Did the bankruptcy court lack authority to impose civil contempt sanctions against Mr. Dondero *sua sponte*?

B.    Did the bankruptcy court violate Mr. Dondero's due process rights by holding him in contempt despite not finding him to be an "authorizing person" of the Seery Motion?

4.    Did the bankruptcy court err in imposing substantial monetary sanctions against the Appellants when, among other deficiencies, the Debtor failed to demonstrate that it or its business sustained any financial harm, damages, interruption, or losses resulting from the purported violations, especially given that the Seery Motion was denied by the District Court without prejudice only one day after it was filed?

5.    Did the bankruptcy court err in imposing a "$100,000 sanction" for each level of appeal of the Contempt Order that the Appellants may exercise their rights to pursue?

## INTRODUCTION

The Contempt Order at issue in this appeal is unprecedented and insupportable. In this order, the bankruptcy court, without any legal authority or justification, held Mr. Dondero in contempt *sua sponte* for conduct that (i) he had no involvement in; and (ii) was taken by two corporate entities that he did not control and did not authorize to act.

In holding Mr. Dondero in contempt, the bankruptcy court disregarded the undisputed evidence, the applicable law, and the Debtor's own Motion for Contempt. Going far beyond even its own Show Cause Order, the bankruptcy court held Mr. Dondero in contempt *sua sponte*, apparently for allegedly putting in motion a process that the court did not like. The bankruptcy court abused its discretion in holding Mr. Dondero in contempt, and its factual findings were clearly erroneous. This unprecedented order must be reversed in its entirety as to Mr. Dondero.

The bankruptcy court's disregard for proper procedure, the absence of proof, and the applicable law is particularly troubling given the posture of the underlying bankruptcy case. A litigation storm has been brewing between the Debtor and associated trustees established under the bankruptcy plan on one side, and Mr. Dondero and certain of his affiliated entities on the other. One legal theory the plan trustee has espoused is that Mr. Dondero is the alter-ego of certain entities, and indeed an alter-ego of the Debtor itself. The battle over these allegations is going to

be long and hard-fought. And as this Court knows, a party asserting an alter-ego theory of liability has a high burden of proving very stringent elements. That is <u>not</u> before this Court in this appeal, but it bears mentioning.

Why? Because in this appeal, as to Mr. Dondero, the underlying bankruptcy court decision blows through the procedural, evidentiary, and element-by-element approach that a court or a fact finder must employ to conclude that an individual can be held responsible for the acts of entirely separate, third-party corporate actors. And here, the bankruptcy court used its Contempt Order to conclude, despite the unrefuted evidence to the contrary, that Mr. Dondero should be held in contempt despite not being a control person for either of the corporate entities that took the allegedly offending acts. The bankruptcy court's disregard of this process is particularly alarming. The implications of the court's indifference to proper procedure and due process—particularly for Mr. Dondero, both in this appeal and in the underlying case—cannot be overstated. The bankruptcy court's actions were improper and not supported by the evidence.

Finally, the court's sizeable monetary sanction of $239,655.00 is not supported by either the evidence or the law. Equally egregious is the court's unlawful attempt to take away Appellants' right to appeal by imposing an *additional* $100,000 sanction against Appellants for the pursuit of any unsuccessful appeal of the Contempt Order. These improper and unlawful sanctions must be reversed.

## STANDARD OF REVIEW

In the appeal of a contempt order issued by a bankruptcy court, the district court reviews the bankruptcy court's findings of fact for clear error, and its legal conclusions de novo. *Ingalls v. Thompson (In re Bradley)*, 588 F.3d 254, 261 (5th Cir. 2009). A bankruptcy court's assessment of monetary sanctions for contempt is reviewed for abuse of discretion. *Id.*; *see also Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 578 (5th Cir. 2000). A bankruptcy court "would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 405 (1990).

Although appellate courts review contempt findings for abuse of discretion, their "review is not perfunctory." *Hornbeck Offshore Services, L.L.C. v. Salazar*, 713 F.3d 787, 792 (5th Cir. 2013). "Facts found by the [trial] court will be accepted as true unless clearly erroneous, but 'the interpretation of the scope of the injunctive order[] is a question of law to be determined by the independent judgment of this Court.'" *Id.* (citation omitted, brackets in original).

## STATEMENT OF THE CASE[4]

**A.    The history of the Bankruptcy Case.**

On October 16, 2019, Highland Capital Management, L.P. (the "Debtor")
filed a voluntary petition for relief in the U.S. Bankruptcy Court for the District of
Delaware, Case No. 19-12239 (the "Bankruptcy Case").  [R 000040]  At the time,
James D. Dondero, the Debtor's co-founder, was the Debtor's President and Chief
Executive Officer and signed the voluntary petition for relief as the President of
Strand Advisors, Inc., the Debtor's General Partner.  [R 000458-59] The Bankruptcy
Case was later transferred to the U.S. Bankruptcy Court for the Northern District of
Texas, Dallas Division.  [R 000044][5]

**B.    The Corporate Governance Order and Seery CEO Order.**

In January 2020, the bankruptcy court issued an order approving an agreement
that allowed for the appointment of a three-member independent board for the
Debtor's general partner (the "Corporate Governance Order").  [R 000544]  James

---

[4] The facts presented here are those most relevant to the issues applicable to Mr. Dondero. They
do not include every fact relevant to each of the issues that this Court will consider on appeal
because those will be more fully articulated by the Other Appellants in their brief.

[5] On March 18, 2021, Mr. Dondero and certain of his affiliated entities filed a Motion to Recuse
Bankruptcy Judge Jernigan Pursuant to 28 U.S.C. § 455. [Dondero R 001271] The motion alleges
that Judge Jernigan formed a negative opinion of Mr. Dondero during a prior bankruptcy case and
her ability to impartially oversee the Debtor's bankruptcy case—including many related adversary
proceedings involving Mr. Dondero and certain of his affiliates—has been seriously compromised.
[Dondero R 001271-1311] Judge Jernigan denied the recusal motion, but her order has been
appealed and that appeal remains pending before this Court.

P. Seery, Jr. was a member of the Board.  [*Id.*]  Six months later, in July 2020, the bankruptcy court approved the retention of Mr. Seery as the Debtor's CEO, allegedly retroactive to March 2020 (the "Seery CEO Order"). [R 000582] Both the Corporate Governance Order and the Seery CEO Order included a provision stating that "[n]o entity may commence or pursue a claim or cause of action of any kind against Mr. Seery relating in any way to his role as the chief executive officer and chief restructuring officer of the Debtor without the Bankruptcy Court (i) first determining after notice that such claim or cause of action represents a colorable claim of willful misconduct or gross negligence against Mr. Seery, and (ii) specifically authorizing such entity to bring such claim." [R 000546-47, 000584]

## C.    Certain of the Other Appellants file an action in the United States District Court for the Northern District of Texas

On April 12, 2021, certain of the Other Appellants (specifically, the DAF and CLO Holdco), acting though their counsel (the Sbaiti Firm and its attorneys Mr. Sbaiti and Mr. Bridges), filed a complaint in the United States District Court for the Northern District of Texas against the Debtor for causes of actions related to various post-petition actions and inactions taken by the Debtor during the Bankruptcy Case (the "DAF Action"). [R 005010]

In essence, the DAF Action alleges that the Debtor, as a registered investment advisor, breached its fiduciary duty under the Investment Advisors Act of 1940 by, among other things, misrepresenting the value of the investments held by Highland

