No. 3:21-cv-01974-X

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

**In the Matter of: Highland Capital Management, L.P.,**

**Debtor.**

**MARK PATRICK; SBAITI & COMPANY PLLC; MAZIN A. SBAITI; JONATHAN BRIDGES; and JAMES DONDERO,**
**APPELLANTS**

v.

**HIGHLAND CAPITAL MANAGEMENT, L.P.,**
**APPELLEE.**

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF TEXAS
BANKRUPTCY CASE NO. 19-34054 (SGJ)

### BRIEF OF APPELLEE

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz
John A. Morris
Gregory V. Demo
Hayley R. Winograd
10100 Santa Monica Blvd.,
13th Floor
Los Angeles, CA 90067
(310) 277-6910

**ROBBINS, RUSSELL, ENGLERT, ORSECK & UNTEREINER LLP**
Roy T. Englert, Jr.
Matthew M. Madden
Shikha Garg
2000 K Street NW, 4th Floor
Washington, DC 20006
(202) 775-4500

**HAYWARD PLLC**
Melissa S. Hayward
Zachery Z. Annable
10501 N. Central Expy,
Suite 106
Dallas, TX 75231
Tel: (972) 755-7100

**ATTORNEYS FOR APPELLEE**

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel of record certifies that the following listed persons and entities, as described in Local Bankruptcy Rule 8012.1, have an interest in the outcome of this appeal.

1.  **Appellants:**

    **The Charitable DAF Fund, L.P.**, **CLO Holdco, Ltd.**, **Mark Patrick**, **Sbaiti & Company PLLC**, **Mazin A. Sbaiti**, and **Jonathan Bridges** (the "<u>DAF Appellants</u>")

    Counsel for DAF Appellants:
    SBAITI & COMPANY PLLC
    Mazin A. Sbaiti
    Jonathan Bridges
    J.P. Morgan Chase Tower
    2200 Ross Avenue, Suite 4900W
    Dallas, TX 75201
    Tel: (214) 432-2899

    SCHAERR | JAFFE LLP
    Erik S. Jaffe
    Brian J. Field
    1717 K Street NW, Suite 900
    Washington, DC 20006
    Tel: (202) 787-1060

    **James Dondero**

    Counsel for Appellant Dondero:
    LEVINGER PC
    Jeffrey S. Levinger
    1700 Pacific Avenue, Suite 2390
    Dallas, TX 75201
    Tel: (214) 855-6817

BONDS ELLIS EPPICH SCHAFER JONES LLP
John T. Wilson IV
Clay M. Taylor
Bryan C. Assink
420 Throckmorton Street, Suite 1000
Fort Worth, TX 76102
Tel: (817) 405-6900

2.   **Appellee (Debtor):**

**Highland Capital Management, L.P.**

Counsel for Appellee:
PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz
John A. Morris
Gregory V. Demo
Hayley R. Winograd
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910

ROBBINS, RUSSELL, ENGLERT, ORSECK & UNTEREINER LLP
Roy T. Englert, Jr.
Matthew M. Madden
John B. Goerlich
Shikha Garg
2000 K Street NW, 4th Floor
Washington, DC 20006
Tel: (202) 775-4500

HAYWARD PLLC
Melissa S. Hayward
Zachery Z. Annable
10501 N. Central Expy, Suite 106
Dallas, TX 75231
Tel: (972) 755-7100

*/s/ Zachery Z Annable*
Zachery Z. Annable

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Bankruptcy Procedure 8012(a), undersigned counsel certifies that Highland has no parent corporation, and there is no publicly held corporation that owns 10% or more of its stock. Pursuant to Federal Rule of Bankruptcy Procedure 8012(b), undersigned counsel certifies that there are no debtors not named in the caption.

*/s/ Zachery Z Annable*
Zachery Z. Annable

# **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

CORPORATE DISCLOSURE STATEMENT ....................................................... iii

TABLE OF AUTHORITIES ........................................................................... vi

STATEMENT REGARDING ORAL ARGUMENT ............................................ 1

STATEMENT OF THE ISSUES ......................................................................... 1

INTRODUCTION ............................................................................................... 2

STATEMENT OF THE CASE ............................................................................ 5

     A.     Initiation Of Bankruptcy Proceedings .................................................. 5

     B.     The HarbourVest Settlement And Ensuing Litigation ........................ 8

     C.     Contempt Proceedings ...................................................................... 10

STANDARD OF REVIEW ............................................................................... 13

SUMMARY OF ARGUMENT .......................................................................... 14

ARGUMENT ..................................................................................................... 16

I.     The Bankruptcy Court Correctly Found That The Seery Motion Violated The Gatekeeper Provisions ............................................................ 16

     A.     The Bankruptcy Court Properly Found That The Seery Motion Constituted The Pursuit Of A Claim Against Seery .......................... 16

     B.     The Gatekeeper Provisions Lawfully Required Appellants To Seek Permission From The Bankruptcy Court ................................... 19

     C.     The Gatekeeper Provisions Provided Sufficient Notice .................... 21

     D.     The Bankruptcy Court Did Not Abuse Its Discretion By Finding Contempt Notwithstanding Appellants' Asserted Good Faith ................................................................................................... 23

II.     Appellants Cannot Avoid A Contempt Finding With A Collateral Attack On The Final Orders They Violated, Which Were Lawful In Any Event .................................................................................................... 24

     A.     Appellants Cannot Collaterally Attack The Gatekeeper Provisions ......................................................................................... 25

     B.     The Gatekeeper Provisions Appropriately Apply To Seery ............. 27

III.    The Bankruptcy Court's Finding Of Dondero's Contempt Is Not Clear
        Error .................................................................................................30

        A.      The Bankruptcy Court Did Not Err In Finding Dondero
                Responsible For Contemptuous Conduct ...........................................30

        B.      Dondero Had Fair Notice Of These Contempt Proceedings .............33

IV.     The Bankruptcy Court Did Not Abuse Its Discretion In Awarding
        Sanctions ..............................................................................................35

V.      Appellants' Other Constitutional Objections Are Meritless ........................39

        CONCLUSION ......................................................................................41

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aerojet-General Corp. v. Askew*,
    511 F.2d 710 (5th Cir. 1975) ..............................................................................25

*Alberti v. Klevenhagen*,
    46 F.3d 1347 (5th Cir. 1995) ............................................................................34

*Allen v. C & H Distribs., L.L.C.*,
    813 F.3d 566 (5th Cir. 2015) ............................................................................36

*Am. Airlines, Inc. v. Allied Pilots Ass'n*,
    228 F.3d 574 (5th Cir. 2000) ............................................................................22

*Barton v. Barbour*,
    104 U.S. 126 (1881)........................................................................11, 27, 28, 29

*In re Bradley*,
    501 F.3d 421 (5th Cir. 2007) ............................................................................32

*In re Bradley*,
    588 F.3d 254 (5th Cir. 2009) ............................................................................39

*Carter v. Rodgers*,
    220 F.3d 1249 (11th Cir. 2000) ........................................................................27

*Ex parte Chambers*,
    898 S.W.2d 257 (Tex. 1995) ............................................................................32

*Charitable DAF Fund v. Highland Capital Mgmt., L.P.*,
    No. 21-bk-03067 (Bankr. N.D. Tex.) ..............................................................10

*Charitable DAF Fund v. Highland Capital Mgmt., L.P.*,
    No. 3:21-cv-00842-B (N.D. Tex.) ................................................................9, 21

*Chua v. Ekonomou*,
    1 F.4th 948 (11th Cir. 2021) ............................................................................29

*Combs v. City of Huntington*,
    829 F.3d 388 (5th Cir. 2016) ............................................................................35

*In re DeLorean Motor Co.*,
   991 F.2d 1236 (6th Cir. 1993) ..............................................................27

*In re Dennis*,
   330 F.3d 696 (5th Cir. 2003) ................................................................30

*FDIC v. LeGrand*,
   43 F.3d 163 (5th Cir. 1995) ..................................................................13

*Gordon v. Nick*,
   162 F.3d 1155 (4th Cir. 1998) (per curiam) ........................................27

*In re Grand Jury Proc.*,
   280 F.3d 1103 (7th Cir. 2002) ..............................................................38

*Gulf King Shrimp Co. v. Wirtz*,
   407 F.2d 508 (5th Cir. 1969) ................................................................23

*Hornbeck Offshore Servs., LLC v. Salazar*,
   713 F.3d 787 (5th Cir. 2013) ................................................................22

*In re Khan*,
   706 F. App'x 22 (2d Cir. 2017) .............................................................41

*Lamar Fin. Corp. v. Adams*,
   918 F.2d 564 (5th Cir. 1990) ................................................................38

*Lawrence v. Goldberg*,
   573 F.3d 1265 (11th Cir. 2009) ......................................................27, 28

*Martin v. Trinity Indus., Inc.*,
   959 F.2d 45 (5th Cir. 1992) ..................................................................22

