Case No. 3:21-cv-01974-X

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

---

**In re: Highland Capital Management, L.P.,**
*Debtor*.

---

**James Dondero; The Charitable DAF Fund, LP; CLO Holdco, Ltd.; Mark Patrick; Sbaiti & Company PLLC; Mazin A Sbaiti; and Jonathan Bridges**
*Appellants*,

v.

**Highland Capital Management, L.P.,**
*Appellee*.

---

On Appeal from the United States Bankruptcy Court for
the Northern District of Texas, Case No. 19-34054
Hon. Stacey G.C. Jernigan, Presiding

---

### REPLY BRIEF OF APPELLANT JAMES DONDERO

---

Jeffrey S. Levinger
LEVINGER PC
1700 Pacific Avenue
Suite 2390
Dallas, Texas 75201
(214) 855-6817

John T. Wilson IV
Clay M. Taylor
Bryan C. Assink
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900

**ATTORNEYS FOR APPELLANT JAMES DONDERO**

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... i

TABLE OF AUTHORITIES ................................................................... ii

INTRODUCTION ................................................................................1

ARGUMENT .......................................................................................2

I.    As a legal matter, the bankruptcy court erred by holding Mr. Dondero in contempt because he was not an "authorizing person" of the Seery Motion.........2

II.   The bankruptcy court erred by holding Mr. Dondero in contempt because there is no evidence that Mr. Dondero had any involvement with the preparation or filing of the Seery Motion. ...................................................................5

A.   The Debtor misrepresents the bankruptcy court's findings, which do not support a holding of contempt against Mr. Dondero. ........................................6

B.   The Debtor misrepresents the testimony from the Contempt Hearing. .......9

C.   Mr. Dondero's uncontroverted testimony confirms he had no involvement with the Seery Motion.......................................................................11

III.  The bankruptcy court erred by holding Mr. Dondero in contempt *sua sponte*. 13

IV.  The bankruptcy court improperly assessed sanctions against Mr. Dondero. 18

CONCLUSION ..................................................................................18

CERTIFICATE OF SERVICE .............................................................20

CERTIFICATE OF COMPLIANCE WITH RULE 8015(H) ...............................20

# TABLE OF AUTHORITIES

**Cases**

*City of Hartford v. Chase*,
 942 F.2d 130 (2d Cir. 1991) .........................................................................16

*Ex parte Bradley*,
 74 U.S. [7 Wall.] 364 (1868) ........................................................................14

*Fed. Home Loan Mortg. Corp. v. Berbod Realty Assocs., L.P.*,
 1994 U.S. Dist. LEXIS 21421 (S.D.N.Y. 1994) ...........................................5

*Hornbeck Offshore Services, L.L.C. v. Salazar*,
 713 F.3d 787 (5th Cir. 2013) .........................................................................3

*Moore v. Ford Motor Co.*,
 755 F.3d 802 (5th Cir. 2014) .......................................................................14

*In re Oliver*,
 333 U.S. 257 (1948).....................................................................................14

*Positive Software Sols., Inc. v. New Century Mortg. Corp.*,
 2004 U.S. Dist. LEXIS 32857 (N.D. Tex. 2004) ...................................14, 15

*Rankin v. City of Niagara Falls*,
 293 F.R.D. 375 (W.D.N.Y. 2013) ..................................................................8

*Skinner v. White*,
 505 F.2d 685 (5th Cir. 1974) ...................................................................14, 17

*Travelhost, Inc. v. Blandford*,
 68 F.3d 958 (5th Cir. 1995) ...........................................................................3

*Tummel & Carroll v. Quinlivan (In re Quinlivan)*,
 434 F.3d 314 (5th Cir. 2005) .....................................................................2, 3

*Wilson v. United States,* 221 U.S. 361 (1911) ..........................................................4

## INTRODUCTION

The Debtor tries to frame this Court's review of the Contempt Order as a purely factual question to which a bankruptcy court's findings are given deference. That is wrong: As Mr. Dondero's opening brief demonstrates, the issue as to Mr. Dondero primarily presents a question of law.