CLO Funding, Ltd. ("HCLOF") in connection with a settlement with one of HCLOF's interest holders, a series of entities referred to as HarbourVest[6]. [R 005011] HarbourVest owned 49.98% of the interests of HCLOF. [*Id.*] CLO Holdco, one of the plaintiffs in the DAF Action, was the other primary interest holder in HCLOF, holding 49.02% of its interests. [R 005015] The Debtor also held a 0.6% interest in HCLOF at the time of the settlement. [R.005016] One term of the settlement required HarbourVest to convey its entire interest in HCLOF to the Debtor. [R 005017] The DAF Action alleges that, at the time of the Harbourvest settlement hearing in mid-January 2021, the Debtor knew but failed to disclose that the net asset value of HCLOF had grown to nearly double the value it represented to the bankruptcy court and parties during the hearing.[7] [R 005011, 005022]

The filing of the DAF Action was authorized and directed by the control person of the DAF and CLO Holdco, Mr. Patrick. [R 009907] Before the DAF Action was filed, Mr. Patrick had requested that Mr. Dondero provide certain factual

---

[6] "The simple thesis of this claim is that Defendants HCFA and HCM [the Debtor and its financial advisors] breached their fiduciary duties by (i) insider trading with Harbourvest and concealing the rising NAV of the underlying assets—i.e., trading with Harbourvest on superior, non-public information that was neither revealed to Harbourvest nor to Plaintiff; (ii) concealing the value of the Harbourvest Interests; and (iii) diverting the investment opportunity in the Harbourvest entities to HCM [the Debtor] (or its designee) without offering it to or making it available to Plaintiff or the DAF." [R 004111]

[7] "The HCLOF net asset value had reached $86,440,024 as of December 31, 2021, which means that by the time Seery was testifying in the Bankruptcy Court on January 14, 2021 [that] the fair market value of the Harbourvest Assets was $22.5 million, [] it was actually closer to $43,202,724. Seery, speaking on behalf of HCM [the Debtor], knew of the distinction in value." [R 004120]

---

information regarding the Harbourvest settlement to the Sbaiti Firm to assist it in preparing the DAF Action. [R 009908-09]

One week later, on April 19, 2021, the DAF and CLO Holdco filed a motion with the District Court seeking a determination as to whether Mr. Seery, as the Debtor's CEO, could legally be added as a defendant in the DAF Action in compliance with the bankruptcy court's Corporate Governance Order and Seery CEO Order (the "Seery Motion"). [R 005036] Mr. Dondero had no involvement with the preparation of the Seery Motion or the decision to file it. [R 010010-11, 010013-14]

On April 20, 2021, the day after the Seery Motion was filed, the District Court entered an order denying the Seery Motion without prejudice. [R 002692] The order indicated it was premature to adjudicate the Seery Motion because the Debtor had not yet answered or otherwise appeared in the DAF Action. [*Id.*] The Seery Motion was not re-filed after it was denied, and there is no evidence that the DAF and CLO Holdco intend to do so. The DAF Action remains pending in the District Court.

**D.    The Contempt Motion and Order to Show Cause.**

Even though the District Court denied the Seery Motion only a day after it was filed, three days later, on April 23, 2021, the Debtor filed a motion with the bankruptcy court seeking to hold the following parties in contempt for having filed the now-moot Seery Motion in the DAF Action (the "Contempt Motion"):

- The DAF;

- CLO Holdco;

- The persons who authorized The DAF and CLO Holdco to file the Seery Motion; and

- The Sbaiti Firm and its attorneys, Mr. Sbaiti and Mr. Bridges.

[R 001136-1169] The Contempt Motion referred to these parties as the "Violators."

[R 001137]

In the Contempt Motion, the Debtor asserted that the filing of the Seery Motion in the DAF Action violated the "gatekeeper" provisions contained in the Corporate Governance Order and Seery CEO Order, which state:

> No entity may commence or pursue a claim or cause of action of any kind against Mr. Seery relating in any way to his role as the chief executive officer and chief restructuring officer of the Debtor without the Bankruptcy Court (i) first determining after notice that such claim or cause of action represents a colorable claim of willful misconduct or gross negligence against Mr. Seery, and (ii) specifically authorizing such entity to bring such claim. The Bankruptcy Court shall have sole jurisdiction to adjudicate any such claim for which approval of the Court to commence or pursue has been granted.

[R 001150]

Notably, Mr. Dondero was *not* included in the definition of "Violators" contained in the Contempt Motion and its proposed order. [R 001137, 001142, 001148, 001808, 001813-16] The Contempt Motion thus did not specifically request that Mr. Dondero be held in contempt for any conduct. Instead, the Contempt Motion requested that the bankruptcy court hold in contempt only (i) the entities that filed

the Seery Motion (i.e., the DAF and CLO Holdco as plaintiffs in the DAF Action);
(ii) the person(s) who *authorized* the DAF and CLO Holdco to file the Seery Motion
in the DAF Action; and (iii) the Sbaiti Firm and its attorneys as counsel to the DAF
and CLO Holdco. [*Id.*]

On April 29, 2021, only a few days later and before any responses to the
Contempt Motion could be filed, the bankruptcy court issued an Order to Show
Cause (the "Show Cause Order") based on the Contempt Motion. [R 001876] The
Show Cause Order commanded that the parties named in the Contempt Motion (i.e.,
those referred to in the Contempt Motion and Show Cause Order as alleged
"Violators") must personally appear before the bankruptcy court to show cause why
they should not be held in contempt for allegedly violating two bankruptcy court
orders by filing the Seery Motion in the DAF Action.[8] [R 001876-78]

The Show Cause Order did not suggest, and the Contempt Motion did not
allege, that the filing of the DAF Action against the Debtor violated any bankruptcy
court orders. [R 001876-78]

Although Mr. Dondero was not a party to the DAF, and despite the fact that
Mr. Dondero was not specifically named in the Contempt Motion or proposed order
as one who must personally appear before the bankruptcy court to "show cause" [R

---

[8] Tellingly, the Show Cause Order already labeled each of the persons and entities listed above as
being "Violators" before the court heard any evidence. [R 001876-78]

001137, 001142, 001148, 001813-16], the bankruptcy court, *sua sponte* and without prior notice to Mr. Dondero, also included in the Show Cause Order a directive that Mr. Dondero appear in person at the hearing.[9] [R 001876-78]

## E.   The evidence at the Show Cause hearing.

On June 8, 2021, the bankruptcy court conducted an evidentiary hearing on the Contempt Motion (along with other items such as a motion for reconsideration of certain of the terms of the Seery CEO Order). [R 009805] Only two witnesses were called at the contempt hearing: Mr. Patrick and Mr. Dondero. [R 009899, 009951, 010101][10]

Generally, the documentary evidence admitted by the parties focused on the corporate structure of the DAF and CLO Holdco and the circumstances surrounding the appointment of Mr. Patrick as the control person for those entities. Of the 44 exhibits offered into evidence by the Debtor, 11 were pleadings filed in the bankruptcy case or in the DAF Action, two were Zoom instructions for depositions taken in connection with the Contempt Motion, three were e-mail communications between the Debtor's counsel and counsel for the Other Appellants, and three were

---

[9] Notably, the proposed order submitted by the Debtor did not include a provision requiring Mr. Dondero to personally appear at any show cause hearing. [R 001813-16]

[10] In a subsequent virtual hearing, the bankruptcy court heard additional argument regarding the motion to reconsider the Seery CEO Order. During that hearing, no witnesses were called and the documentary evidence submitted to the court only addressed that issue and was not directly related to the Contempt Motion.

e-mails between the former control person for the DAF and CLO Holdco, Grant Scott and the current control person for the DAF and CLO Holdco, Mr. Patrick. [R 003671-76] Two were statements of attorney's fees the Debtor purportedly incurred in connection with the Contempt Motion. [R 009742]

Of the remaining 23 exhibits, 22 consisted of a corporate organizational chart of the DAF and CLO Holdco, the company agreements for those two entities, some agreements between those two entities and the Debtor, documents demonstrating that Mr. Patrick replaced Mr. Scott as the control person for those two entities, and a few deposition transcripts and related excerpts regarding the circumstances by which Mr. Patrick replaced Mr. Scott as the control person for the DAF and CLO Holdco. [R 003671-76] The one communication that directly involved Mr. Dondero was an e-mail between him and Mr. Scott discussing the mechanics of Mr. Scott's resignation as the control person for these two entities.[11]  [R 003674, 013031]

The Other Appellants' admitted exhibits were generally cumulative of the Debtor's exhibits. More importantly, they, like the exhibits offered by the Debtor, had virtually no bearing on Mr. Dondero directly, other than to demonstrate that Mr.