*NexPoint Advisors, L.P. v. Highland Capital Mgmt., L.P.*,
   No. 21-10449 (5th Cir.) ........................................................................29

*Petroleos Mexicanos v. Crawford Enters., Inc.*,
   826 F.2d 392 (5th Cir. 1987) ................................................................14

*In re Pratt*,
   524 F.3d 580 (5th Cir. 2008) ................................................................13

*Ravago Americas L.L.C. v. Vinmar Int'l Ltd.*,
   832 F. App'x 249 (5th Cir. 2020) .......................................................37

*Republic Supply Co. v. Shoaf*,
   815 F.2d 1046 (5th Cir. 1987) .........................................................25

*Roussell v. Brinker Int'l, Inc.*,
   441 F. App'x 222 (5th Cir. 2011) .....................................................36

*In re Silver Oak Homes, Ltd.*,
   167 B.R. 389 (Bankr. D. Md. 1994) .................................................27

*In re SkyPort Glob. Commc'ns, Inc.*,
   661 F. App'x 835 (5th Cir. 2016) .....................................................37

*In re SkyPort Glob. Commc'ns, Inc.*,
   No. 08-bk-36737, 2013 WL 4046397 (Bankr. S.D. Tex. Aug. 7,
   2013), *aff'd*, 528 B.R. 297 (S.D. Tex. 2015), *aff'd*, 661 F. App'x
   835 (5th Cir. 2016) .........................................................................23

*Spallone v. United States*,
   487 U.S. 1251 (1988) ......................................................................38

*Taggart v. Lorenzen*,
   139 S. Ct. 1795 (2019) ....................................................................24

*The Dugaboy Investment Trust and Get Good Trust v. Highland
   Capital Mgmt., L.P.*,
   No. 3:21-cv-00261-L (N.D. Tex.) .....................................................8

*Travelers Indem. Co. v. Bailey*,
   557 U.S. 137 (2009) ..................................................................25, 26

*United States v. Bajakajian*,
   524 U.S. 321 (1998) ........................................................................38

*Villegas v. Schmidt*,
   788 F.3d 156 (5th Cir. 2015) .......................................................20, 21

*Wegner v. Standard Ins. Co.*,
   129 F.3d 814 (5th Cir. 1997) ...........................................................36

*Western Water Mgmt., Inc. v. Brown*,
  40 F.3d 105 (5th Cir. 1994) .................................................................25

*In re Wiggins*,
  848 F.3d 655 (5th Cir. 2017) ...........................................................13

*Wilson v. United States*,
  221 U.S. 361 (1911)...........................................................................32

**Statutes & Rules**

28 U.S.C. § 959...................................................................................12

Fed. R. Bankr. P. 8002........................................................................25

Fed. R. Civ. P. 15 ...............................................................................18

**Other Authorities**

American Heritage Dictionary .............................................................17

Cambridge Dictionary.........................................................................17

Macmillan Dictionary .........................................................................17

Merriam-Webster.com Dictionary ......................................................17

Oxford Learner's Dictionary...............................................................17

## STATEMENT REGARDING ORAL ARGUMENT

Appellee respectfully submits that oral argument is unnecessary. The Bankruptcy Court's Contempt Order was a straightforward application of its unambiguous prior orders, and this appeal involves no legal or factual issues that cannot be resolved by the briefing alone.

## STATEMENT OF THE ISSUES

1.       Whether the Bankruptcy Court properly exercised its discretion to find that Appellants' motion in the District Court for leave to add Highland's independent director and CEO, James P. Seery, Jr., as a lawsuit defendant was in contempt of two prior orders' gatekeeper provisions requiring Bankruptcy Court authorization before pursuing claims against Seery.

2.       Whether Appellants may excuse their violation of the gatekeeper provisions of the Bankruptcy Court's final orders by belatedly asserting that those provisions were not lawful, and, if so, whether the gatekeeper provisions lawfully required the Bankruptcy Court's authorization before Appellants could commence or pursue claims against Seery relating to his court-approved roles at Highland.

3.       Whether the Bankruptcy Court's sanctions award, based on Highland's actual and estimated fees and expenses, was a proper exercise of its discretion.

## INTRODUCTION

Appellant James Dondero, when he was the CEO of Appellee and Debtor Highland Capital Management, L.P. ("Highland"), drove Highland into bankruptcy through "a decade or more of contentious litigation in multiple forums all over the world" resulting in several multi-million-dollar claims against Highland. R.000983. He has subsequently proceeded to seize on every opportunity, personally and through entities he controls, to interfere with Highland and the resolution of its bankruptcy. Dondero's stated goal, the Bankruptcy Court has observed, is to "burn the place down" after he did not get his way in these proceedings. R.001027.

Unsurprisingly, early in Highland's bankruptcy proceedings, the U.S. Trustee and Highland's Official Committee of Unsecured Creditors (the "Committee") expressed grave concerns about Dondero remaining CEO and continuing to manage the Debtor's estate. They threatened to seek the appointment of a chapter 11 trustee to take over Highland and manage its estate in bankruptcy.

To avoid the appointment of such a trustee, Dondero agreed to resign as CEO, and the Bankruptcy Court approved three new independent directors to govern Highland. Several months later, James P. Seery, Jr., one of the independent directors, was appointed Highland's CEO. The Bankruptcy Court recognized that the "culture of constant litigation" that Dondero created at Highland had made it difficult to find qualified individuals to serve as directors and CEO, and so it entered two orders with

2

gatekeeper provisions that prohibited any entity from pursuing or commencing claims against Seery or the other directors without first obtaining authorization from the Bankruptcy Court and that court's determination that the claims were colorable.

Despite those orders, two Dondero-related entities, the Charitable DAF Fund, L.P. ("DAF") and CLO Holdco, Ltd. ("CLO Holdco"), at Dondero's instigation and with the assistance of their attorneys, filed a motion *in the District Court* for leave to add Seery as a defendant to a lawsuit commenced just a week earlier. That lawsuit challenged Seery's conduct in obtaining a court-approved settlement of a $300 million claim against Highland.

The District Court motion to add Seery as a lawsuit defendant was filed without the Bankruptcy Court's authorization. That was a direct and clear violation of the gatekeeper provisions. Indeed, the motion was unnecessary by rule, and so can be explained only as an attempt to circumvent the Bankruptcy Court's orders. Highland moved in the Bankruptcy Court to hold those responsible for that motion in contempt, and, after briefing and a lengthy evidentiary hearing, the Bankruptcy Court found DAF, CLO Holdco, Dondero, attorneys who filed the motion, and DAF's manager (together, the "Appellants") in contempt for violating the gatekeeper provisions.

Appellants advance a menagerie of meritless challenges to that predictable contempt order. They deny, unpersuasively, that seeking leave to add someone as a

defendant in a lawsuit constitutes the pursuit of claims against that person. They also claim, contrary to Fifth Circuit precedent, that a motion filed in a district court complies with a bankruptcy court's gatekeeper provision. They belatedly and baselessly challenge the legality of the gatekeeper provisions that they willfully violated—a classic case of "too little, too late." They also ignore the Bankruptcy Court's well-supported finding that Appellant James Dondero orchestrated the contemptuous conduct.

They go on to attack, without support, the Bankruptcy Court's $239,655 sanctions award—calculated to compensate Highland for its fees and expenses on the contempt motion—as being an "excessive," "punitive," and "criminal" sanction. They also accuse the Bankruptcy Court of having acted in a "fit of pique" and out of personal animosity toward Dondero and the other Appellants. And, for good measure, they throw in a "host of constitutional concerns involving due process, the separation of powers, and the First, Fifth, Sixth, and Eighth Amendments." DAF Br. 3-4.

None of that has any merit. Rather, this case involves a straightforward contempt order that is well within the Bankruptcy Court's discretion. The order responds to Appellants' clear (and transparently strategic) violation of two prior court orders and awards a sanction that compensates Highland for its resulting expenses.

## STATEMENT OF THE CASE

### A.    Initiation Of Bankruptcy Proceedings

Highland was a multibillion-dollar global investment adviser. R.000980. It filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 16, 2019. R.000981. At the time, Highland was privately owned and controlled by James Dondero, one of Highland's two co-founders. *Id.*

As the Bankruptcy Court explained when confirming Highland's reorganization plan, Highland was forced into bankruptcy by the "myriad of massive, unrelated, business litigation claims that it faced . . . after a decade or more of contentious litigation in multiple forums all over the world." R.000983. Indeed, both the U.S. Trustee and Committee expressed serious concerns about Highland's ability to act as a fiduciary to its estate given Dondero's history of self-dealing, fraud, and other misconduct. R.000986. They threatened to seek the appointment of a chapter 11 trustee to manage the estate. *Id.* To avoid such a drastic step, the Committee, Highland, and Dondero agreed to a governance settlement, which the Bankruptcy Court approved on January 9, 2020 (the "Governance Order"). R.000544.