As a purely legal matter, Mr. Dondero could not have been held in contempt because he was not, and could not have been, an "authorizing person" of the Seery Motion. The Debtor's Contempt Motion did not seek to hold Mr. Dondero in contempt personally for any conduct. Rather, it sought contempt against only those individuals who "authorized" the DAF and CLO Holdco to file the Seery Motion in the DAF Action. Likewise, the Show Cause Order indicated that only the "Violators"—defined not to include Mr. Dondero personally—had to appear to show cause why they should not be held in contempt. Once Mr. Dondero was determined not to be an "authorizing person" of the Seery Motion, his involvement in the contempt proceedings should have been over, relieving him of any liability for contempt. Because the Debtor failed to prove by clear and convincing evidence that Mr. Dondero authorized the DAF and CLO Holdco to file the Seery Motion, he could not have been held in contempt. As to Mr. Dondero, this Court's review of the Contempt Order should end there.

But even if the Court accepts the Debtor's invitation to review the record further to see if Mr. Dondero had any involvement with the Seery Motion, there is no evidence that Mr. Dondero had any involvement with the preparation or filing of the Seery Motion.

The Debtor failed to meet its burden of proving by clear and convincing evidence that Mr. Dondero was in contempt of any bankruptcy court order. The bankruptcy court therefore erred in holding Mr. Dondero in contempt and the Contempt Order must be reversed as to Mr. Dondero.

## ARGUMENT

**I.      As a legal matter, the bankruptcy court erred by holding Mr. Dondero in contempt because he was not an "authorizing person" of the Seery Motion.**

Whether Mr. Dondero could have been held in contempt as an "authorizing person" of the Seery Motion is primarily a question of law.[1] As the record demonstrates, Mr. Dondero could not, as a matter of law, have authorized the DAF and CLO Holdco to file the Seery Motion in the DAF Action. The bankruptcy court therefore erred in holding Mr. Dondero in contempt because this was the only basis on which contempt could be imposed. Consequently, the Contempt Order must be reversed as to Mr. Dondero.

---

[1] *See Tummel & Carroll v. Quinlivan (In re Quinlivan)*, 434 F.3d 314, 318 (5th Cir. 2005) ("This Court reviews a bankruptcy court's conclusions of law *de novo*, findings of fact for clear error, and mixed questions of law and fact *de novo*.").

In an effort to sidestep this straightforward and correct conclusion, the Debtor is forced to argue that this Court should ignore applicable agency law in determining whether Mr. Dondero could have been held in contempt for an action taken by the DAF and CLO Holdco. The Debtor is wrong.[2]

As demonstrated in Mr. Dondero's opening brief, agency law is relevant here because (i) the only alleged contemptuous conduct was the filing of the Seery Motion by the DAF and CLO Holdco; (ii) with respect to any individual, the Debtor sought to hold in contempt only those persons who *authorized* the DAF and CLO Holdco to file the Seery Motion; and (iii) Mr. Dondero himself took no actions (and was not alleged to have taken any actions) with respect to the Seery Motion that violated any bankruptcy court order. For this reason, as a legal matter, Mr. Dondero could not have been held in contempt, and the bankruptcy court's contempt holding against him must be reversed.

---

[2] Initially, the Debtor mistakenly asserts that this Court should review the bankruptcy court's contempt holding against Mr. Dondero as a factual finding.  The Debtor is incorrect because the determination of whether a person can direct two corporate entities to act (here, by the filing of the Seery Motion) is a question of law that is reviewed *de novo*. At a minimum, the determination as to whether Mr. Dondero authorized the DAF and CLO Holdco to file the Seery Motion is a mixed question of law and fact also subject to *de novo* review. *See Tummel & Carroll v. Quinlivan (In re Quinlivan)*, 434 F.3d 314, 318 (5th Cir. 2005) ("This Court reviews a bankruptcy court's conclusions of law *de novo*, findings of fact for clear error, and mixed questions of law and fact *de novo*."). Even if the "clear error" standard applied, it must be tempered by the clear and convincing standard of proof for the imposition of contempt (as opposed to preponderance of the evidence). *See Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995). And because a court's contempt power "must be exercised with restraint and discretion," review of a contempt order should be more exacting. *See Hornbeck Offshore Services, L.L.C. v. Salazar*, 713 F.3d 787, 792 (5th Cir. 2013) (stating that review of an imposition of contempt "is not perfunctory"). The Debtor did not come close to meeting its burden against Mr. Dondero.