---

[11] The testimony during the contempt hearing clarified some confusion in the email Mr. Scott sent to effectuate his resignation as the control person for the DAF and CLO Holdco. In the email, Mr. Scott used the term "divest" to generally refer to his need to assign the beneficial interest in the DAF and CLO Holdco to effectuate that change of control. In the investment world, however, the term divest often refers to an entity selling some or all of its assets.  Mr. Dondero simply sought clarification from Mr. Scott that he was not intending to divest any assets of the two entities, but was rather just referring to the assignment of the interests in the two entities themselves. [R 013031]

Dondero could not exercise control over or make any decisions on behalf of the DAF and CLO Holdco. [R 004863-005171]

## F.     The Contempt Order

On August 4, 2021, the bankruptcy court issued the Contempt Order that is the subject of this appeal. [R 000009]

In the Contempt Order, the bankruptcy court held the DAF, CLO Holdco, Mr. Patrick, the Sbaiti Firm, and its attorneys, Mr. Sbaiti and Mr. Bridges, in contempt for purportedly violating the bankruptcy court's Corporate Governance Order and Seery CEO Order by filing the Seery Motion in the DAF Action. [R 000034-38] While the bankruptcy court did not find or conclude that Mr. Dondero was an "authorizing person" of the DAF or CLO Holdco, which filed the Seery Motion, it also held him in contempt of these two orders. [*Id.*] The Contempt Order does not explain how Mr. Dondero could have personally violated the bankruptcy court's orders given that he did not file the Seery Motion or authorize its filing. Nevertheless, the bankruptcy court, going beyond the scope of its own Show Cause Order and the relief requested in the Contempt Motion, held Mr. Dondero in contempt, vaguely saying that "the evidence was clear and convincing that Mr. Dondero encouraged Mr. Patrick to do something wrong." [R 000029] The bankruptcy court did not hold any parties in contempt for the filing of the DAF

Action itself, which the Debtor did not allege violated any court orders. [R 000034-38]

As sanctions for the purported violation, the Contempt Order awarded the Debtor $239,655 for attorney's fees allegedly incurred by the Debtor's estate in bringing and litigating the Contempt Motion. [R 000035-38] The sanctions were imposed, jointly and severally, against each of the Appellants: the DAF, CLO Holdco, Mr. Patrick, the Sbaiti Firm and its lawyers Mr. Sbaiti and Mr. Bridges, and Mr. Dondero [*Id.*] The Contempt Order also imposed an additional $100,000 sanction against each of the Appellants for each level of unsuccessful rehearing, appeal, or petition for *certiorari* that they might to pursue regarding the Contempt Order. [R 000038]

Mr. Dondero and the Other Appellants separately and timely appealed from the Contempt Order. [R 000001, Dondero R 000001] These appeals were later consolidated into this action. Civil Dkt. 12.

## SUMMARY OF THE ARGUMENT

The bankruptcy court's Contempt Order contains numerous errors of law and fact and must be reversed as to Mr. Dondero. The errors as to Mr. Dondero are especially straight forward and compelling.[12]

First, the bankruptcy court erroneously held Mr. Dondero in contempt of two bankruptcy court orders for the filing of the Seery Motion by the DAF and CLO Holdco, despite the fact that the evidence unequivocally demonstrated that Mr. Dondero neither controlled these entities nor authorized them to file the Seery Motion. Accordingly, and regardless of whether any of the Other Appellants could be held in contempt for the filing of the Seery Motion, the bankruptcy court erred by holding Mr. Dondero in contempt for the filing of a motion that he did not file or authorize.

Second, the bankruptcy court erroneously held Mr. Dondero in contempt *sua sponte* despite the fact that he was not determined to be an "authorizing person" of the entities that filed the Seery Motion. Because this holding of contempt goes beyond the Contempt Motion and Show Cause Order and was designed to punish Mr. Dondero, it was a *sua sponte* criminal contempt sanction that the bankruptcy

---

[12] While Mr. Dondero believes that the bankruptcy court erred by holding the Other Appellants in contempt for the filing of the Seery Motion, he does not separately brief the issues related to that holding here because he should not have been held in contempt regardless of the court's holdings as to the conduct of the Other Appellants. Mr. Dondero hereby joins in and adopts the arguments made by the Other Appellants in sections I, II, III, and IV of their opening brief.

court lacked authority to impose. This imposition of contempt *sua sponte* also violated Mr. Dondero's due process rights.

Third, the Contempt Order erroneously imposed unwarranted, excessive, and unproven damages against Mr. Dondero and the Other Appellants. The Seery Motion was denied without prejudice by the District Court the *day after it was filed*. The Debtor was not required to respond to the Seery Motion and indeed had no need to do so. The DAF and CLO Holdco never refiled the Seery Motion. Nonetheless, the Debtor filed the Contempt Motion three days later, seeking to hold the Appellants in contempt for allegedly violating two bankruptcy court orders.  Accordingly, the attorney's fees awarded to the Debtor—all of which were incurred *after* the District Court denied as premature the Seery Motion—were of the Debtor's own making and did not result from the alleged contemptuous conduct. For this reason, the sanctions were punitive in nature designed to punish the Appellants rather than to compensate the Debtor for any wrongful conduct. And even apart from the absence of any connection between the allegedly contemptuous conduct and the Debtor's expenditure of attorney's fees, the amount of sanctions assessed by the bankruptcy court were erroneous because they were not supported by the evidence and were excessive.

Finally, the bankruptcy court erred by assessing "a sanction of $100,000 for each level of rehearing, appeal, or petition for certiorari that [the Appellants] may

choose to take" regarding the Contempt Order. That award, imposed to discourage the Appellants from exercising their constitutional right to seek appellate review of the Contempt Order, was a punitive sanction that the bankruptcy court had no authority to impose.

For these reasons, the Contempt Order as to Mr. Dondero must be reversed in its entirety.

## ARGUMENT

### I.     The bankruptcy court erred by holding Mr. Dondero in contempt for actions that were taken by the Other Appellants.

Bankruptcy courts in the Fifth Circuit have the authority to conduct civil contempt proceedings. *Placid Refining Company v. Terrebonne Fuel and Lube, Inc.,* 108 F.3d 609, 613 (5th Cir. 1997). In the Fifth Circuit, civil contempt requires a showing that (1) a court order was in effect; (2) the order required certain conduct; and (3) the respondent failed to comply with the order. *Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries, Inc.,* 177 F.3d 380, 382 (5th Cir. 1999).  In civil contempt proceedings, the burden of proof is clear and convincing, as opposed to preponderance of evidence. *Petroleos Mexicanos v. Crawford Enterprises, Inc.,* 826 F.2d 392, 401 (5th Cir. 1987). Clear and convincing evidence is "that weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without

hesitancy, of the truth of the precise facts of the case." *Travelhost, Inc. v. Blandford,* 68 F.3d 958, 961 (5th Cir. 1995).

"[S]anctions for civil contempt are meant to be wholly remedial and serve to benefit the party who has suffered injury or loss at the hands of the contemnor." *Petroleos Mexicanos,* 826 F.2d at 399. Compensatory damages awarded as a sanction for violation of a court order are to "[reimburse] the injured party for the losses and expenses incurred because of his adversary's noncompliance." *Norman Bridge Drug Co. v. Banner,* 529 F.2d 822, 827 (5th Cir. 1976).

### A. A person cannot be held in contempt for actions taken by others, and here Mr. Dondero was not a plaintiff in the DAF Action in which the Seery Motion was filed.