Pursuant to the Governance Order, Dondero relinquished control of Highland and resigned his positions as a Highland officer and director. R.000546. Three new independent directors were appointed to govern Highland during its bankruptcy

5

proceedings and reorganization: James P. Seery, Jr., John S. Dubel, and retired bankruptcy judge Russell Nelms. R.000987, 000458. The Bankruptcy Court described each director as "eminently qualified." R.000987. Seery had "vast experience at prominent firms with high-yield and distressed investing similar" to Highland; Dubel had "40 years of experience restructuring large complex businesses and serving on boards"; and Nelms, of course, had extensive relevant experience from having served as a bankruptcy judge. *Id.*

When it approved the appointment of these independent directors, in lieu of installing a bankruptcy trustee, the Bankruptcy Court imposed (with Dondero's consent) a gatekeeper provision to safeguard the directors from baseless litigation:

> No entity may commence or pursue a claim or cause of action of any kind against any Independent Director . . . relating in any way to the Independent Director's role as an independent director . . . without the Court (i) first determining after notice that such claim or cause of action represents a colorable claim of willful misconduct or gross negligence against Independent Director . . . and (ii) specifically authorizing such entity to bring such claim. The Court will have sole jurisdiction to adjudicate any such claim for which approval of the Court to commence or pursue has been granted.

R.000546-47.

Highland later sought to have Seery appointed Chief Executive Officer, Chief Restructuring Officer, and Foreign Representative of Highland. R.000549. After conducting a hearing to assess Seery's credentials, the Bankruptcy Court approved (without objection from Dondero) the appointment on July 16, 2020 (the "<u>Seery</u>

Order"). R.000582. Like its earlier Governance Order, the Seery Order contained a

further gatekeeper provision that was specific to Seery's new role:

> No entity may commence or pursue a claim or cause of action of any
> kind against Mr. Seery relating in any way to his role as the chief
> executive officer and chief restructuring officer of the Debtor without
> the Bankruptcy Court (i) first determining after notice that such claim
> or cause of action represents a colorable claim of willful misconduct or
> gross negligence against Mr. Seery, and (ii) specifically authorizing
> such entity to bring such claim. The Bankruptcy Court shall have sole
> jurisdiction to adjudicate any such claim for which approval of the
> Court to commence or pursue has been granted.

R.000584.

The two gatekeeper provisions were essential to the Governance and Seery

Orders. As the Bankruptcy Court later explained, "it was not as easy to get such

highly qualified persons to serve as independent board members and, later, as the

Debtor's Chief Executive Officer, as it would be in an ordinary chapter 11 case"

because of the "culture of constant litigation" that Dondero created when he

controlled Highland. R.000988. "Naturally, [the directors] were worried about

getting sued no matter how defensible their efforts" because "everything always

ended in litigation at Highland." *Id.* Each of the independent directors, including

Seery, credibly testified that he would not have taken on the role of independent

director without "a gatekeeper provision prohibiting the commencement of litigation

against the independent directors without the Bankruptcy Court's prior authority."

*Id.*

7

**B.** **The HarbourVest Settlement And Ensuing Litigation**

In late 2020, Seery reached a settlement with one of Highland's largest creditors, HarbourVest, which had asserted a $300 million claim based on Highland's alleged fraudulent misrepresentations and other wrongful conduct. R.000990. After conducting an evidentiary hearing, the Bankruptcy Court approved the HarbourVest settlement on January 20, 2021, finding that the settlement was fair and equitable (the "HarbourVest Order"). R.000818.[1]

But true to form, litigation by Dondero and his controlled entities ensued. On April 12, 2021, in a collateral attack on the HarbourVest Order, Charitable DAF Fund, L.P. ("DAF") and CLO Holdco, Ltd. ("CLO Holdco"), through their counsel, Sbaiti & Company PLLC ("Sbaiti & Company"), sued Highland and related entities in the U.S. District Court for the Northern District of Texas, alleging that Highland fraudulently withheld material information from DAF and CLO Holdco and engaged in self-dealing when settling with HarbourVest. R.001595-620 (the "Original Complaint"). The Bankruptcy Court characterized this lawsuit as "*wholly frivolous*." R.000034.

---

[1] Notably, only Dondero, two trusts for which he is the beneficiary, and CLO Holdco objected to the HarbourVest settlement. R.000808; Bankr. No. 19-34054, Dkt. Nos. 1697 & 1706. CLO Holdco subsequently withdrew its objection. R.000014-15. The trusts appealed the HarbourVest Order, and that appeal remains pending. *The Dugaboy Investment Trust and Get Good Trust v. Highland Capital Mgmt., L.P.*, No. 3:21-cv-00261-L (N.D. Tex.).

DAF is a limited partnership formed by Dondero that is assertedly a charitable fund. R.000010. It controls $200 million in assets derived from Highland, Dondero, and Dondero's family trusts. *Id.* Dondero has historically been DAF's informal investment advisor and was its managing member until 2012. *Id.* Mark Patrick became DAF's general manager on March 24, 2021. R.000011. Before that, DAF's general manager was Grant Scott, Dondero's college housemate and longtime friend. R.000010. CLO Holdco serves as DAF's wholly owned investment arm. R.000010.

The Original Complaint did not name Seery as a defendant but identified him as a "potential party" and repeatedly complained of Seery's conduct in negotiating the HarbourVest settlement. R.001597; *see also* R.000012 (noting that Seery was mentioned approximately 50 times in the Original Complaint). Just one week after filing the Original Complaint, DAF and CLO Holdco moved the District Court for leave to amend their recently filed Complaint to add Seery as a defendant. R.001664 (the "Seery Motion"). DAF and CLO Holdco did not first seek leave from the Bankruptcy Court, under the gatekeeper provisions, to pursue claims against Seery.

The District Court denied the Seery Motion without prejudice on April 20, 2021, because the defendants had not yet been served or appeared. R.002054. The Seery Motion was not renewed. In September, the District Court referred the Original Complaint to the Bankruptcy Court; Highland promptly moved to dismiss, and that motion remains *sub judice. Charitable DAF Fund v. Highland Capital*

*Mgmt., L.P.*, No. 3:21-cv-00842-B (N.D. Tex. Sept. 20, 2021), Dkt. No. 64; *Charitable DAF Fund v. Highland Capital Mgmt., L.P.*, No. 21-bk-03067 (Bankr. N.D. Tex. Sept. 29, 2021), Dkt. No. 26.

## C.   Contempt Proceedings

On April 23, 2021, Highland moved for an order requiring DAF, CLO Holdco, and persons who authorized the Seery Motion to show cause why they should not be held in civil contempt for violating the gatekeeper provisions in the Governance and Seery Orders. R.001136. The Bankruptcy Court granted the motion on April 28, 2021, and set a hearing for June 8 at which DAF, CLO Holdco, Sbaiti & Company, "persons who authorized" the Seery Motion, and Dondero would be required to show cause why the court should not enter an order holding each in contempt and finding them jointly and severally liable for Highland's expenses. R.001876-77.

After a four-hour evidentiary hearing, the Bankruptcy Court issued a 31-page order on August 3, 2021, finding DAF; its general manager, Mark Patrick; CLO Holdco; Sbaiti & Company; individual attorneys at Sbaiti & Company, Mazin Sbaiti and Jonathan Bridges; and Dondero (together, the "Appellants") in contempt for violating the gatekeeper provisions in the Governance and Seery Orders. R.000038.

The Bankruptcy Court first rejected attempts to challenge the Governance and Seery Orders. It emphasized that "[*n*]*o one appealed the two bankruptcy court orders with the gatekeeper provisions*." R.000016. Accordingly, it concluded that

10

the Governance and Seery Orders were "final and nonappealable orders that have *res judicata* effect" to parties who had the opportunity to object to them, including DAF and CLO Holdco. R.000024-25.

The Bankruptcy Court nevertheless also rejected challenges to the lawfulness of the gatekeeper provisions. First, it held that the gatekeeper provisions appropriately protected Seery. The court explained that bankruptcy courts routinely employ gatekeeper provisions, pursuant to *Barton v. Barbour*, 104 U.S. 126 (1881), and apply them to "various court-appointed and court-approved fiduciaries and their agents in bankruptcy cases, including debtors in possession, officers and directors of a debtor, and . . . general partner[s] of a debtor." R.000023-24. The Bankruptcy Court described the purpose of gatekeeper provisions to (i) protect court-appointed officers from unjustified personal liability for acts taken within the scope of official duties, (ii) allow the bankruptcy court to maintain control over the estate to facilitate efficient administration of creditors' claims, (iii) attract competent and qualified trustees who might otherwise be deterred by risk of litigation, and (iv) protect court-appointed officers from being distracted or intimidated from doing their jobs. R.000022-23. And the court emphasized that "[i]n the Highland case, since Mr. Seery and the Independent Directors were proposed by the UCC to avoid the appointment of a trustee, it seemed rather obvious to the bankruptcy court that they

11

should have similar protections from suit—particularly against the backdrop of a litigation culture at Highland that had theretofore existed." R.000024.