---

Under agency law principles, Mr. Dondero could not have been an "authorizing person" of the Seery Motion filed by the DAF and CLO Holdco because he was not an officer, director, or employee of those entities and had no ability to control, direct, or cause them to take any action.[3] The Debtor has failed to address Mr. Dondero's argument or explain how he could have been held in contempt for an action taken solely by the DAF and CLO Holdco (and their agents).

The evidence indisputably establishes that Mr. Patrick—not Mr. Dondero—was the corporate agent solely responsible for the official conduct of the DAF and CLO Holdco. Under *Wilson v. United States*[4] and the bankruptcy court's Show Cause Order, the only parties who could be held in contempt for the filing of the Seery Motion were the entities that filed the Seery Motion and their authorized agents who were legally responsible for its filing. Because the Debtor offered no evidence establishing that Mr. Dondero was (i) responsible for the conduct of these entities; or (ii) had any involvement with the preparation or filing of the Seery Motion, the bankruptcy court erred by holding him in contempt.

The record also establishes that Mr. Patrick alone made the decision to file the Seery Motion—as only he was permitted to do under the LPA—with the advice of

---

[3] The case excerpt cited in footnote 6 of the Debtor's Brief undercuts, rather than supports, its argument. [Br. at 32] As the Debtor acknowledges, there must be evidence that "the *agent* charged with contempt" was personally involved in the violation. [*Id.*] Here, there was no evidence that Mr. Dondero was an *agent* of the DAF or CLO Holdco with respect to the Seery Motion.

[4] 221 U.S. 361, 376 (1911).

the Sbaiti Firm. [R 009915-16] The record further shows that Mr. Dondero was not involved in the preparation of the Seery Motion or the decision to file it. [R 10010-13] For these reasons, even if the filing of the Seery Motion violated the bankruptcy court's orders—which it did not—only Mr. Patrick could be subject to contempt as an "authorizing person" for the DAF and CLO Holdco. *See Fed. Home Loan Mortg. Corp. v. Berbod Realty Assocs., L.P.*, 1994 U.S. Dist. LEXIS 21421, at *25 (S.D.N.Y. 1994) (applying *Wilson* in the context of a general partnership and holding the president of a limited partnership's general partner in contempt of a court order).

Because Mr. Dondero was not and could not have been an "authorizing person" of the Seery Motion, the bankruptcy court's Contempt Order must be reversed as to Mr. Dondero.

## II. The bankruptcy court erred by holding Mr. Dondero in contempt because there is no evidence that Mr. Dondero had any involvement with the preparation or filing of the Seery Motion.

Even though as a legal matter Mr. Dondero could not have been held in contempt because he was not—and could not have been—an "authorizing person" of the Seery Motion, the evidence also shows that Mr. Dondero had nothing to do with the Seery Motion. The Debtor failed to meet its burden of proving otherwise.

In an effort to avoid this absence of proof, the Debtor misrepresents the record and the bankruptcy court's findings. In particular, the Debtor tries to ascribe to the bankruptcy court findings it never made, misconstrues testimony at the contempt

hearing, and conflates the filing of the DAF Action with the filing of the Seery Motion. Each of these theories falls apart upon an examination the record.[5]

### A. The Debtor misrepresents the bankruptcy court's findings, which do not support a holding of contempt against Mr. Dondero.

Trying to locate some support that would excuse the bankruptcy court's numerous errors, the Debtor misrepresents its findings. But the Debtor's unsupported interpretation of the Contempt Order cannot survive scrutiny.

The Debtor initially asserts that the bankruptcy court found (i) Mr. Dondero was one of "multiple persons" responsible for the decision to file the Seery Motion; and (ii) Mr. Dondero was an "authorizing person" of the Seery Motion. [Br. at 30]. Neither of these characterizations of the Contempt Order is accurate.