"A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Travelhost*, 68 F.3d at 961. Mr. Dondero cannot be held in contempt because he did not violate a definite and specific order of the court. In fact, the Debtor did not even allege that he did.

The record is clear. The action being complained of—and for which sanctions were imposed—was the filing of the Seery Motion in the DAF Action. The plaintiffs in that action, the DAF and CLO Holdco, are the parties that filed the Seery Motion. The evidence is uncontested that Mr. Dondero is not a party to the DAF Action and did not file the Seery Motion.

While the bankruptcy court's Contempt Order is unclear as to how Mr. Dondero's conduct was purportedly contemptuous, the bankruptcy court erred to the extent it implicitly held Mr. Dondero responsible for the filing of the Seery Motion in the DAF Action.

### B. There was no evidence that Mr. Dondero was a control person for the DAF or CLO Holdco or that he authorized either of them to file the Seery Motion, and the evidence is to the contrary.

The Contempt Order must be reversed as to Mr. Dondero because he was not a control person for the DAF or CLO Holdco and did not authorize or direct them to file the Seery Motion in the DAF Action. Because the Seery Motion (the filing of which was the only alleged contemptuous conduct) was filed by two entities, the only way Mr. Dondero could be liable for contempt under the Contempt Motion and Show Cause Order was if the Debtor clearly and convincingly proved that he was an "authorizing person" for the DAF or CLO Holdco, the two entities that filed the Seery Motion. There was no evidence, however, that Mr. Dondero controlled these entities or authorized them to take any action. [R 009940-9941] To the contrary, the evidence established that Mr. Dondero had no involvement with the Seery Motion. For these reasons, Mr. Dondero did not violate the Corporate Governance Order and Seery CEO Order, and the bankruptcy court's holding of contempt as to Mr. Dondero must be reversed.

1. **The evidence at the Show Cause hearing established that Mr. Patrick was the sole control person for the DAF and CLO Holdco.**

The sole issue at the Show Cause hearing was whether the filing of the Seery Motion by the DAF and CLO Holdco, their authorizing persons, and their law firm constituted the "commencement or pursuit" of a claim or cause of action against Mr. Seery such that they could be held in contempt of the "gatekeeper" provisions contained in the Corporate Governance Order and Seery CEO Order. [R 001136, 001150, 001168, 009846]

As to that issue, the relevant evidence from the hearing generally boiled down to the (i) documentary evidence showing the control structure of the DAF and CLO Holdco, including the organizational documents for these entities; (ii) unrefuted testimony of Mr. Patrick and Mr. Dondero conclusively proving that Mr. Patrick controlled these two entities and solely authorized the filing of the Seery Motion in the DAF Action; and (iii) unrefuted testimony of Mr. Patrick and Mr. Dondero conclusively proving that Mr. Dondero had no involvement with the Seery Motion.[13]

---

[13] Only a small portion of the appellate record is relevant to determine whether the bankruptcy court's contempt holding was erroneous as to Mr. Dondero. In the Contempt Order, the bankruptcy court acknowledged that "[t]here really is very little, if anything, in dispute." [R 000026]. Indeed, the bankruptcy court went on to say "all that the court heard at the June 8, 2021 hearing that was 'new,' beyond what was in the pleadings [including the operative language from the two court orders] and documents that were admitted into evidence, was the explanations/rationales given by those involved with filing the DAF Action and the Seery Motion." While this statement is partially correct, it fails to acknowledge that the evidence of the control structure for the DAF and CLO Holdco, and which individuals were involved in the filing of the DAF Action and Seery Motion, was not previously before the court.

Concerning Mr. Patrick and his role, the bankruptcy court stated that some of the relevant evidence was as follows:

> Mr. Patrick testified that he became the manager/director of DAF and CLO Holdco on March 24, 2021, and he earns no compensation for that role, although the prior manager/director, Mr. Grant Scott, earned $5,000 per month. Mr. Patrick testified that he authorized the filing of the Complaint and the Seery Motion. He testified that he retained the Sbaiti law firm 12 days before the District Court Action was filed, and the idea for filing the Complaint came from that firm, although Mr. Dondero "brought certain information" to Mr. Patrick. Mr. Patrick then "engaged the Sbaiti firm to launch an investigation," and "also wanted Mr. Dondero to work with the Sbaiti firm with respect to their investigation of the underlying facts." Mr. Patrick elaborated that he had no specific knowledge about the HarbourVest Settlement before taking charge of DAF and CLO Holdco, but Mr. Dondero came to him with information about it.

[R 000027]

The testimony and documentary evidence indicate that the DAF is a Cayman Islands exempted limited partnership that is controlled by its general partner, Charitable DAF GP, LLC ("DAF GP"). [R 009929, 009943, 004870, 004925] DAF GP is a member-managed Delaware limited liability company. [R 004915] CLO Holdco is also a Cayman Islands entity, wholly owned by DAF and therefore controlled by it. [R 004870, 004946, 004947-73, 004888-99] Mr. Patrick became the sole managing member of DAF GP on March 24, 2021, taking over that position from Mr. Scott. [R 009901]

As the managing member of DAF GP as of March 24, 2021, Mr. Patrick was the sole control person for the DAF and, by extension, its wholly-owned subsidiary

CLO Holdco, at the time the DAF Action and Seery Motion were filed. [R 004870, 9901, 009915, 009940-41]

> **2. The evidence established that Mr. Dondero had no authority or control over the DAF or CLO Holdco, and therefore cannot be held in contempt for actions they took.**

Although Mr. Dondero had no burden of proving anything at the contempt hearing, the evidence conclusively established that Mr. Dondero was not a person in control of the DAF or CLO Holdco and was not an agent responsible for their corporate conduct. For these reasons, the bankruptcy court erred by holding Mr. Dondero in contempt for the Seery Motion filed by these entities.

In *Wilson v. United States*, the U.S. Supreme Court held that in the context of a contempt proceeding directed to a corporation, a court's contempt powers can also extend to those who are officially responsible for the conduct of the affairs of a corporation. 221 U.S. 361, 376 (1911). The reasoning is simple: Although a corporation is a legally distinct and cognizable entity, it is able to act only through its agents. *San Antonio Bar Ass'n v. Guardian Abstract & Title Co.*, 291 S.W.2d 697, 699 (Tex. 1956).

The Supreme Court in *Wilson* explained the general principle of agency in the context of an injunctive order directed against a corporation:

> As the corporation can only act through its agents, the courts will operate upon the agents through the corporation. When a copy of the writ which has been ordered is served upon the clerk of the board, it will be served on the corporation, and be equivalent to a command that

the persons who may be members of the board shall do what is required. If the members fail to obey, those guilty of disobedience may, if necessary, be punished for the contempt. Although the command is in form to the board, it may be enforced against those through whom alone it can be obeyed. . . . While the board is proceeded against in its corporate capacity, the individual members are punished in their natural capacities for failure to do what the law requires of them as the representatives of the corporation.

*Id.* at 377. *See also Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581-82 (5th Cir. 2000) (applying *Wilson* in holding corporation's agent in contempt for actions taken by corporation); *N.L.R.B. v. Maine Caterers, Inc.*, 732 F.2d 689, 691 (1st Cir. 1984) ("An officer, responsible for the corporation's efforts and for its disobedience, may be held in contempt.").

Importantly, however, "[s]imply because *a corporation* has failed to comply with a court order, it does not necessarily follow that all corporate agents or officers are in contempt because of their agent status. There must be evidence in the record that the corporate agent charged with contempt was somehow *personally* connected with defying the authority of the court or disobeying its lawful decrees." *Ex parte Chambers*, 898 S.W.2d 257, 261 (Tex. 1995) (emphasis in original).