Second, the court rejected the argument that the gatekeeper provisions violated 28 U.S.C. § 959(a) by precluding claims against Seery on a standard of liability short of gross negligence or willful misconduct. R.000024. The Bankruptcy Court explained that § 959(a) allows trustees to be sued "for postpetition torts or other causes of action that happen to occur in the ***ordinary course of operating a business*** (as opposed to actions of the trustee while engaged in the general administration of the case)." R.000025. Moreover, § 959(a) "gives the appointing court the equitable powers to control the litigation 'as the same may be necessary to the ends of justice.'" *Id.* The Bankruptcy Court therefore concluded that its gatekeeper provisions were firmly in line with § 959(a).

Next, the Bankruptcy Court found that the Seery Motion violated the gatekeeper provisions because it constituted the pursuit of a claim against Seery where prior Bankruptcy Court authorization was neither sought nor obtained. R.000035. The court dismissed the argument that DAF and CLO Holdco did not "commence or pursue" a claim against Seery because he had not yet been added as a defendant as "linguistic gymnastics that do[] not fly." *Id.*

In addition to DAF and CLO Holdco and their counsel, Sbaiti & Company, the Bankruptcy Court found others responsible for the Seery Motion. First, it found

that Patrick, DAF's general manager, authorized the Seery Motion. R.000027. Second, the court found that Dondero "sparked this fire" by encouraging Patrick to file the lawsuit challenging the HarbourVest settlement and by communicating directly with Sbaiti & Company about the suit. R.000028-29. Finally, the court noted that Mazin Sbaiti and Jonathan Bridges, attorneys at Sbaiti & Company, were also responsible for filing the Seery Motion. R.000034.

The Bankruptcy Court awarded sanctions. It concluded that an award of $239,655 in damages was warranted based on detailed time invoices submitted by Highland's primary counsel and conservative estimates of Highland's other expenses. R.000036-37. In an attempt to account for Highland's future expenses as a result of Appellants' misconduct, the court also imposed a $100,000 sanction for each unsuccessful level of rehearing, appeal, or petition for certiorari Appellants chose to pursue. R.000037.

## **STANDARD OF REVIEW**

This Court reviews a contempt order for abuse of discretion. *FDIC v. LeGrand*, 43 F.3d 163, 166 (5th Cir. 1995). It "review[s] the fact findings in an order from a bankruptcy court for clear error and its conclusions of law *de novo*." *In re Wiggins*, 848 F.3d 655, 660 (5th Cir. 2017). A bankruptcy court's imposition of sanctions and award of attorneys' fees is reviewed for abuse of discretion. *In re Pratt*, 524 F.3d 580, 584 (5th Cir. 2008). A court properly finds a party in civil

contempt where the movant shows, by clear and convincing evidence, "(1) that a court order was in effect; (2) that the order required certain conduct by the respondent; and (3) that the respondent failed to comply with the court's order." *Petroleos Mexicanos v. Crawford Enters., Inc.*, 826 F.2d 392, 401 (5th Cir. 1987).

## <u>SUMMARY OF ARGUMENT</u>

I.      The Bankruptcy Court correctly found that Appellants pursued a claim against Seery, in violation of the gatekeeper provisions in the Governance and Seery Orders, by moving, in the District Court, for leave to add Seery as a defendant in a then-pending lawsuit. Filing such a motion "pursues" a claim against someone under any ordinary meaning of that word. Fifth Circuit precedent also forecloses Appellants' argument that their motion *in the District Court* complied with the requirement that they obtain authorization *from the Bankruptcy Court* to pursue claims against Seery. Moreover, Appellants had ample notice of what the gatekeeper provisions required, and the Bankruptcy Court did not abuse its discretion by rejecting Appellants' supposed good faith as a defense to their civil contempt.

II.     Appellants cannot collaterally attack the lawfulness of the Governance and Seery Orders' gatekeeper provisions after having failed to do so when those Orders were entered. In any event, Appellants' belated challenge to the gatekeeper provisions fails on its merits. Courts have repeatedly used gatekeeper provisions to

protect court-approved, debtor fiduciaries similarly situated to Seery, including other debtors' officers and directors.

**III.**   The Bankruptcy Court correctly found Dondero in contempt. The court's factual finding that Dondero was one of the authorizing persons responsible for the Seery Motion is well supported by the record, including evidence that Dondero had direct communications with DAF and CLO Holdco's counsel about the litigation. The Bankruptcy Court's show-cause order also gave Dondero fair notice that he was liable to be held in contempt, which is why Dondero availed himself of the opportunity to defend himself at the contempt hearing.

**IV.**   The Bankruptcy Court properly exercised its discretion by awarding $239,655 in sanctions based on detailed records and conservative estimates of Highland's fees and expenses. There is no basis for excluding Highland's contempt-motion expenditures from that calculation. And the resulting sanction was demonstrably compensatory—not punitive, and not remotely unconstitutional.

**V.**   Appellants' constitutional objections also lack merit. The Bankruptcy Court afforded Appellants due process. It did not prejudge the contempt motion but rather carefully considered the evidence in its 31-page order. Nor are separation-of-powers concerns implicated by the Bankruptcy Court's lawful imposition and enforcement of gatekeeper provisions.

15

## ARGUMENT

I.   **THE BANKRUPTCY COURT CORRECTLY FOUND THAT THE SEERY MOTION VIOLATED THE GATEKEEPER PROVISIONS**

The Bankruptcy Court correctly found that Appellants pursued claims against Seery by filing the Seery Motion without the Bankruptcy Court's pre-authorization and a determination by that court that the claims against Seery were colorable. The gatekeeper provisions unambiguously, and lawfully, required such approval to be obtained from the Bankruptcy Court, and not from the District Court. Moreover, the Bankruptcy Court was well within its discretion to hold Appellants in contempt notwithstanding Appellants' protestations that they acted in good faith.

### A.   **The Bankruptcy Court Properly Found That The Seery Motion Constituted The Pursuit Of A Claim Against Seery**

Appellants contend that the Seery Motion did not "commence or pursue" a claim against Seery in violation of the gatekeeper provisions. In their view, when they sought leave to add Seery as a defendant to an existing complaint, and filed a proposed amended complaint to that end, they were not pursuing a claim against Seery because leave had not yet been granted. DAF Br. 15-18. As the Bankruptcy Court aptly noted, this argument amounts to nothing more than "linguistic gymnastics." R.000035.

The Bankruptcy Court stated the obvious: Appellants "were pursuing litigation when they filed the Seery Motion in the District Court." R.000035. In doing so, the court rejected Appellants' argument, which they reprise here, that

16

the pursuit of a claim can occur only "*after* 'commencing' an action against the party." *Id.* That common-sense conclusion follows from both the plain meaning of "pursue" and the context in which the gatekeeper provisions used that term.

For starters, the Bankruptcy Court's ruling comports with the plain meaning of "pursue." As the dictionaries Appellants cite show, the word means "to try to achieve something" (Macmillan Dictionary), or "to do something or try to achieve something over a period of time" (Oxford Learner's Dictionary). Other definitions of "pursue" are of a piece. *See* Merriam-Webster.com Dictionary ("try to get or do (something) over a period of time"); American Heritage Dictionary ("[t]o strive to gain or accomplish"); Cambridge Dictionary (to "try to do . . . or achieve [something], usually over a long period of time"). The Seery Motion undoubtedly tried to achieve the successful litigation of claims against Seery. It did so by taking the first step of seeking to add Seery as a new defendant in a pending case and proposing an amended complaint prominently naming him as a defendant. R.001675.

What is more, context is key, as Appellants acknowledge. DAF Br. 16. The Bankruptcy Court imposed the gatekeeper provisions to safeguard Seery, and the other independent directors, from the "culture of constant litigation" that Dondero had created at Highland. R.000988. The threat of incessant litigation against them reasonably made Seery and the other independent directors reluctant to accept

positions at Highland. *Id.* The court stressed that the gatekeeper provisions were thus intended to protect these court-approved officers from "being distracted from or intimidated from doing their jobs," and thereby maintain "the overall integrity of the bankruptcy process." R.000023.

In that context, the pursuit of claims against Seery, by motion for leave to file an amended complaint naming him as a defendant, touches directly on the Bankruptcy Court's core concerns. Such motions, if known to their targets, would be expected to cause their targets to seek legal advice about the claims being asserted against them, and to oppose the motions. Defending against meritless litigation would waste valuable time they should otherwise be spending on their stewardship of the debtor's estate. But the circumstances here were considerably more alarming: The Seery Motion was effectively an *ex parte* application because neither Seery nor any defendant was served or otherwise given notice, and the Seery Motion could have been granted without opposition. The Seery Motion was thus precisely the sort of harassing and duplicitous litigation conduct that the gatekeeper provisions were intended to prevent for the benefit of Seery, the other directors, and Debtor's estate.