At most, the Contempt Order contains findings indicating only that Mr. Dondero brought factual information to Mr. Patrick regarding the Harbourvest settlement and Mr. Dondero assisted the Sbaiti Firm by providing factual information underlying the DAF Action. [R.000027-29] The Contempt Order contains no findings that Mr. Dondero was "responsible" for the Seery Motion or that he "authorized" its filing in any way. In fact, the bankruptcy court's basis for holding Mr. Dondero in contempt is unclear from the Contempt Order.

---

[5] The Debtor did not even try to build a record against Mr. Dondero at the hearing because there was no need to do so—Mr. Patrick, the DAF, and CLO Holdco admitted responsibility for the filing of the Seery Motion.

The Debtor tries to fill in this gap by pointing to the bankruptcy court's statements in the Contempt Order that "[t]he totality of the evidence was clear that Mr. Dondero sparked this fire" and that "Patrick basically abdicated responsibility to Mr. Dondero with regard to dealing with Sbaiti and executing the litigation strategy." [Br. at 31] To the extent these general statements can even be considered findings of fact and not legal conclusions, they are clearly erroneous. And more importantly, they do not support a contempt holding against Mr. Dondero.

These purported findings have *nothing* to do with the Seery Motion and therefore cannot be used to justify the contempt holding against Mr. Dondero. "Sparking the fire" appears to be a reference to Mr. Dondero providing factual background regarding the Harbourvest settlement to the DAF and CLO Holdco, which they ultimately used in the Complaint that commenced the DAF Action. At best, this inartful "finding" refers only to Mr. Dondero providing information for the filing of the Complaint in the DAF Action—but that was entirely permitted under the two court orders and was not alleged to be contemptuous.[6] And while

---

[6] The filing of the Complaint in the DAF Action itself—that is, the underlying lawsuit in which the Seery Motion was filed—was completely permissible under the two relevant court orders, as well as Debtor's plan of reorganization and confirmation order. At the time the Complaint was filed on April 12, 2021, the Effective Date of the Debtor's confirmed plan had not yet occurred. As a result, the release, exculpation, and gatekeeper provisions contained in the plan were not yet in effect. *See* Bankr. Dkt. No. 2700 (indicating effective date of the plan occurred on August 11, 2021). The Debtor conceded as much in the Contempt Motion, and did not allege that the filing of the DAF Action itself violated any court order. [R.001150] Thus, whether Mr. Dondero assisted with the preparation of the Complaint is *irrelevant* to the Contempt Order because the filing of the

"abdicat[ing] litigation strategy" arguably could refer to the Seery Motion, this finding lacks the requisite specificity and detail necessary to support a holding of contempt. *See Rankin v. City of Niagara Falls*, 293 F.R.D. 375, 387 (W.D.N.Y. 2013) (in considering sanctions under Rule 11(b), the court stated that "A court's factual findings must be specific, and . . . must meet the high evidentiary burden of clear and convincing evidence applicable to findings of contempt.").

But even if these findings had anything to do with the Seery Motion, the Debtor failed to carry its burden of proving them by clear and convincing evidence. There is no evidence that Mr. Dondero "sparked any fire" regarding the Seery Motion or the DAF and CLO Holdco's decision to seek leave to potentially add Mr. Seery as a defendant in the DAF Action. And there is no evidence that Mr. Patrick "abdicated litigation strategy" to Mr. Dondero.

At best, the record reflects that Mr. Dondero provided only factual background to the Sbaiti Firm before the preparation of the Complaint in the DAF Action. The decision to file the Complaint was made by the Sbaiti Firm [R.009908], and the decision to file the Seery Motion was made by Mr. Patrick on behalf of the DAF and CLO Holdco. [R.009915-16, 009940-41] The uncontroverted testimony does not indicate that Mr. Dondero had anything to do with the preparation or filing

---

suit was neither contemptuous nor alleged to be so. The bankruptcy court appears to have ignored this critical distinction.

of the Seery Motion. [R 009915-16, 009940-41, 10010-13] Indeed, Mr. Dondero had no involvement with any litigation strategy, and there is no evidence to the contrary.