Here, the evidence proves that Mr. Patrick—not Mr. Dondero—was the corporate agent solely responsible for the official conduct of the DAF and CLO Holdco. Under *Wilson*, the only ones who could be held in contempt for the filing of the Seery Motion were the entities that filed the Seery Motion and their authorized agents who were officially responsible for its filing. Because the evidence

established that Mr. Dondero was (i) not responsible for the conduct of these entities; and (ii) had no involvement with the filing or preparation of the Seery Motion, the bankruptcy court erred by holding him in contempt.

Under the Cayman Islands Exempted Limited Partnership Act applicable to the DAF, *only* the general partner has authority to control the partnership and conduct its business. Cayman Islands Exempted Limited Partnership Act, § 14(2) ("All letters, contracts, deeds, instruments or documents whatsoever shall be entered into by or on behalf of the general partner (or any agent or delegate of the general partner) on behalf of the exempted limited partnership."). Moreover, as applicable here, the Partnership Act provides that legal proceedings commenced by an exempted limited partnership may be instituted *only* by the general partner. *Id.* § 33 ("Subject to subsection (3), legal proceedings by or against an exempted limited partnership may be instituted by or against any one or more of the general partners only, and a limited partner shall not be a party to or named in the proceedings.").

In this case, the limited partnership agreement of the DAF (the "LPA"), in accordance with the Partnership Act, provides that its general partner shall have "full, exclusive and complete discretion in the management and control of the business and affairs of the Partnership [and] shall make all decisions regarding the business of the Partnership." [R 004929-30]

Specifically, the LPA provides as follows:

> Subject to the terms and conditions of this Agreement, the General Partner shall have full, exclusive and complete discretion in the management and control of the business and affairs of the Partnership, shall make all decisions regarding the business of the Partnership, and shall have all of the rights, powers and obligations of a general partner of a limited partnership under the laws of the Cayman Islands. Except as otherwise expressly provided in this Agreement, the General Partner is hereby granted the right, power and authority to do on behalf of the Partnership all things which, in the General Partner's sole discretion, are necessary or appropriate to manage the Partnership's affairs and fulfill the purposes of the Partnership; provided, however that the Partnership's assets and investments shall be for the benefit of the Limited Partners and not for the economic benefit of the General Partner.

[R 004929-30]

Mr. Patrick was the sole person in control of the DAF's general partner, DAF GP, when the DAF Action and Seery Motion were filed. From and after March 24, 2021, Mr. Patrick, as the sole managing member of the DAF GP, had "full, exclusive, and complete discretion in the management and control of the business and affairs" of the DAF. [R 004929-30, 009940-41] During the hearing, Mr. Patrick corroborated the control structure of the DAF as shown in the documentary evidence, testifying that the DAF GP has "complete control" over the DAF's actions or activities. [R 009940] And as the controlling person of the DAF, Mr. Patrick also solely controlled CLO Holdco. [R 009940-41, 004870, 004889]

In this case, Mr. Patrick, acting as the sole managing member of the DAF GP, instructed the Sbaiti Firm to file the Seery Motion in the DAF Action on behalf of the DAF and CLO Holdco. [R 009908, 009915-16, 9940-9941] The record is clear

and undisputed on this point: Mr. Patrick was the sole person in control of the DAF and CLO Holdco at the time the Seery Motion was filed. [R.009940-41, 004915, 004889, 004870, 004925]

Mr. Patrick alone made the decision to file the Seery Motion—as only he was permitted to do under the LPA—with the advice of the Sbaiti Firm. [R 009915-16] Mr. Dondero was not involved in the preparation of the Seery Motion or the decision to file it. [R 10010-13] For these reasons, even if the filing of the Seery Motion violated the bankruptcy court's orders—which it did not—only Mr. Patrick could have been held in contempt as an "authorizing person" for the DAF and CLO Holdco. *See Fed. Home Loan Mortg. Corp. v. Berbod Realty Assocs., L.P.*, 1994 U.S. Dist. LEXIS 21421, at *25 (S.D.N.Y. 1994) (applying *Wilson* in the context of a general partnership and holding the president of a limited partnership's general partner in contempt of a court order).

Despite these undisputed facts establishing that Mr. Dondero did not (and could not) file or authorize the filing of the Seery Motion, the bankruptcy court held Mr. Dondero in contempt, stating that

> [t]he totality of the evidence was clear that Mr. Dondero sparked this fire (i.e., the idea of bringing the District Court Action to essentially re-visit the HarbourVest Settlement and to find a way to challenge Mr. Seery's and the Debtor's conduct), and Mr. Patrick and Sbaiti & Company, PLLC, were happy to take the idea and run with it. The court believes the evidence was clear and convincing that Mr. Dondero encouraged Mr. Patrick to do something wrong, and Mr. Patrick

basically abdicated responsibility to Mr. Dondero with regard to dealing with Sbaiti and executing the litigation strategy.

[R 000029]

These findings are not supported by the record. Even more importantly, they have no relevance to whether Mr. Dondero "authorized" the filing of the Seery Motion, which was the only issue before the court as to Mr. Dondero. Indeed, that was the only way Mr. Dondero could have been held in contempt under the Contempt Motion and Show Cause Order.

Nothing in the bankruptcy court's conclusory statements about Mr. Dondero suggests that Mr. Dondero was the control or authorizing person for either plaintiff in the DAF Action or that Mr. Dondero had the ability to legally direct or authorize them to take any actions. In fact, the Contempt Order never articulated any legal basis for holding Mr. Dondero in contempt.

Equally troubling is that the bankruptcy court conflated the preparation and filing of the DAF Action (which was *not* asserted to be contemptuous) with the filing of the Seery Motion itself (the only basis for the Contempt Motion). And even if the former were relevant to the latter, the unrefuted testimony indicates that the idea of bringing the DAF Action originated *not* with Mr. Dondero, but with the Sbaiti Firm.

[R.009908][14] Mr. Patrick further testified that he alone authorized the filing of the DAF Action and the Seery Motion [R 009915-16, 009940-41].

While Mr. Dondero testified that he brought some factual information for the potential filing of the DAF Action to the Sbaiti Firm and Mr. Patrick, he unequivocally testified, as corroborated by Mr. Patrick, that he had *no involvement* in the decision to file the Seery Motion:

> Q Did you talk to them about coming to this Court under the gatekeeper order to see if you could get permission to sue Mr. Seery?
>
> . . .
>
> A I wasn't involved in any of the tactical stuff on who . . . to sue or when or whatever.
>
> . . .
> Q Did you tell the Sbaiti firm that you thought they should sue Mr. Seery?
>
> A I didn't get directly involved in who was -- who was specifically liable.

[R 10010-11]

Additional testimony from Mr. Dondero corroborated his lack of involvement, indicating that (i) he did not suggest that Mr. Seery should be added as a defendant

---

[14] Mr. Patrick testified:
Q And the idea of filing this complaint originated with the Sbaiti firm, correct?
A Correct. [R 009908]

to the DAF Action; and (ii) he was not involved in the decision to file the Seery

Motion:

> Q Okay. Did you suggest to Mr. Sbaiti that Mr. Seery should be named as a defendant in the lawsuit before it was filed?

> A: Again, no. I wasn't involved with the tactics on who would be defendants and when or if other people would be added.

> . . .

> Q And were you aware that that motion [the Seery Motion] was going to be filed prior to the time that it actually was filed?

> A I -- I don't remember. Probably.

> Q And who would have been the source of that information? Would that have been Mr. Sbaiti?

> A Yes.

> Q Okay. And did you express any support for the decision to file the motion for leave to amend in the District Court?

> A I -- *I wasn't involved*. It was very complicated legal preservation conver... -- I wasn't involved. I knew the conversations were going on between different lawyers, *but I wasn't involved in the ultimate decision*. I didn't encourage, applaud, or even know exactly what court it was going to be filed in.

[R 010012-13] (emphasis added). This testimony was not controverted.