Indeed, the Seery Motion can be explained only as an attempt to circumvent the gatekeeper provisions that Appellants knew applied. Otherwise, the Seery Motion was utterly unnecessary. DAF and CLO Holdco had filed their Original Complaint on April 12, 2021. Under Federal Rule of Civil Procedure 15(a)(1)(A),

they had the unilateral right to amend that complaint for 21 days, until May 3. The Seery Motion, filed on April 19, 2021, thus should be seen for what it was—a surreptitious attempt to obtain the imprimatur of the District Court for adding Seery as a defendant without first seeking or obtaining the Bankruptcy Court's approval.

Appellants march a parade of horribles past this straightforward application of the gatekeeper provisions. As Appellants tell it, if the Seery Motion constituted the pursuit of a claim, then "there would be no limit to what constitutes restricted pre-commencement 'pursuing' of a claim—legal research, drafting a complaint, [or] conferring with a client." DAF Br. 17. Not so. The gatekeeper provisions undoubtedly apply to actions taken in court. Highland did not contend, nor did the Bankruptcy Court find, that Appellants violated the gatekeeper provisions by drafting, researching, or discussing potential claims against Seery, but rather only by actually moving, in the District Court, to assert claims against him.

### B.    The Gatekeeper Provisions Lawfully Required Appellants To Seek Permission From The Bankruptcy Court

Appellants argue that, in any event, they *complied* with the gatekeeper provisions when they sought *the District Court's* leave to bring their claims against Seery. But the gatekeeper provisions stated clearly that *the Bankruptcy Court* had to authorize the pursuit of claims against Seery after determining that the claims were colorable. R.000547, 0000584. The decision to bypass the Bankruptcy Court was "nothing more than thinly veiled forum shopping." R.000035.

19

The Fifth Circuit squarely rejected the same argument Appellants raise in *Villegas v. Schmidt*, 788 F.3d 156 (5th Cir. 2015). There, the court held that a bankruptcy court's gatekeeper provision could ***not*** be "satisfied by filing suit in the district court with supervisory authority over the bankruptcy court." *Villegas*, 788 F.3d at 159. The court explained that there is a "distinction between the bankruptcy court and the district court," and thus, "every other circuit" has held that, where there is a gatekeeper provision, "'a debtor must obtain leave of the bankruptcy court before initiating an action in district court when the action is against the trustee or other bankruptcy-court-appointed officer, for acts done in the actor's official capacity.'" *Id.* (quoting *Carter v. Rodgers*, 220 F.3d 1249, 1252 (11th Cir. 2000)).

Appellants' only answer to *Villegas* is that it involved a court-appointed trustee and should be limited to that precise circumstance. DAF Br. 19 n.1. But that is a non sequitur. There is no logic to treating bankruptcy and district courts as distinct for some gatekeeper provisions and not others. Indeed, the Fifth Circuit recognized in *Villegas* that the same rationale applied both to trustees *and to bankruptcy-court-appointed officers*. 788 F.3d at 159.

Nor does that result impermissibly strip any jurisdiction from the district court. A bankruptcy court's gatekeeper determination of whether a claim involving a debtor's operation is colorable or frivolous is squarely within its jurisdiction, and those final orders are appealable to the district court for its review and, if necessary,

reversal. *See Villegas*, 788 F.3d at 159. Appellants emphasize the gatekeeper provisions' separate requirement that the Bankruptcy Court would have "sole jurisdiction" over any claims that it authorized. *See* R.000547, 000584. But that requirement is not at issue here; Appellants never sought, and so were never "granted," such pre-authorization. In any event, the District Court ultimately referred the Original Complaint (the one that Appellants had tried to amend) to the Bankruptcy Court. *Charitable DAF Fund v. Highland Capital Mgmt., L.P.*, No. 3:21-cv-00842-B (N.D. Tex. Sept. 20, 2021), Dkt. No. 64.

### C.    The Gatekeeper Provisions Provided Sufficient Notice

Appellants seek to excuse their violation of the Governance and Seery Orders' gatekeeper provisions by contending that those Orders failed to give them fair notice that the Seery Motion would constitute the impermissible pursuit of claims against Seery. DAF Br. 20. But, as explained above, a motion seeking leave to add someone as a defendant to a lawsuit, and attaching the amended complaint by which to do so, falls well within what it ordinarily means to pursue a claim against that person. Highland told Sbaiti & Company, before it and the other Appellants filed the motion, that the Governance and Seery Orders required them "to seek . . . authority from the Bankruptcy Court which has exclusive jurisdiction to make the determination as to whether an action against Mr. Seery may be brought." R.001641. Highland warned

that it would seek sanctions if Sbaiti & Company nevertheless "violate[d] such Orders by filing [its] motion in the District Court." *Id.*

Appellants also overstate the specificity required for the gatekeeper provisions to be the basis for a contempt order. The Bankruptcy Court was not required to "anticipate every action to be taken in response to its order, nor spell out in detail the means in which its order must be effectuated." *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 578 (5th Cir. 2000). The court was "entitled to a degree of flexibility in vindicating its authority against actions that, while not expressly prohibited, nonetheless violate the reasonably understood terms of the order." *Hornbeck Offshore Servs., LLC v. Salazar*, 713 F.3d 787, 792 (5th Cir. 2013); *see also Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992) ("It does not require a strained reading of the [order] to reach the conclusion that Defendants violated it.").[2]

Here, the context and text of the gatekeeper provisions were sufficiently specific and clear that Appellants should have reasonably understood that their behavior was prohibited. In the unlikely event that Appellants were *actually* uncertain about what the gatekeeper provisions prohibited, they could—and

---

[2] Appellants Sbaiti and Bridges, the individual attorneys responsible for filing the Seery Motion, briefly contend that they lacked notice that the gatekeeper provisions would be applied against attorneys responsible for pursuing claims in violation of those provisions. DAF Br. 22. But the gatekeeper provisions, of which Sbaiti and Bridges were aware, explicitly apply to any "entity" that pursues a claim. R.000546.

should—have asked the Bankruptcy Court to clarify or modify its Orders before violating them.[3] As the Fifth Circuit has explained, the proper way to resolve "doubts about the meaning of any part of [an] injunction" is to seek the issuing court's guidance. *Gulf King Shrimp Co. v. Wirtz*, 407 F.2d 508, 517 (5th Cir. 1969) (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187 (1949)); *see also In re SkyPort Glob. Commc'ns, Inc.*, No. 08-bk-36737, 2013 WL 4046397, at *45 (Bankr. S.D. Tex. Aug. 7, 2013), *aff'd*, 528 B.R. 297 (S.D. Tex. 2015), *aff'd*, 661 F. App'x 835 (5th Cir. 2016) ("If the [restrained parties] had any doubts as to the applicability of the Preliminary Injunction Order, they had the ability to seek clarification . . . ."). Appellants should not now be rewarded with reversal of the Bankruptcy Court's contempt finding based on a supposed ambiguity that they elected not to take up with the Bankruptcy Court before violating its Orders.

### D.    The Bankruptcy Court Did Not Abuse Its Discretion By Finding Contempt Notwithstanding Appellants' Asserted Good Faith

Appellants contend that their non-compliance with the gatekeeper provisions was in good faith, which would "counsel against a finding of contempt." DAF

---

[3] Instead, they did so only *after* they had violated the gatekeeper provisions, and *after* Highland had filed its contempt motion. On April 23, 2021, DAF and CLO Holdco filed a *Motion for Modification of Order Authorizing Retention of James P. Seery, Jr., Due to Lack of Subject Matter Jurisdiction*. R.001817. Though the motion challenged the Bankruptcy Court's jurisdiction to issue the gatekeeper provisions, it did not ask for any clarification of what constituted pursuit or commencement of a claim. *See* R.001825. Following a hearing, the Bankruptcy Court denied the motion. R.008907. DAF and CLO Holdco appealed, *see* No. 3:21-cv-01585-S (N.D. Tex.), which has been stayed pending the Fifth Circuit's decision, *see* No. 21-10449 (oral argument scheduled Mar. 8, 2022); *see also infra* at 29 n.4.

Br. 22. Appellants believe the Bankruptcy Court "should have 'withheld exercising its contempt power'" under these circumstances. *Id.* (quoting *In re Heritage Org., LLC*, Bankr. No. 04-35574-BJH-11, 2010 WL 3516174, at *2 (Bankr. N.D. Tex. Sept. 3, 2010)) (alteration adopted).

But those considerations are committed to the sound discretion of the Bankruptcy Court, and are not grounds for reversal. Judge Jernigan reasonably concluded, after an evidentiary hearing, that Appellants' conduct reflected more calculated, strategic "forum shopping" than they let on. R.000035. Moreover, contrary to Appellants' argument, "parties cannot be insulated from a finding of civil contempt based on their subjective good faith." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802-03 (2019).