### B. The Debtor misrepresents the testimony from the Contempt Hearing.

Relying on isolated snippets from the record, the Debtor further misconstrues the evidence in an effort to find some justification for the bankruptcy court's Contempt Order against Mr. Dondero. But this effort also fails because there was not clear and convincing evidence that Mr. Dondero committed any contemptuous conduct.

As one example of its misrepresentations, the Debtor alleges:

"Most importantly, the Bankruptcy Court relied on Patrick's testimony that Dondero came to him with the idea of filing suit to challenge Seery's and Highland's settlement of the HarbourVest claim. R.000027."

[Br. at 31]

This assertion misstates both Mr. Patrick's testimony and the bankruptcy court's factual findings. Mr. Patrick testified that Mr. Dondero brought him *factual information only* regarding the Harbourvest transaction. [R.009909] After that, at Mr. Patrick's direction, the DAF and CLO Holdco retained the Sbaiti Firm and directed it to conduct an investigation and consider whether a lawsuit should be filed regarding the Harbourvest settlement. [*Id.*] The idea of filing the Complaint originated with the Sbaiti Firm—not Mr. Dondero. [R.009908] Only after the Sbaiti Firm was retained to conduct an investigation did Mr. Dondero communicate with

its attorneys about the underlying facts of the Harbourvest transaction. [R.009908-9909][7] Nothing in the record supports the Debtor's contention that the Complaint was Mr. Dondero's idea—and the Complaint could not be the subject of contempt in any event.

Equally misleading is the Debtor's next assertion:

"Dondero thus had multiple direct communications with Sbaiti & Company about the planned litigation in which Patrick did not participate. R.000028-29."

[Br. at 31]

But the undisputed testimony confirms that these discussions were about the facts of the Harbourvest transaction underlying the Complaint—not the Seery

---

[7] Mr. Patrick testified at the Contempt Hearing:

Q Now, after you became the Plaintiffs' authorized representative, Mr. Dondero communicated with the Sbaiti firm about the complaint that's marked as Exhibit 12, correct?

A Yes. After he brought certain information to myself and then that I engaged the Sbaiti firm to launch an investigation, I also wanted Mr. Dondero to work with the Sbaiti firm with respect to their investigation of the underlying facts.

Q Okay. Mr. Dondero did not discuss the complaint with you, but he did communicate with the Sbaiti firm about the complaint, correct?

A I believe -- yeah. I heard you slip in at the end "the complaint." I know he communicated with the Sbaiti firm. I can't -- I can't say what he said or didn't say with respect to the -- the actual complaint.

Q Okay. But Mr. Dondero got involved in the process initially when he brought some information to your attention concerning the HarbourVest transaction, correct?

A Correct. [R.009908-09]

Motion. There is no evidence that Mr. Dondero had any communications with anyone about the Seery Motion.

Finally, the Debtor asserts that:

"Dondero also admitted that he knew about and discussed the Original Complaint and Seery Motion before their filing. R.006488, 006491, 010014."

[*Id.*]

Only the first part of this sentence is accurate. Mr. Dondero did testify that he knew about the *Complaint* before it was filed, but no evidence demonstrates that he knew about or discussed the allegedly violative Seery Motion before it was filed. [R.006488, 006491 (discussing the Complaint only, not the Seery Motion)] As to the Seery Motion, Mr. Dondero testified that he did not remember for sure if he even knew about the motion before its filing, and he did not discuss it with anyone. [R.010014] The Debtor thus failed to prove by clear and convincing evidence that Mr. Dondero "knew about and discussed" the Seery Motion before it was filed.

### C. Mr. Dondero's uncontroverted testimony confirms he had no involvement with the Seery Motion.

Despite the Debtor's attempts to obfuscate the record, the Court's review of it will confirm that Mr. Dondero had no involvement with the Seery Motion. The most the record shows Mr. Dondero to have done—provide factual background to Mr. Patrick and the Sbaiti Firm on the Harbourvest settlement that was used for the filing

of the Complaint in the DAF Action—is not clear and convincing evidence that Mr.