The bankruptcy court even acknowledged this testimony in the Contempt

Order, saying "[Mr. Dondero] testified that he was not involved with the Seery

Motion itself." [R 000029] Based on the evidence, the bankruptcy court erred in

holding Mr. Dondero in contempt of the bankruptcy court's orders.

Compounding its error, the bankruptcy court held Mr. Dondero in contempt for actions taken by the DAF and CLO Holdco despite finding elsewhere in the Contempt Order that Mr. Dondero was *not* an agent or representative of the DAF or CLO Holdco. [R 000028] As the court stated:

> The lawyers at Sbaiti & Company commented during opening statements that Mr. Dondero was the source of certain of the information in the Complaint and that they were asserting "work product privilege" and "attorney-client privilege" as to their communications with Mr. Dondero "because he's an agent of our client." The court ultimately overruled this claim of privilege since, among other things, Mr. Patrick's own testimony confirmed that Mr. Dondero had no contractual arrangement of any sort with DAF and CLO Holdco, *and he was not a board member and had no decision-making authority for them.* For purposes of privilege assertion, there was *no evidence whatsoever that Mr. Dondero was an agent or representative of DAF and CLO Holdco.* (emphasis added)

[R 000028]. The court's legal decision on the privilege issue was wrong, but its factual findings on that issue further underscore why Mr. Dondero should not have been held in contempt.

In an effort to justify the bankruptcy court's blatantly incorrect decision to hold Mr. Dondero in contempt, the Debtor is likely to grasp at a few isolated and irrelevant snippets from the record:

- Mr. Dondero made Mr. Patrick aware of certain factual information regarding the HarbourVest settlement that underlies the allegations in the complaint that commenced the DAF Action; [R 009911]

- Mr. Dondero spoke with the Sbaiti Firm a few times to provide information on some of the facts underlying the complaint filed in the DAF Action; [R 009911]

- Mr. Patrick hired the Sbaiti Firm at the recommendation of D.C. Sauter, general counsel for NexPoint Advisors, L.P. (an entity for whom Mr. Dondero is president); [R 009910] and

- Mr. Patrick considered Mr. Dondero to be an investment advisor to the portfolio held by the DAF and CLO Holdco. [R 009911, R 009988]

But none of these actions are inappropriate; nor do they change the undisputed fact that Mr. Patrick was the *only* person in control of the DAF and CLO Holdco at the time of the DAF Action and Seery Motion. No one besides Mr. Patrick was an "authorizing person" of these entities. Mr. Patrick alone caused the DAF Action and Seery Motion to be filed.  And the filing of the Seery Motion itself was the *only* act the Debtor alleged to be contemptuous. [R 001150]

Under the plain language of the Corporate Governance Order and Seery CEO Order, only a person or entity that commences or pursues a claim *against Mr. Seery* relating in any way to his role as the chief executive officer and chief restructuring officer of the Debtor without prior bankruptcy court approval could be subject to a potential contempt action.  As the evidence conclusively proves, Mr. Dondero did not personally commence or pursue a claim of any kind against Mr. Seery (or the Debtor itself, for that matter). Nor did Mr. Dondero authorize (or even participate in) the pursuit of such a claim against Mr. Seery. Providing information to assist the

Sbaiti Firm in preparing the complaint for the DAF Action—the most Mr. Dondero is claimed to have done—is not a basis for contempt under the Contempt Motion and Show Cause Order.

In sum, the Debtor did not prove by clear and convincing evidence that Mr. Dondero violated the Corporate Governance Order and Seery CEO Order. The bankruptcy court erred by holding Mr. Dondero in contempt for actions taken by others, and the Contempt Order must therefore be reversed as to Mr. Dondero.

## II. The bankruptcy court erred by holding Mr. Dondero in contempt *sua sponte*, and the court's holding violated Mr. Dondero's due process rights.

The bankruptcy court also erred by holding Mr. Dondero in contempt of the court's orders *sua sponte*. As discussed above, the Contempt Motion did not seek to hold Mr. Dondero in contempt unless he was an "authorizing person" of the filing of the Seery Motion. Despite the Debtor's limit on the basis for which Mr. Dondero could be held in contempt, the bankruptcy court's Show Cause Order *sua sponte* directed Mr. Dondero to appear in person at the hearing. The Show Cause Order, however, *only* directed the so-called "Violators" to appear and show cause why they should not be held in contempt. Mr. Dondero was not included in the definition of "Violators," which referred only to the DAF, CLO Holdco, the persons who authorized the DAF and CLO Holdco to file the Seery Motion, and the Sbaiti Firm and its attorneys.

By holding Mr. Dondero in contempt despite the fact that (i) he was not named in the Contempt Motion or Show Cause Order as a Violator; and (ii) he was not found to be an authorizing person of the DAF or CLO Holdco, the bankruptcy court effectively held him in contempt *sua sponte*. And by doing so, the bankruptcy court (i) unlawfully imposed a punitive, criminal contempt sanction against Mr. Dondero that it lacked authority to impose; and (ii) violated Mr. Dondero's due process rights. Consequently, the Contempt Order must be reversed as to Mr. Dondero for this additional reason.

### A. A bankruptcy court cannot impose civil contempt sanctions *sua sponte*.

"[L]ogic, and to some extent precedent as well, supports the proposition that civil contempt proceedings may be instituted only by the parties primarily in interest." *MacNeil v. United States*, 236 F.2d 149, 153 (1st Cir. 1956). And it is that party in interest (*i.e.*, the movant) that has the burden of establishing civil contempt by clear and convincing evidence. *Petroleos Mexicanos*, 826 F.2d at 401.

Even if *sua sponte* civil contempt is allowed, it should only be used sparingly and in appropriate circumstances. The Second Circuit, for example, has been reluctant to allow civil contempt to be imposed *sua sponte*. *See United States v. Russotti*, 746 F.2d 945, 949 (2d Cir. 1984) ("We are doubtful that a civil contempt sanction may be imposed without a request of a party . . . ."). The Second Circuit has allowed the imposition of a civil contempt *sua sponte* only where there was an

injunction that was designed to protect non-parties that "were too numerous and too ill-informed to protect their own interests." *SEC v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 441 (2d Cir. 1987). But in doing so, the Second Circuit stated that such a circumstance does not exist where the underlying court order is meant to protect a single party and that party chooses not to seek contempt. *See id.*

One danger in allowing a court to impose civil contempt sanctions *sua sponte* is that the court may use them "solely to evade the procedural constraints that attend criminal contempt proceedings." *SEC v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 441 (2d Cir. 1987). This risk is even greater when a bankruptcy court, rather than a district court, imposes contempt sanctions. Not only is there a risk of the bankruptcy court framing a criminal contempt sanction as a civil one (and bypassing proper procedures in doing so), there is a risk that a bankruptcy court will impose a sanction it has no authority to impose at all. *See In re Hipp*, *Inc.*, 895 F.2d 1503 (5th Cir. 1990) ("bankruptcy courts have no inherent or statutory power – and none is granted them by 11 U.S.C. § 105 or by 28 U.S.C. § 157 or by Rule 9020 – to preside over section 401(3) criminal contempt trials for violation of bankruptcy court orders").[15]

---

[15] In limited circumstances, a bankruptcy court may have authority to initiate civil contempt proceedings *sua sponte* under certain statutory provisions, such as 11 U.S.C. § 362. *See Official Unsecured Creditors' Comm. of Gen. Homes Corp. v. Am. Sav. & Loan Ass'n (In re Gen. Homes Corp.)*, 181 B.R. 870, 877 (Bankr. S.D. Tex. 1994) (stating that section 362 and Rule 11 are self-enforcing).

A contempt sanction is classified as either civil or criminal, depending on its "character and purpose." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828 (1994). The Fifth Circuit has explained the distinction between civil and criminal contempt sanctions:

> In determining whether a contempt judgment imposed a criminal or civil sanction, we consider the primary purpose for which the contempt order was entered: If the purpose of the sanction is to punish the contemnor and vindicate the authority of the court, the order is viewed as criminal. If the purpose of the sanction is to coerce the contemnor into compliance with a court order, or to compensate another party for the contemnor's violation, the order is considered purely civil.