## II.   APPELLANTS CANNOT AVOID A CONTEMPT FINDING WITH A COLLATERAL ATTACK ON THE FINAL ORDERS THEY VIOLATED, WHICH WERE LAWFUL IN ANY EVENT

Appellants contend that their violation of the Governance and Seery Orders' gatekeeper provisions cannot support a contempt finding and sanction because those gatekeeper provisions were unlawful from the get-go. But contempt proceedings are not avenues to collaterally attack the violated orders long after the time for challenging or appealing those orders has expired. What is more, Appellants' legal challenges to the gatekeeper provisions lack merit.

A.      **Appellants Cannot Collaterally Attack The Gatekeeper Provisions**

"The collateral attack on an injunction during contempt proceedings is prohibited if earlier review of the injunction was available." *Western Water Mgmt., Inc. v. Brown*, 40 F.3d 105, 108 (5th Cir. 1994). That prohibition on collateral attacks applies even if a party argues that a bankruptcy court's prior order had exceeded its jurisdiction. *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1052-53 (5th Cir. 1987).

Appellants had ample opportunity to object to, and appeal from, the Governance and Seery Orders. *See* Fed. R. Bankr. P. 8002(a). They chose not to. Indeed, Dondero affirmatively ***agreed*** to the terms of the Governance Order (R.000986), including its gatekeeper provision, and was later served with the substantially similar Seery Order (R.006039). CLO Holdco was also served with both Orders. R.005995 (Governance Order), 006039 (Seery Order).

DAF argued below, but not on appeal, that its collateral attack on the Governance and Seery Orders is permitted because it was not served with those Orders. R.002070. But *res judicata* binds those in privity with a party, *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 153 (2009), and CLO Holdco is wholly owned by DAF and shares the same manager and interests. *See* R.008819-20; *see also Aerojet-General Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir. 1975) (Whether the party to an order was a non-party's virtual representative for purposes of determining a claim or issue is a question of "fact for the trial court."). DAF thus cannot now

challenge those Orders to avoid the consequences of its contempt of them. *See, e.g.*, *Travelers Indem. Co.*, 557 U.S. at 153 ("So long as respondents or those in privity with them were parties to the Manville bankruptcy proceeding, and were given a fair chance to challenge the Bankruptcy Court's subject-matter jurisdiction, they cannot challenge it now by resisting enforcement of the 1986 Orders."). Likewise, Appellants Sbaiti & Company, Sbaiti, and Bridges are agents of entities that had notice and opportunity to challenge the gatekeeper provisions.

Appellants try to avoid the clear (and understandable) prohibition on using a contempt proceeding to launch a collateral attack on the violated order. They pitch their appeal as being "a subsequent as-applied challenge" to the Governance and Seery Orders. DAF Br. 21-22. But that is meritless. On their face, both Orders protected Seery from the commencement or pursuit of claims against him without Bankruptcy Court approval. Appellants' broadside attack on the lawfulness of such Orders to protect a court-approved independent director and CEO is not an "as-applied" challenge that is being asserted at the first opportunity. Rather, all of Appellants' legal challenges to the lawfulness of the gatekeeper provisions could—and should—have been made as objections to, and appeals from, the relevant Orders. They cannot now be advanced to defend Appellants' choice to violate those Orders.

### B.     The Gatekeeper Provisions Appropriately Apply To Seery

In light of the settled law prohibiting collateral attacks, this Court should not reach the merits. Even if this Court rejected Appellants' arguments, indulging those arguments at all can only sow confusion. But those arguments fall far short in any event.

Appellants acknowledge, as they must, "that this Court lacks authority to overrule" *Barton v. Barbour*, 104 U.S. 126 (1881). DAF Br. 29 n.10. For nearly 150 years, *Barton* and its progeny have afforded courts the ability to protect their appointed or approved fiduciaries from litigation in other courts concerning the conduct those fiduciaries were appointed or approved to undertake.

Courts have repeatedly affirmed that the *Barton* doctrine applies to persons and entities other than court-appointed trustees, including a debtor's officers and directors. *See, e.g.*, *Carter*, 220 F.3d at 1252 & n.4 (trustee *or* other bankruptcy-court-approved officer); *In re Silver Oak Homes, Ltd.*, 167 B.R. 389, 395 (Bankr. D. Md. 1994) (president and counsel of debtor); *Gordon v. Nick*, 162 F.3d 1155 (4th Cir. 1998) (per curiam) (managing partner); *Lawrence v. Goldberg*, 573 F.3d 1265, 1270 (11th Cir. 2009) (trustee and parties assisting the trustee in carrying out official duties); *see also In re DeLorean Motor Co.*, 991 F.2d 1236, 1241 (6th Cir. 1993) ("We hold, as a matter of law, counsel for trustee, court appointed officers who represent the estate, are the functional equivalent of a trustee, where as here,

27

they act at the direction of the trustee and for the purpose of administering the estate or protecting its assets.").

In one of the cases Appellants cite (DAF Br. 26 n.9), *Lawrence v. Goldberg*, 573 F.3d 1265 (11th Cir. 2009), the Eleventh Circuit explained that applying the *Barton* doctrine "to actions against officers approved by the bankruptcy court when those officers function 'as the equivalent of court appointed officers'" was appropriate. *Id.* at 1269 (quoting *Carter*, 220 F.3d at 1252 n.4). The *Barton* doctrine's application to such officers, the court of appeals held, "helps to ensure the proper functioning of the bankruptcy process." *Id.*

That is precisely what the Bankruptcy Court did here. It explained that it found the gatekeeper protections appropriate because "Mr. Seery and the Independent Directors were proposed by the UCC to avoid the appointment of a trustee." R.000024. Thus, Seery and the other independent directors were functioning, in the circumstances of this case, as the equivalent of court-appointed trustees, and the gatekeeper provisions are in lockstep with *Barton* doctrine case law. What is more, the Seery Motion is precisely the sort of collateral litigation affecting the bankruptcy process that the *Barton* doctrine is designed for. The Seery Motion, after all, mounted a new challenge, in a different court, to Seery's negotiation of a claim settlement that had already been vetted and approved by the Bankruptcy Court.

None of the limitations to the *Barton* doctrine that Appellants describe is relevant here. DAF Br. 26. Appellants note that the *Barton* doctrine "does not apply when a bankruptcy court no longer has jurisdiction." DAF Br. 26. But the Bankruptcy Court retains jurisdiction over Highland's bankruptcy case even today (and indisputably had jurisdiction when the Governance and Seery Orders were entered and when the Seery Motion was filed). For the same reason, Appellants' reliance on *Chua v. Ekonomou*, 1 F.4th 948, 954 (11th Cir. 2021), is misplaced. DAF Br. 27. In that case, the Eleventh Circuit held that the *Barton* doctrine did not apply "after the end of a receivership," and disagreed with circuits that have applied the doctrine after the end of a bankruptcy case to further protect court-appointed trustees from lawsuits. *Chua*, 1 F.4th at 954-55. Here, by contrast, the bankruptcy estate still existed when the Bankruptcy Court entered the Governance and Seery Orders and when Appellants violated those Orders.[4]

---

[4] In the Fifth Circuit, Dondero, and other entities that he controls, are separately challenging a similar gatekeeper provision in the Bankruptcy Court's order confirming Highland's chapter 11 plan of reorganization. *See NexPoint Advisors, L.P. v. Highland Capital Mgmt., L.P.*, No. 21-10449 (5th Cir.). Although the arguments in that appeal turn in part on the lawfulness of a bankruptcy court's retention of a gatekeeping role *after* plan confirmation—a circumstance not at issue here—Dondero and the other appellants in the confirmation appeal also argue, like Appellants here, that bankruptcy courts lack the authority and discretion to apply gatekeeper provisions to individuals other than court-appointed trustees. Oral argument before the Fifth Circuit in the confirmation appeal is scheduled for March 8, 2022.

## III. THE BANKRUPTCY COURT'S FINDING OF DONDERO'S CONTEMPT IS NOT CLEAR ERROR

Dondero separately challenges the Bankruptcy Court's finding that he, in particular, acted in contempt of the gatekeeper provisions in connection with the Seery Motion. Dondero argues that he was not responsible for the Seery Motion, and that he did not receive fair notice that he could be found in contempt as a result of his conduct. Both arguments challenge factual findings of the court below, reviewable on appeal only for clear error. And the record soundly rebuts both arguments.

### A. The Bankruptcy Court Did Not Err In Finding Dondero Responsible For Contemptuous Conduct

Dondero contends that there is no evidence that he authorized the Seery Motion. Dondero Br. 21-22. As he tells it, DAF's general manager, Patrick, was solely responsible for the Seery Motion. *Id.* at 26-35.