Dondero was "responsible for," or "authorized," the filing of the Seery Motion.

In fact, Mr. Dondero clearly testified that he had no involvement with the

Seery Motion:

> Q Did you talk to them about coming to this Court under the gatekeeper
> order to see if you could get permission to sue Mr. Seery?
>
> . . .
>
> A I wasn't involved in any of the tactical stuff on who . . . to sue or
> when or whatever.
>
> . . .
>
> Q Did you tell the Sbaiti firm that you thought they should sue Mr.
> Seery?
>
> A I didn't get directly involved in who was -- who was specifically
> liable.

[R 10010-11]

. . .

> Q Okay. Did you suggest to Mr. Sbaiti that Mr. Seery should be named
> as a defendant in the lawsuit before it was filed?
>
> A: *Again, no. I wasn't involved with the tactics on who would be
> defendants and when or if other people would be added.*
>
> . . .
>
> Q And were you aware that that motion [the Seery Motion] was going
> to be filed prior to the time that it actually was filed?
>
> A I -- I don't remember. Probably.
>
> Q And who would have been the source of that information? Would
> that have been Mr. Sbaiti?
>
> A Yes.
>
> Q Okay. And did you express any support for the decision to file the
> motion for leave to amend in the District Court?

A I -- *I wasn't involved*. It was very complicated legal preservation conver... -- I wasn't involved. I knew the conversations were going on between different lawyers, *but I wasn't involved in the ultimate decision*. I didn't encourage, applaud, or even know exactly what court it was going to be filed in.

[R 010012-13] (emphasis added).

This testimony was not controverted. Thus, the record conclusively establishes that Mr. Dondero was neither responsible for, nor an "authorizing person" of, the Seery Motion. The Debtor failed to meet its burden of proving by clear and convincing evidence that he was.

For this additional reason, the Contempt Order must be reversed as to Mr. Dondero.

### III.    The bankruptcy court erred by holding Mr. Dondero in contempt *sua sponte*.

Not only is the Contempt Order substantively insupportable, it is procedurally defective because Mr. Dondero was not provided fair notice that he could be held in contempt if he was not determined to be an "authorizing person" of the Seery Motion. For this additional reason, the Contempt Order must be reversed as to Mr. Dondero.

In arguing that Mr. Dondero had fair notice of the contempt proceedings against him, the Debtor relies on a faulty reading of the Show Cause Order and Mr. Dondero's supposed actions in opposing the contempt proceeding. The Debtor is wrong on both counts.

The Contempt Motion sought to hold in contempt only the so-called "Violators," which the Debtor specifically defined as (i) the DAF and CLO Holdco; (ii) the Sbaiti Firm and its attorneys; and (iii) the persons who "authorized" the filing of the Seery Motion. [R.001136-37, 001148-51] Likewise, the Show Cause Order provided notice only to the "Violators." [R.001876-78] Accordingly, Mr. Dondero did not have notice that he could be held in contempt if he was not determined to be an "authorizing person" of the Seery Motion.[8] Because Mr. Dondero was not found to be an "authorizing person"—and there is no legal or factual basis for so finding— he could not have been held in contempt for any other reason.

In an effort to escape this conclusion, the Debtor argues that Mr. Dondero's literal reading of the Show Cause Order is "specious."[9] But based on the Order's plain terms, Mr. Dondero's interpretation is the only plausible one, and there is no legal basis or anything in the record suggesting that the Order should be read any differently. *See Positive Software Sols., Inc. v. New Century Mortg. Corp.*, Civil

---

[8] *See In re Oliver*, 333 U.S. 257, 275 (1948) ("Except for a narrowly limited category of contempts, due process of law . . . requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation."); *Skinner v. White*, 505 F.2d 685, 690 (5th Cir. 1974) ("The Supreme Court long ago condemned the adjudication of contempt charges raised for the first time at the hearing itself.") (citing *Ex parte Bradley*, 74 U.S. [7 Wall.] 364, 372-373 (1868)).

[9] "[T]extual interpretation of a court order is ultimately a legal question." *Moore v. Ford Motor Co.*, 755 F.3d 802, 806 (5th Cir. 2014).