*Grossman v. Belridge Grp. (In re Lothian Oil, Inc.)*, 531 F. App'x 428, 446 (5th Cir. 2013).

While a district court can impose criminal contempt sanctions so long as the proper procedures are followed, a bankruptcy court's contempt authority is far more circumscribed. A bankruptcy court has authority to issue only civil contempt sanctions—either to coerce compliance or compensate an injured party. *See In re Gervin*, 337 B.R. 854, 858 (W.D. Tex. 2005) (citing *United States v. United Mine Workers*, 330 U.S. 258 (1947)). A bankruptcy court has no authority to impose punitive sanctions under its inherent powers. *In re Hipp, Inc.*, 895 F.2d at 1503. And no matter how a bankruptcy court may try to frame its sanction, it is the "character and purpose" of the sanction that determines whether the sanction is civil or criminal. *See Bagwell*, 512 U.S. at 828.

### B. The bankruptcy court erred by holding Mr. Dondero in contempt *sua sponte*.

In this case, the bankruptcy court erred when it held Mr. Dondero in contempt *sua sponte*, even though he was not and could not be found to be an "authorizing person" of the DAF or CLO Holdco.

The Debtor's Contempt Motion did not seek to hold Mr. Dondero in contempt for "sparking the fire" of the DAF Action—or even for encouraging, directing, or participating in the preparation or filing of the Seery Motion. Rather, the Contempt Motion requested that the bankruptcy court hold in contempt only the purported "Violators," defined as (i) the entities that filed the Seery Motion (i.e., the DAF and CLO Holdco as plaintiffs in the DAF Action); (ii) the person(s) who *authorized* the DAF and CLO Holdco to file the Seery Motion in the DAF Action; and (iii) the Sbaiti Firm and its attorneys as counsel to the DAF and CLO Holdco. [R 001136-1169, 001137, 001142, 001148, 001808] The Debtor's form of proposed order submitted with the Contempt Motion was also directed only to the alleged "Violators," and it did not request that Mr. Dondero appear in person at the hearing or show cause why he should not be held in contempt. [R 001813-16]

Although Mr. Dondero was not a party to the DAF Action, and despite the fact that Mr. Dondero was not specifically named in the Contempt Motion or proposed show cause order as one who must personally appear before the bankruptcy court to "show cause," the bankruptcy court, *sua sponte* and without prior notice to

Mr. Dondero, included in the Show Cause Order a directive that Mr. Dondero appear in person at the hearing.

The Show Cause Order also directed the alleged "Violators" to personally appear before the bankruptcy court and to show cause why they should not be held in contempt for allegedly violating two bankruptcy court orders by filing of the Seery Motion in the DAF Action. [R 001876-78] Mr. Dondero was *not* included in the definition of Violators contained in the Contempt Motion and Show Cause Order. [R 001136-1169, 001137, 001142, 001148, 001808, 001876-78]

As detailed above, the evidence conclusively demonstrated that Mr. Patrick, not Mr. Dondero, was the sole person in control of the DAF and CLO Holdco, and in that capacity authorized and directed these entities to file the Seery Motion. Both Mr. Dondero and Mr. Patrick testified that Mr. Dondero did not authorize and had no involvement with the filing of the Seery Motion. [R 009908, 009915-16, 9940-9941, 010010-11, 010013-14] Because that fact was established and not controverted, Mr. Dondero's involvement in the contempt proceeding should have been over.

But the bankruptcy court impermissibly went several steps further. Going beyond the Debtor's Contempt Motion and even its own Show Cause Order, the bankruptcy court held Mr. Dondero in contempt of the Corporate Governance Order and Seery CEO Order without ever explaining the legal basis for its holding. Instead,

it simply stated (contrary to the evidence) that Mr. Dondero "sparked the fire" of the DAF Action and "encouraged Mr. Patrick to do something wrong." [R 000029] Holding Mr. Dondero in contempt based on those vague statements was the bankruptcy court's way of punishing Mr. Dondero for allegedly starting a proceeding that the court simply did not like. Yet whether the DAF Action had merit or would ultimately be successful was entirely irrelevant to the Contempt Motion. The punitive nature of the court's sanction is also supported by the lack of evidence of Mr. Dondero's involvement in the Seery Motion and the court's vituperative statements in its Contempt Order.

This is not one of the extraordinary cases that may justify a court's imposition of civil contempt sanctions *sua sponte*. Here, the provisions of the orders allegedly violated were for the Debtor's benefit. There was no bankruptcy provision at issue, and the bankruptcy court based its contempt holding only on 11 U.S.C. § 105(a).

By holding Mr. Dondero in contempt for purported conduct beyond the scope of the Contempt Motion and Show Cause Order, the bankruptcy court exceeded its authority and imposed an impermissible punitive and criminal contempt sanction against Mr. Dondero. For this additional reason, the Contempt Order must be reversed in its entirety as to Mr. Dondero.

**C. The bankruptcy court violated Mr. Dondero's due process rights by holding him in contempt despite not finding him to be an "authorizing person" of the Seery Motion.**

The bankruptcy court's holding of contempt against Mr. Dondero also violated his due process rights. The Show Cause Order directed only the "Violators" to show cause why they should not be held in contempt for allegedly violating two court orders by filing the Seery Motion. Mr. Dondero was not personally included in the definition of Violators. Thus, Mr. Dondero had no notice that he could have been held in contempt for any reason other than qualifying as an "authorizing person" of the filing of the Seery Motion. Because the bankruptcy court did not find Mr. Dondero to be an "authorizing person"—but nevertheless held him in contempt—the court violated Mr. Dondero's due process rights. The Contempt Order must be reversed in its entirety as to Mr. Dondero for this additional reason.

It is black letter law that contempt sanctions must comply with due process. *See Spiller* v. *Ella Smithers Geriatric Ctr.*, 939 F.2d 339, 346 (5th Cir. 1990) ("sanction decisions must comport with due process"). Due process "requires notice and an opportunity to be heard before the imposition of Rule 11 sanctions." *Id.*; *see also Bagwell*, 512 U.S. at 827 (holding that adequate notice of the grounds for the contempt proceedings and an opportunity to be heard are required).

Here, while although a hearing on the Contempt Motion occurred, the Contempt Motion did not seek to hold Mr. Dondero in contempt unless he was found

to be an "authorizing person" of the Contempt Motion. By holding Mr. Dondero in contempt when he was not found to an "authorizing person," the bankruptcy court granted relief beyond that requested by the Contempt Motion and the notice provided under the Show Cause Order. This violated Mr. Dondero's due process rights because he had no notice and opportunity to respond to whatever alternative basis the bankruptcy court used post-hearing to hold him in contempt. The Contempt Order must be reversed as to Mr. Dondero for this additional reason.

## III.   The bankruptcy court improperly assessed sanctions against Mr. Dondero.

"'Civil contempt can serve two purposes,' either coercing compliance with an order or 'compensat[ing] a party who has suffered unnecessary injuries or costs because of contemptuous conduct.'" *Ingalls v. Thompson (In re Bradley)*, 588 F.3d 254, 263 (5th Cir. 2009) (quoting *Travelhost*, 68 F.3d at 961-62). Before a court can impose a compensatory penalty in a civil contempt proceeding, the Fifth Circuit requires "a sufficient record basis for the propriety of such an award and, in a broad sense at least, the amount of it." *Clark v. Boynton*, 362 F.2d 992, 998 (5th Cir. 1966). "Sanctions must be chosen to employ the least possible power to the end proposed." *In re First City Bancorporation*, 282 F.3d 864, 867 (5th Cir. 2002) (quoting *Spallone v. United States*, 493 U.S. 265, 280 (1990)) (internal quotations omitted).