The Bankruptcy Court found otherwise as a factual matter. It determined that multiple persons were responsible for the decision to file the Seery Motion, including Patrick, attorneys from Sbaiti & Company, and Dondero himself. The Bankruptcy Court's factual finding that Dondero was an authorizing person responsible for the Seery Motion would be clear error "only if on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed." *In re Dennis*, 330 F.3d 696, 701 (5th Cir. 2003) (internal quotation

marks and citation omitted). Yet the Bankruptcy Court relied on ample evidence to find that Dondero was among the persons responsible for the Seery Motion.

Most importantly, the Bankruptcy Court relied on Patrick's testimony that Dondero came to him with the idea of filing suit to challenge Seery's and Highland's settlement of the HarbourVest claim. R.000027. Patrick, who became DAF's manager just days before the Seery Motion was filed, had little personal knowledge of the HarbourVest settlement or any alleged misconduct by Seery. *Id.*; *see also* R.009909-11 (Patrick's testimony describing his deference to Dondero). Dondero thus had multiple direct communications with Sbaiti & Company about the planned litigation in which Patrick did not participate. R.000028-29. Dondero also admitted that he knew about and discussed the Original Complaint and Seery Motion before their filing. R.006488, 006491, 010014. Although Dondero predictably denied any involvement with the Seery Motion at the contempt hearing, the Bankruptcy Court reasonably concluded that "[t]he totality of the evidence was clear that Mr. Dondero sparked this fire" and that "Patrick basically abdicated responsibility to Mr. Dondero with regard to dealing with Sbaiti and executing the litigation strategy." R.000029. "[W]hen the bankruptcy court's weighing of the evidence is plausible in light of the record taken as a whole, a finding of clear error is precluded, even if [the reviewing

31

court] would have weighed the evidence differently." *In re Bradley*, 501 F.3d 421, 434 (5th Cir. 2007).[5]

Dondero additionally argues that he cannot be held responsible for DAF and CLO Holdco's actions because he was not their agent. Dondero Br. 25. But Dondero's detour through agency law misses the point. It does not matter whether Dondero was acting as an agent of DAF or CLO Holdco; what matters is whether he acted to violate two Bankruptcy Court Orders *that explicitly restrained his own personal conduct*. Accordingly, Dondero's reliance on *Wilson v. United States*, 221 U.S. 361 (1911), and other cases about when a corporate officer is responsible for violating a "command to the corporation," *id.* at 376, is unavailing.[6]

---

[5] Dondero argues that only Patrick was *legally* authorized to control DAF's actions. Dondero Br. 27. But the Bankruptcy Court made a specific *factual* finding that Patrick "basically abdicated responsibility to Mr. Dondero with regard to dealing with Sbaiti and executing the litigation strategy." R.000029. Dondero cannot overcome the copious evidence that he personally led efforts to challenge the HarbourVest settlement and is thus one of the authorizing persons of the Seery Motion, along with Patrick and the Sbaiti attorneys.

[6] The Bankruptcy Court's finding that Dondero was among the persons responsible for the Seery Motion comports with agency principles, even though it was not required to do so. In one of the cases Dondero primarily relies on (Dondero Br. 26), the court explained that "[t]here must be evidence in the record that the corporate agent charged with contempt was somehow *personally* connected with defying the authority of the court or disobeying its lawful decrees." *Ex parte Chambers*, 898 S.W.2d 257, 261 (Tex. 1995). It is sufficient to hold an agent individually in contempt, the court further explained, that the agent "ha[s] knowledge of an order directed at the corporation [and] participates in or encourages the violation of that order." *Id.* Here, Dondero indisputably knew about the gatekeeper provisions, and the record contains considerable evidence of Dondero's personal communications with Sbaiti & Company and Patrick relating to the Original Complaint and Seery Motion

**B.      Dondero Had Fair Notice Of These Contempt Proceedings**

Dondero argues that the Bankruptcy Court held him in contempt *sua sponte*, and without fair notice, in violation of his due process rights. That argument is premised on a specious reading of the Bankruptcy Court's show-cause order and is contradicted by Dondero's own actions to oppose a contempt finding against him.

According to Dondero, the show-cause order pertained only to the "Violators," who were defined in Highland's motion as "DAF, CLO Holdco, the persons who authorized the DAF and CLO Holdco to file the Seery Motion, and the Sbaiti Firm and its attorneys." Dondero Br. 35. But the show-cause order explicitly invoked Dondero by name, ordering several parties, including "*Dondero* [to] appear **in-person** before this Court and show cause why an order should not be granted . . . finding and holding each of the Violators in contempt of court." R.001877 (first emphasis added). The only reasonable reading of the court's order is that Dondero was among the alleged "persons who authorized" the Seery Motion, which is why the show-cause order explicitly mentioned him as someone at risk of a contempt finding.

It is also clear that Dondero *actually understood* the show-cause order as notice of a potential contempt finding against him. Dondero filed a written objection to the show-cause order, stating that he "object[ed] to being named by the Court as an alleged or implied violator." R.001910 n.1. At the contempt hearing itself, he was

represented by counsel who argued why Dondero should not be held in contempt. *See* R.009890-91 (acknowledging that Dondero was "an alleged violator"); R.010080-83 (acknowledging that Dondero and his counsel appeared because Dondero "was named . . . within the order as an alleged violator"). Dondero's feigned surprise, on appeal, to have been caught up in the Bankruptcy Court's contempt finding is an unpersuasive attempt to rewrite history. *See Alberti v. Klevenhagen*, 46 F.3d 1347, 1360 (5th Cir. 1995) (finding sufficient notice and opportunity to be heard for civil contempt where contemnor submitted pleadings and participated in oral argument).

Dondero additionally argues that the Bankruptcy Court "granted relief beyond . . . the notice provided under the Show Cause Order" because the court did not explicitly find Dondero to be an authorizing person of the Seery Motion. Dondero Br. 42-43. This argument is unavailing. The show-cause order specifically lists Dondero as a potential contemnor, and so no separate finding that he fell into the category of persons who authorized the Seery Motion was necessary to link the contempt order to the show-cause order. In any event, the Bankruptcy Court *did* find that Dondero was among the persons who authorized the Seery Motion by finding that Patrick abdicated DAF's litigation strategy to Dondero, and that "each and every one of" Appellants violated the gatekeeper provisions through "their collaborative actions" in causing the filing of the Seery Motion. R.000029, 000034.

## IV.   THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION IN AWARDING SANCTIONS

The Bankruptcy Court appropriately awarded Highland sanctions in the amount of $239,655, reflecting Highland's expenses incurred in connection with responding to Appellants' contemptuous conduct. That sanction was an appropriate exercise of the Bankruptcy Court's discretion, not excessive (much less unconstitutionally so), and compensatory rather than punitive in nature. Appellants' contrary arguments have no merit.[7]

1.   "An attorney's fee award rests within the sound discretion of the [fee-awarding] court, and accordingly, [reviewing courts] will not reverse an award of attorneys' fees unless the trial court abused its discretion or based its award on clearly erroneous findings of fact." *Combs v. City of Huntington*, 829 F.3d 388, 391

---

[7] The Bankruptcy Court assessed an additional sanction of $100,000 for each level of unsuccessful appeal that Appellants take from the Contempt Order. R.000037-38. It awarded that sanction in lieu of Highland's request for treble damages upon any future violations and to protect the estate from having to bear substantial, additional litigation expense as a result of Appellants' contemptuous misconduct. R.000037. The Bankruptcy Court has acknowledged Dondero's "history of . . . continued litigiousness" and "question[ed] the good faith of Mr. Dondero and his affiliates" in pursuing their many challenges to the court's rulings. R.001031, 000994. Indeed, the Bankruptcy Court has found that Dondero threatened Seery that he would "burn the place down" if he did not get his way in this bankruptcy. R.001027.

Appellants argue (DAF Br. 37; Dondero Br. 44-47) that a prospective sanction for pursuing unsuccessful appeals is beyond a trial court's authority. Highland agrees that portion of the Bankruptcy Court's Order (R.000038 ¶ iii)) should be vacated without prejudice. Highland will seek additional sanctions to compensate it for the expense of parrying Appellants' frivolous appeal in due course and from the appropriate court. As a result, this Court need not reach Appellants' lengthy argument (DAF Br. 43-46) that a prospective sanction on unsuccessful appeals violates a constitutional right of access to courts and counsel and constitutes "viewpoint discrimination" in contravention of the First Amendment.

(5th Cir. 2016) (cleaned up). "A [lower] court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *Allen v. C & H Distribs., L.L.C.*, 813 F.3d 566, 572 (5th Cir. 2015) (internal quotation marks and citation omitted). Showing that a fee award was infected by a clearly erroneous factual finding is especially difficult because "'[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection,' and therefore 'substantial deference' is owed the [fee-awarding] court's 'overall sense of a suit.'" *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 233 (5th Cir. 2011) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

Here, the Bankruptcy Court's award to Highland of $239,655 is well grounded in the record. That award reflects fees and costs associated with Highland's efforts to remediate Appellants' contemptuous conduct. The Bankruptcy Court did not "pull[] numbers out of thin air." DAF Br. 37. Rather, its award was based on its careful review of more than 50 pages of detailed time entries from Highland's counsel and conservative estimates of other incurred expenses. *See* R.009750-804; R.008920-31; R.000036-37. The Bankruptcy Court was well aware of what reasonable fees would have been incurred "given [the court's] familiarity with the legal work done." *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 823 (5th Cir. 1997).