---

Action No. 3:03-CV-0257-N, 2004 U.S. Dist. LEXIS 32857, at *15 (N.D. Tex. 2004) ("When interpreting the terms of a court order, courts should consider the plain meaning of the language and the normal usage of the terms in question."). Under its plain meaning, the Order required only the alleged "Violators"—three categories that did not include Mr. Dondero personally—to show cause why they should not be held in contempt.

The Debtor further suggests that by requiring Mr. Dondero to appear in-person at the hearing, the Show Cause Order implicated Mr. Dondero personally as a "Violator," even if he was not deemed to be an "authorizing person" of the Seery Motion. But this characterization misrepresents the text of the Show Cause Order. Contrary to the Debtor's assertion, the Order only required Mr. Dondero *to appear in person* at the hearing.[10] It did *not* require Mr. Dondero personally *to show cause* why he should not be held in contempt. Only the *Violators* were required under the Order to defend themselves against the contempt allegations. [R.001136-1169, 001137, 001142, 001148, 001808, 001876-78] Mr. Dondero was not individually included in that defined term and was not personally identified as a potential

---

[10] Some context on this point may be helpful. Under the bankruptcy court's standing order entered on May 24, 2021 [Bankr. Dkt. No. 2362], Mr. Dondero was already required to attend every hearing in the main bankruptcy case (via video conference or telephone). Because the bankruptcy court ordered the alleged Violators to appear in person at the hearing, and Mr. Dondero would have otherwise been required to attend remotely, the bankruptcy court must have reasoned that Mr. Dondero should attend in person as well, likely relying on the Debtor's unsupported rhetoric and allegations against Mr. Dondero contained in the Contempt Motion.

contemnor. [*Id.*] The Show Cause Order therefore could encompass Mr. Dondero *only if* he were first determined to be an "authorizing person" of the Seery Motion. The Debtor's argument to the contrary is irreconcilable with the terms of the Show Cause Order and has no support in the record. *See City of Hartford v. Chase*, 942 F.2d 130, 135 (2d Cir. 1991) ("The district court's interpretation of the Confidentiality Order simply cannot be reconciled with the plain meaning of the document.").

Finally, the Debtor argues that Mr. Dondero "actually understood the [Show Cause Order] as notice of a potential contempt finding against him," referring to Mr. Dondero's filed objection to the Contempt Motion and argument during the hearing. This argument is also without merit.

Because Mr. Dondero was not named personally as a potential contemnor in the Contempt Motion or Show Cause Order, he filed a limited objection to reiterate that he was "not a control or authorizing person of either of the plaintiffs and did not authorize the filing of the Seery Motion."[11] Likewise, Mr. Dondero's counsel made

---

[11] Mr. Dondero's limited objection makes clear that the only determination relevant to him was whether he was an "authorizing person" of the Seery Motion: "Mr. Dondero objects to being named by the Court as an alleged or implied violator and being required to appear in person at the "show cause" hearing on the Contempt Motion. While Mr. Dondero should not be before the Court in this matter, *to the extent he is somehow found to be a control or authorizing person by the Bankruptcy Court*, he hereby incorporates by reference and adopts the substantive arguments made by (i) The DAF, CLO Holdco, and Sbaiti & Co.; and (ii) Mark Patrick in their Objections and Responses to Debtor's Contempt Motion and the Court's Order to Show Cause, which were filed on May 14, 2021." (emphasis added). [R.001910] In addition, paragraph 2 of Mr. Dondero's objection restated the relief requested in the Contempt Motion, which sought only to hold the DAF,

clear at the hearing that he could be an alleged Violator only if he was an authorizing person of the Seery Motion, and that was the primary focus of the hearing from Mr. Dondero's perspective. [R.009890-91, 010080-83] As far as Mr. Dondero was concerned, once the evidence demonstrated he was not an "authorizing person" of the Seery Motion—which it conclusively did—his involvement in the matter should have ended. The Debtor did not seek to hold Mr. Dondero in contempt personally for any conduct.