Here, the bankruptcy court imposed a substantial monetary sanction of $239,655 against Mr. Dondero and the Other Appellants, along with an additional

$100,000 sanction for each level of unsuccessful rehearing or appeal of the Contempt Order that the Appellants may choose to pursue. [R 000038] Because the bankruptcy court erred in holding Mr. Dondero in contempt at all, no sanctions against Mr. Dondero are warranted. And even if the contempt holding was justified, the sanctions imposed against Mr. Dondero are legally and factually erroneous and must be reversed.

### A. The bankruptcy court erred in imposing a $239,655 sanction consisting of attorney's fees that did not result from any contemptuous conduct.

For the reasons set forth in section III of the opening brief of the Other Appellants, the sanctions imposed by the bankruptcy court are erroneous and must be reversed. Mr. Dondero joins in and adopts the arguments made by the Other Appellants in section III of their opening brief. Mr. Dondero requests that the sanctions imposed against him jointly and severally with the Other Appellants be reversed in their entirety.

### B. The bankruptcy court lacked authority to assess a sanction that punishes Mr. Dondero for exercising his right to appeal.

The bankruptcy court also erred by imposing an additional $100,000 sanction for "each level of rehearing, appeal, or petition for *certioriari*" the Appellants may choose to pursue regarding the Contempt Order. [R 000038] By assessing a separate monetary sanction for every unsuccessful appeal, the bankruptcy court improperly

imposed a *punitive* sanction against the Appellants for exercising their appellate rights. This sanction is unlawful and must be reversed.

A bankruptcy court has authority to impose only civil contempt sanctions, either to coerce compliance or compensate an injured party. The $100,000 sanction for each level of unsuccessful appeals the Appellants may pursue neither coerces compliance nor compensates an injured party. Rather, this sanction was designed only to discourage the Appellants from exercising their constitutional right to seek appellate review of the Contempt Order and to punish them if they unsuccessfully do so. By punishing the Appellants for appealing the Contempt Order, the bankruptcy court effectively imposed an impermissible criminal contempt sanction that it lacked authority to impose. *See Grossman*, 531 F. App'x at 446; *In re Hipp, Inc.*, 895 F.2d at 1503.

Even if the $100,000 sanction for each level of appeals does not cross the line separating a criminal sanction from a civil sanction, the bankruptcy court lacked authority to impose such a sanction. The Supreme Court and the Fifth Circuit have generally held that lower courts cannot sanction parties for appeals or award attorney's fees for an appeal. In *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990), the Supreme Court held that Federal Rule of Civil Procedure 11 does not permit an award of attorney's fees incurred in connection with the appeal of a lower court's sanction order. *Id.* at 406-08.

In *Franklin v. Elliott (In re Elliot)*, the Fifth Circuit held that the policies articulated in *Cooter* "apply in the context of sanctions awarded under a court's inherent powers as well as the Rule 11 context."  No. 93-1537, 1994 U.S. App. LEXIS 41963, at *1-3 (5th Cir. 1994).  The Court explained:

> If a lower court were to award attorneys' fees for the appeal of a sanction order, meritorious appeals would be discouraged and it would have the effect of encouraging additional satellite litigation. Furthermore, as the Supreme Court noted in *Cooter*, Fed. R. App. 38 governs the litigant's conduct on appeal.  As in *Cooter*, the anomalous result that a litigant would be awarded attorneys' fees on appeal when that litigant would not entitled to fees under Fed. R. App. P. 38 could result.

*Id.*

Several years later, in *Conner v. Travis County*, the Fifth Circuit explicitly held that "district courts cannot generally sanction parties for appeals."  209 F.3d 794, 800 (5th Cir. 2000).  The Court, distinguishing the Supreme Court case of *Chambers v. Nasco, Inc.*,[16] explained:

> By contrast, other circuits have held—even post-*Chambers*—that district courts cannot generally sanction parties for appeals. We are persuaded by precedent and the policies underlying a court's ability to sanction that the latter approach [of not sanctioning parties for appeals] is the better one.

*Id.*

---

[16] "In *Chambers*, the Supreme Court rejected a *per se* rule barring a court from sanctioning parties for conduct they take outside its courtroom:  as long as a party receives an appropriate hearing . . . the party may be sanctioned for abuses of process occurring beyond the courtroom, such as disobeying the court's orders." *Conner*, 209 F.3d at 799 (citing *Chambers*, 501 U.S. 57 (1991)).

Here, the bankruptcy court lacked any authority to impose the $100,000 sanction for each level of potentially unsuccessful appeals. The bankruptcy court imposed its sanctions under its inherent powers. Under Fifth Circuit precedent, the court was not allowed to impose a sanction for an appeal to a higher court under its inherent powers. *See Conner*, 209 F.3d at 800-01. This is true even if the $100,000 per appeal sanction was intended to compensate the Debtor for having to incur additional legal fees in an appeal. *Franklin,* 1994 U.S. App. LEXIS 41963, at *1-3; *Law Office of Francis O'Reilly, Esq. v. Silene Fin. L.P. (In re DiBattista)*, No. 20-cv-4620, 2020 U.S. Dist. LEXIS 222877 (S.D.N.Y. Nov. 25, 2020) ("a bankruptcy court lacks authority to award fees related to an appeal").

Because the bankruptcy court had no authority to impose a sanction of $100,000 for each level of appeal that Appellants may choose to pursue, that award must be reversed regardless of whether the Contempt Order is otherwise upheld.

## CONCLUSION

For the foregoing reasons, this Court should reverse the *Memorandum Opinion and Order Holding Certain Parties and Their Attorneys in Civil Contempt for Court for Violation of Bankruptcy Court Orders* and all sanctions ordered therein, render judgment that the Debtor take nothing on its motion to hold Mr. Dondero in contempt, and grant Mr. Dondero all other relief to which may be entitled.

Dated: December 13, 2021          Respectfully submitted,


                                  */s/ Bryan C. Assink*
                                  John T. Wilson IV
                                  State Bar I.D. No. 24033344
                                  Clay M. Taylor
                                  State Bar I.D. No. 24033261
                                  Bryan C. Assink
                                  State Bar I.D. No. 24089009
                                  BONDS ELLIS EPPICH SCHAFER JONES LLP
                                  420 Throckmorton Street, Suite 1000
                                  Fort Worth, Texas 76102
                                  (817) 405-6900 telephone
                                  (817) 405-6902 facsimile
                                  Email: john.wilson@bondsellis.com
                                  Email: clay.taylor@bondsellis.com
                                  Email: bryan.assink@bondsellis.com

                                  -and-

                                  Jeffrey S. Levinger
                                  State Bar I.D. No. 12258300
                                  LEVINGER PC
                                  1700 Pacific Avenue, Suite 2390
                                  Dallas, Texas 75201
                                  (214) 855-6817 telephone
                                  (214) 817-4509 facsimile
                                  Email: jlevinger@levingerpc.com

                                  **ATTORNEYS FOR APPELLANT
                                  JAMES DONDERO**

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that, on December 13, 2021, a true and correct copy of the foregoing document was served via the Court's CM/ECF system on counsel for Appellee and all other parties requesting or consenting to such service in this case.

*/s/ Bryan C. Assink*
Bryan C. Assink

## CERTIFICATE OF COMPLIANCE WITH RULE 8015(h)

1.     This document complies with the type-volume limitation of Fed. R. Bankr. P. 8015(h) as it contains 11,830 words, excluding the portions of the document exempted by Fed. R. Bankr. P. 8015(g).

2.     This brief complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type style requirements of Fed. R. Bankr. P. 8015(a)(7)(B) because its has been prepared in a proportionally-spaced typeface using Microsoft Word in 14 pt. Times New Roman (and 12 point for footnotes).

*/s/ Bryan C. Assink*
Bryan C. Assink