2.     Appellants contend that the award nevertheless was outside the Bankruptcy Court's discretion because Highland's expenses were not immediately

caused by Appellants' contemptuous conduct, but rather by Highland's decision to seek a contempt order because of that conduct. DAF Br. 34. That argument holds no water. It is entirely within the fee-awarding court's discretion to award fees and costs related to litigating the contempt issue. *See, e.g.*, *Ravago Americas L.L.C. v. Vinmar Int'l Ltd.*, 832 F. App'x 249, 261 (5th Cir. 2020) (affirming sanction including attorneys' fees for contempt hearing); *In re SkyPort Glob. Commc'ns, Inc.*, 661 F. App'x 835, 841 (5th Cir. 2016) ("Almost without exception it is within the discretion of the trial court to include, as an element of damages assessed against the defendant found guilty of civil contempt, the attorneys' fees incurred in the investigation and prosecution of the contempt proceedings." (citation omitted)).

It is no answer to say that Highland would have had to spend *some* money, on *different* proceedings, even if Appellants *had* complied with the gatekeeper provisions. *See* DAF Br. 35. To award reasonable sanctions, the Bankruptcy Court was not required to engage in Appellants' speculative exercise. The court needed only to consider what fees were actually incurred by the injured party in attempting to ensure compliance with the court's order. *See SkyPort Glob. Commc'ns*, 661 F. App'x at 841 (affirming attorneys' fees sanctions award which "restore[d] the SkyPort parties to where they were before they incurred attorneys' fees in an attempt to ensure compliance with the injunction").

Appellants' argument that the awarded sanction was "excessive" depends entirely on these meritless contentions that it compensated Highland for the wrong things. Appellants do not—nor could they—argue that the sum Highland spent on its contempt motion were unreasonable, or that there's anything "grossly excessive" about shifting those costs onto the contemnors.[8]

3.      The Bankruptcy Court's decision to compensate Highland for the actual expenses and fees it incurred as a result of Appellants' contemptuous conduct is a civil sanction, not a "punitive" or "criminal" one. Whether a contempt sanction is civil or criminal depends on its primary purpose. *Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 566 (5th Cir. 1990). "If the purpose of the sanction is to punish the contemnor and vindicate the authority of the court, the order is viewed as criminal. If the purpose of the sanction is to coerce the contemnor into compliance with a court order, or to compensate another party for the contemnor's violation, the order is considered purely civil." *Id.* (citations omitted).

---

[8] Appellants also assert that the sanctions violate the Eighth Amendment. But in the only case they cite (DAF Br. 51 n.18), *Spallone v. United States*, 487 U.S. 1251 (1988), the Supreme Court held that there is "*no compelling reason* why [it] should extend [the Eighth Amendment's Excessive Fines Clause's] reach to civil contempt sanctions." *Id.* at 1257 (emphasis added); *see also In re Grand Jury Proc.*, 280 F.3d 1103, 1110 (7th Cir. 2002) ("[A] fine assessed for civil contempt does not implicate the Excessive Fines Clause."). In any event, the Bankruptcy Court's $239,655 fee award, based on Highland's fees and expenses, would meet the Eighth Amendment's requirement that a fine "bear some relationship to the gravity of the offense." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998).

Contrary to Appellants' argument (DAF Br. 33), it makes no difference that past misbehavior is the genesis of the remediation. All contempt sanctions, civil or criminal, are backward-looking insofar as they compensate a party for injuries caused by another party's past conduct. *See In re Bradley*, 588 F.3d 254, 263-64 (5th Cir. 2009) ("[R]emedial contempt is civil, because it remedies the consequences of defiant conduct on an opposing party, rather than punishing the defiance per se.").

Here, the Bankruptcy Court explicitly stated that it was issuing civil contempt sanctions "to reimburse the injured party for the losses and expenses incurred" due to the contemptuous conduct. R.000036. Based on more than 50 pages of detailed timekeeping reports of the actual expenses incurred by Highland's counsel, the court deemed those fees "reasonable and necessary . . . in having to respond and react to the contemptuous conduct set forth herein." *Id.* There was no punitive aspect to these sanctions. The Bankruptcy Court *rejected* Highland's request that it award a sanction of double or triple Highland's fees. *See* R.001810, 000037.

## V.   APPELLANTS' OTHER CONSTITUTIONAL OBJECTIONS ARE MERITLESS

Appellants append a grab-bag of supposed constitutional violations in a thinly veiled attempt to make their appeal from a straightforward contempt order seem more substantial than it is. Some of these objections are addressed above, and none of the others warrants serious consideration.

First, Appellants argue that the Bankruptcy Court violated their due process rights because they did not receive notice of the potential sanctions. DAF Br. 41. But the Bankruptcy Court notified Appellants that sanctions could be imposed in its show-cause order. R.001877-78. (requiring the alleged contemnors to "show cause why an order should not be granted . . . directing the Violators, jointly and severally, to pay the Debtor's estate an amount of money equal to two (2) times the Debtor's actual expenses incurred in bringing this Motion"). In response to that show-cause order, Appellants engaged in extensive briefing and participated in an evidentiary hearing. Nor can Appellants plausibly claim that the amount of "the Debtor's actual expenses incurred in bringing" the contempt motion was unforeseeable to them while they vigorously contested that motion.

Second, Appellants baselessly claim that the Bankruptcy Court prejudged the contempt motion because its show-cause order referred to Appellants as "Violators." DAF Br. 42. But the Bankruptcy Court's show-cause order simply made use of a defined term from Highland's motion—nothing more, nothing less. *See* R.001137 (Highland motion defining "Violators"). The Bankruptcy Court squarely rejected the argument that its procedural order, which merely set a hearing date, was meant to convey any conclusion on the merits. R.009835. Nor can Appellants' contrary charge be squared with the extensive briefing, a four-hour hearing, and 31-page order that followed, in which the Bankruptcy Court carefully weighed the evidence

about the "alleged contemnors" and their "allegedly contemptuous actions." *See, e.g.*, R.000010.

Third, Appellants claim the gatekeeper provisions raise serious separation-of-powers concerns by stripping the District Court of jurisdiction. DAF Br. 46. As explained above, however, the gatekeeper provisions are lawful and the requirement that the Bankruptcy Court first determine whether a claim can be pursued comports with binding precedent and this Court's standing order.

Appellants' lengthy challenge to the constitutionality of bankruptcy judges fares no better. At least one court has rejected the argument that bankruptcy judges are not appointed in accordance with the Appointments Clause, *In re Khan*, 706 F. App'x 22, 23 (2d Cir. 2017), and binding precedent requires reviewing courts to grant substantial deference to bankruptcy courts, as Appellants themselves acknowledge. *See* DAF Br. 11 (recognizing that current precedent requires reviewing a bankruptcy court's civil contempt order and sanctions for abuse of discretion). This Court should follow that binding precedent.

## **CONCLUSION**

The Bankruptcy Court's Contempt Order should be affirmed except as to its imposition of a sanction on Appellants for pursuing unsuccessful appeals.

Dated: February 14, 2022

**HAYWARD PLLC**

*/s/ Zachery Z Annable*
Zachery Z. Annable (TX Bar No. 24053075)
ZAnnable@HaywardFirm.com
Melissa S. Hayward (TX Bar No. 24044908)
MHayward@HaywardFirm.com
10501 N. Central Expy, Suite 106
Dallas, TX 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

-and-

**PACHULSKI STANG ZIEHL &
JONES LLP**

Jeffrey N. Pomerantz (CA Bar No.143717)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760

-and-

**ROBBINS, RUSSELL, ENGLERT,
ORSECK & UNTEREINER LLP**
Roy T. Englert, Jr. (DC Bar No. 358464)
Matthew M. Madden  (DC Bar No. 991139)
Shikha Garg (NY Bar No. 5805635)
2000 K Street NW, 4th Floor
Washington, D.C. 20006
Tel: (202) 775-4500

*Counsel for Appellee*

## CERTIFICATE OF COMPLIANCE

1.     This document complies with the word limit of Fed. R. Bankr. P. 8015(a)(7)(B)(i) because, including footnotes and excluding the parts of the document exempted by Fed. R. Bankr. P. 8015(g), this document contains 9,834 words.

2.     This document complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word, typeface Times New Roman, 14-point type (12-point for footnotes).

*/s/ Zachery Z. Annable*
Attorney for Appellee
Dated: February 14, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2022, the foregoing Brief of Appellee was electronically filed using the appellate CM/ECF system. I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished via CM/ECF.

*/s/Zachery Z. Annable*
Attorney for Appellee