By holding Mr. Dondero in contempt even though (i) he was not named in the Contempt Motion or Show Cause Order as a Violator; and (ii) he was not found to be an authorizing person of the DAF or CLO Holdco, the bankruptcy court effectively held him in contempt *sua sponte*. And by doing so, the bankruptcy court (i) unlawfully imposed a punitive, criminal contempt sanction against Mr. Dondero that it lacked authority to impose; and (ii) violated Mr. Dondero's due process rights. *See Skinner v. White*, 505 F.2d 685, 690 (5th Cir. 1974) (holding there was inadequate notice of a contempt charge because the contempt motion did not include the specific charge that was ultimately imposed against the alleged contemnor). The Contempt Order must be reversed as to Mr. Dondero for this additional reason.

---

the Sbaiti Firm, *and the persons who authorized the DAF and CLO Holdco* to file the Seery Motion to appear and show cause why they should not be held in contempt. [R.001911] Accordingly, Mr. Dondero's objection confirms that (i) he knew the term "Violators" did not personally include him unless he was determined to be an "authorizing person" of the Seery Motion; and (ii) the only issue to be determined as to Mr. Dondero was whether he authorized the DAF and CLO Holdco to file the Seery Motion. [R.001910-11]

**IV.    The bankruptcy court improperly assessed sanctions against Mr. Dondero.**

The Debtor concedes that this Court should vacate the bankruptcy court's $100,000 sanction for each level of appeal pursued by Mr. Dondero. [Br. at 35, n.7] But the Debtor persists in arguing that the $239,655 sanction award should be upheld because it represents attorney's fees the Debtor purportedly incurred from the alleged contemptuous conduct. But the attorney's fees awarded as damages cannot be affirmed under any theory because they (i) were punitive in nature, amounting to sanctions for criminal contempt; (ii) did not compensate for injury that was actually caused by the challenged conduct; and (iii) were otherwise excessive and contrary to the law.

Mr. Dondero joins in and adopts the arguments made by the Other Appellants in section III of their Opening Brief and section III of their Reply Brief. Based on those arguments, the sanctions imposed against him jointly and severally are erroneous and must be reversed.

## CONCLUSION

The Debtor concedes that the appellate-related sanctions should be vacated. But that alone is not enough. For the reasons stated herein and in Mr. Dondero's opening brief, this Court should reverse the *Memorandum Opinion and Order Holding Certain Parties and Their Attorneys in Civil Contempt for Court for Violation of Bankruptcy Court Orders* and all sanctions ordered therein, render

judgment that the Debtor take nothing against Mr. Dondero, and grant Mr. Dondero all other relief to which may be entitled.

Dated: March 21, 2022          Respectfully submitted,

*/s/ Bryan C. Assink*
John T. Wilson IV
State Bar I.D. No. 24033344
Clay M. Taylor
State Bar I.D. No. 24033261
Bryan C. Assink
State Bar I.D. No. 24089009
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile
Email: john.wilson@bondsellis.com
Email: clay.taylor@bondsellis.com
Email: bryan.assink@bondsellis.com

-and-

Jeffrey S. Levinger
State Bar I.D. No. 12258300
LEVINGER PC
1700 Pacific Avenue, Suite 2390
Dallas, Texas 75201
(214) 855-6817 telephone
(214) 817-4509 facsimile
Email: jlevinger@levingerpc.com

**ATTORNEYS FOR APPELLANT
JAMES DONDERO**

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that, on March 21, 2022, a true and correct copy of the foregoing document was served via the Court's CM/ECF system on counsel for Appellee and all other parties requesting or consenting to such service in this case.

*/s/ Bryan C. Assink*
Bryan C. Assink

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 8015(h)</u>

1.      This document complies with the type-volume limitation of Fed. R. Bankr. P. 8015(h) as it contains 4,976 words, excluding the portions of the document exempted by Fed. R. Bankr. P. 8015(g).

2.      This brief complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type style requirements of Fed. R. Bankr. P. 8015(a)(7)(B) because its has been prepared in a proportionally-spaced typeface using Microsoft Word in 14 pt. Times New Roman (and 12 point for footnotes).

*/s/ Bryan C. Assink*
Bryan C. Assink
