Civil Action Nos. 3:21-cv-01974-X & 3:21-cv-01979-S

---

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

---

THE CHARITABLE DAF FUND LP; CLO HOLDCO LTD;
MARK PATRICK; SBAITI & COMPANY PLLC; MAZIN A. SBAITI;
JONATHAN BRIDGES; and JAMES DONDERO,

*Appellants,*

v.

HIGHLAND CAPITAL MANAGEMENT, L.P.,

*Appellees.*

---

In re: Highland Capital Management, L.P.,
*Debtor.*

---

On Appeal from the United States Bankruptcy Court for the Northern District of
Texas, Case No. 19-34054, Hon. Stacey G.C. Jernigan, Presiding

---

REPLY BRIEF OF APPELLANTS THE CHARITABLE DAF FUND, L.P.,
CLO HOLDCO, LTD., MARK PATRICK, SBAITI & COMPANY, PLLC,
MAZIN A. SBAITI, AND JONATHAN BRIDGES

---

Mazin A. Sbaiti
Jonathan Bridges
SBAITI & COMPANY PLLC
JPMorgan Chase Tower
2200 Ross Avenue
Suite 4900W
Dallas, TX 75201
Phone: (214) 432-2899
mas@sbaitilaw.com

Erik S. Jaffe*
Brian J. Field*
SCHAERR | JAFFE LLP
1717 K Street, NW
Suite 900
Washington, DC 20006
Phone: (202) 787-1060
ejaffe@schaerr-jaffe.com

*Admitted *pro hac vice*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... ii

ARGUMENT ..........................................................................................1

    I.      Appellants Did Not Violate the Seery Order. ......................................3

          A.      The face of the Seery Order confirms that the motion for leave neither commenced nor pursued a claim..........................3

          B.      If Highland is correct, the Seery Order failed to provide clear notice to support sanctions. ...............................................7

          C.      Appellants' arguments are timely. ..............................................9

          D.      Appellants' good faith efforts to comply with the Seery Order counsel against sanctions.................................................11

    II.     The Bankruptcy Court Extended the *Barton* Doctrine Far Beyond its Proper Reach. ....................................................................13

    III.    The Bankruptcy Court Lacked Jurisdiction to Issue its Punitive Contempt Order....................................................................................17

    IV.    The Bankruptcy Court's Order Raises Serious Constitutional Issues. ...................................................................................................23

CONCLUSION.....................................................................................26

CERTIFICATE OF SERVICE ............................................................28

CERTIFICATE OF COMPLIANCE....................................................28

# TABLE OF AUTHORITIES

## Cases

*Am. Airlines* v. *Allied Pilots Ass'n*,
  228 F.3d 574 (5th Cir. 2000)...............................................................8

*Aureus Asset Managers, Ltd.* v. *United States*,
  121 Fed. Cl. 206 (2015) ...................................................................26

*Buckhannon Bd. & Care Home* v. *W. Va. Dep't of Health & Hum. Res.*,
  532 U.S. 598 (2001).........................................................................19

*Carter* v. *Rogers*,
  220 F.3d 1249 (11th Cir. 2000) ................................................. 14, 15

*Cohen* v. *Virginia*,
  19 U.S. (6 Wheat.) 264 (1821)............................................................4

*Conner* v. *Travis Cnty.*,
  209 F.3d 794 (5th Cir. 2000)............................................................22

*Dennis* v. *United States*,
  339 U.S. 162 (1950).........................................................................14

*Goodyear Tire & Rubber Co.* v. *Haeger*,
  137 S. Ct. 1178 (2017) ....................................................................20

*Gordon* v. *Nick*,
  162 F.3d 1155 (4th Cir. 1998) .........................................................15

*Gulf King Shrimp Co.* v. *Wirtz*,
  407 F.2d 508 (5th Cir. 1969)..............................................................9

*Hernandez* v. *Mesa*,
  140 S. Ct. 735 (2020) ......................................................................17

*Hornbeck Offshore Servs.* v. *Salazar*,
  713 F.3d 787 (5th Cir. 2013)............................................................21

*In re 7303 Holdings, Inc.*, No. 08-36698,
  2010 WL 3420477 (Bankr. S.D. Tex. Aug. 26, 2010).......................24

*In re DeLorean Motor Co.*,
  991 F.2d 1236 (6th Cir. 1993) .........................................................15

*In re Gravel*,
  6 F.4th 503 (2d Cir. 2021)...............................................................8, 9

*In re Heritage Org.*, No. 04-35574-BJH-11,
  2010 WL 3516174 (Bankr. N.D. Tex. Sept. 3, 2010)..........................................11

*In re Highland Cap. Mgmt., L.P.*, No. 3:21-CV-0879-K,
  2022 WL 394760 (N.D. Tex. Feb. 9, 2022).........................................................10

*In re Hipp, Inc.*,
  895 F.2d 1503 (5th Cir. 1990) .............................................................................17

*In re Khan*, No. 10-46901-ess,
  2014 WL 4956676 (Bankr. E.D.N.Y. Sept. 30, 2014)........................................25

*In re Miller*,
  570 F.3d 633 (5th Cir. 2009).................................................................................16

*In re Pacific Lumber Co.*,
  584 F.3d 229 (5th Cir. 2009).................................................................................13

*In re Silver Oak Homes, Ltd.*,
  167 B.R. 389 (Bankr. D. Md. 1994) ......................................................................15

*In re SkyPort Global Communications*,
  661 F. App'x 835 (5th Cir. 2016) .........................................................................21

*Int'l Union, United Mine Workers of Am.* v. *Bagwell*,
  512 U.S. 821 (1994).............................................................................................18

*La. Educ. Ass'n* v. *Richland Par. Sch. Bd.*,
  421 F. Supp. 973 (W.D. La. 1976), *aff'd*, 585 F.2d 518 (5th Cir. 1978).............24

*Lamar Fin. Corp.* v. *Adams*,
  918 F.2d 564 (5th Cir. 1990).................................................................................17

*Lamie* v. *U.S. Tr.*,
  540 U.S. 526 (2004).............................................................................................16

*Lawrence* v. *Goldberg*, 573 F.3d 1265 (11th Cir. 2009). .......................................15

*McCampbell Royalty Int.* v. *Nat'l Park Serv.*,
  112 F.3d 1283 (5th Cir. 1997) .............................................................................11

*Petroleos Mexicanos* v. *Crawford Enters.*,
  826 F.2d 392 (5th Cir. 1987).................................................................................18

*Ravago Americas L.L.C.* v. *Vinmar International Limited*,
  832 F. App'x 249 (5th Cir. 2020) ................................................................. 20, 21

*Taggart* v. *Lorenzen*,
  139 S. Ct. 1795 (2019).........................................................................................12

*Travelhost, Inc.* v. *Blandford*,
  68 F.3d 958 (5th Cir. 1995)........................................................................8

*United States* v. *Jones*, 569 F.3d 569 (6th Cir. 2009)............................................26

*United States* v. *Madison*,
  226 F. App'x 535 (6th Cir. 2007) ...........................................................26

*United States* v. *Rizzo*,
  539 F.2d 458 (5th Cir. 1976)...................................................................18

*United States* v. *Stein*,
  541 F.3d 130 (2d Cir. 2008)....................................................................24

*W. Water Mgmt.*, *Inc.* v. *Brown*,
  40 F.3d 105 (5th Cir. 1994)............................................................. 10, 11

*Ziglar* v. *Abbasi*,
  137 S. Ct. 1843 (2017) ............................................................................16

**Statute**

28 U.S.C. § 959(a) ..........................................................................................16

**Rule**

Fed. R. Civ. P. 60(b)(1)...................................................................................11

**Other Authority**

Black's Law Dictionary (11th ed. 2019) .....................................................4

Imposing nearly $250,000 in criminal sanctions for a quickly denied and unanswered motion simply asking this Court for permission to file an amended complaint is indefensible. The supposedly offending motion was literally harmless, and Highland Capital Management ("Highland") has not identified a single expense caused by that motion. Rather, all its expenses were self-inflicted by the improper and unnecessarily expansive contempt proceedings it initiated.

Sanctions were especially inappropriate because Appellants did not violate the bankruptcy court's legally and constitutionally infirm "gatekeeping" order. Accordingly, this Court should vacate the bankruptcy court's erroneous and excessive sanctions order.

## ARGUMENT

The bankruptcy court's sanctions order suffers from many flaws. *First*, and most significantly, Appellants did not violate the Seery Order when they moved for leave to file a claim against Mr. Seery that expressly asked this Court to review the application of the Seery Order. That mere motion for permission to take future action neither commenced nor pursued a claim against him. The terms of the Seery Order did not provide Appellants adequate notice of the bankruptcy court's overly expansive application encompassing merely asking this Court for permission to "commence" a suit, with candor acknowledgement of the Seery Order itself. Such lack of clarity, and Appellants' good faith efforts to obtain permission from this

Court rather than merely amending their district court complaint as of right, render contempt sanctions improper.  Indeed, Appellants have not found a single case imposing contempt sanctions for seeking an as-applied determination from the District Court regarding the application and scope of a gatekeeping order.

*Second*, contempt sanctions are inappropriate because the underlying Seery order is an improper extension of the constitutionally suspect *Barton* Doctrine.  The jurisprudential methodology underlying *Barton*—expanding a limited statute based on judicial desire to more fully implement its supposed singular purpose or policy— has long been abandoned by the Supreme Court, and *Barton* should not be expanded beyond the narrow limits of binding, yet questionable, precedent.  Mr. Seery was not a court-appointed trustee and was not appointed by a trustee, and in this Circuit, that is the precedential limit of the *Barton* Doctrine.

*Third*, because the contempt sanctions far exceed any harm actually caused by the supposedly offending motion for leave, those sanctions are punitive, and hence criminal, in nature, and beyond the jurisdiction of the bankruptcy court. Furthermore, charging all Appellants for the excessive time spent attacking Mr. Dondero is especially inappropriate given that he did not file the motion at issue and his role is irrelevant to whether the motion violated the Seery Order.  Additionally, Highland concedes the error of prejudging appellate sanctions—despite having

2

proposed such sanctions themselves—yet ignores that such overreach also reflects the tainted quality of the proceeding as a whole.

*Finally*, the Court should interpret the Seery Order narrowly to avoid the serious constitutional issues the sanctions order presents. Affirming the sanctions would require resolution of significant due process, separation of powers, First Amendment, Eighth Amendment, and Takings Clause challenges.

## I.    Appellants Did Not Violate the Seery Order.

There is no dispute about what occurred here: Appellants requested leave to file a claim against Mr. Seery in light of the gatekeeping order, that request was denied, and Appellants never filed a claim against Mr. Seery. The initial dispute is simply whether requesting leave clearly constitutes "commenc[ing] or pursu[ing] a claim" against Mr. Seery. Such pre-filing activity does not "commence or pursue a claim." Appellants' Br. 15-18. Rather, Appellants could only have commenced or pursued a claim against Mr. Seery *after* this Court granted leave, which it never did.

### A.    The face of the Seery Order confirms that the motion for leave neither commenced nor pursued a claim.

By its very terms, the Seery Order did not prohibit Appellants from filing a motion for leave to bring a claim against Mr. Seery. In fact, the Seery Order *required* a request for permission: "No entity may commence or pursue a claim or cause of action … against Mr. Seery … without the Bankruptcy Court['s]" authorization. Order at 3 (July 16, 2020) (R.000584) ("Seery Order"). And if one may not

3

"commence or pursue a claim" without first receiving authorization, the act of *requesting* authorization (regardless from whom it is sought) cannot "commence or pursue a claim." Otherwise, even a request to the bankruptcy court itself would do the very thing that is forbidden.

1.     The plain language of the Seery Order confirms as much. Highland concedes that Appellants did not "commence" a claim against Mr. Seery. *See* Highland Br. 17 (discussing only definitions of "pursue"). That is fatal; one cannot "pursue" something it has not "commence[d]." Indeed, to "pursue" a claim is "[t]o prosecute" it. *Pursue*, Black's Law Dictionary (11th ed. 2019). And one cannot "prosecute" a claim until he has "commence[d] a suit[.]" *Cohen* v. *Virginia*, 19 U.S. (6 Wheat.) 264, 408 (1821). Accordingly, by conceding that Appellants did not commence a claim, Highland effectively demonstrates that Appellants could not have "pursued" a claim through the motion for leave.

Yet, Highland, at 17, reads "pursue" to have no bounds, claiming that "pursue" means "tr[ying] to achieve the successful litigation of claims[.]" That definition is broad enough to be meaningless, and certainly not clear enough for purposes of imposing contempt sanctions for pre-commencement conduct. Indeed, Highland's effort to forbid anything imagined to be "the first step of seeking to add Seery as a new defendant," *id.*, shows its arbitrary quality—anything up to and including a request for permission even from the bankruptcy court could be deemed

the "first step" towards commencing a claim, including conferring with opposing counsel before filing the motion, as Appellants did.  Appellants' Br. 8.[1]  Highland offers no explanation for why *that* (or even earlier preparation) was not the "first step of seeking to add Seery as a new defendant."

Despite Highland's protests, at 19, its proposed definition contains no intrinsic limit excluding all other pre-claim activity.  Highland's suggestion that it did not seek sanctions for such other activity misses the point that its *definition* is overbroad, and hence flawed, and fails to provide adequate notice *ex ante*, whether or not Highland or the bankruptcy court reached for the full breadth of that definition *post hoc* in the eventual contempt proceeding.

Highland's complete fabrication of an *implicit* limitation that "pursuing a claim" was only intended to include *in-court* activities, at 19, cannot be found anywhere in its actual definition, and only makes sense if "pursuing a claim" was something that occurred *after* such claim was "commenced" in court.  Appellants' narrower definitions demonstrate that far more obvious reading of the relevant phrase.  Furthermore, the bankruptcy court expressly rejected Highland's proposed limit to in-court "pursuit," sanctioning Mr. Dondero for actions he took entirely outside of court and before the motion for leave was ever filed, noting that he

---

[1] This also puts to rest Highland's false statement, at 18, that it was not "given notice" of the motion.

"confirmed that he participated in discussions with Mr. Sbaiti regarding the filing of the Complaint."  Order at 21, R.000029.  Far from being a fictional "parade of horribles," the limitless reading of Highland's definition is precisely how the bankruptcy court interpreted the Seery Order—applying it even to conduct that occurred before the motion for leave.  Highland cannot now save its improper sanctions award with an imaginary limitation that preserves the result but has no basis in the language or any prior warnings from the bankruptcy court.

The Seery Order is most obviously triggered upon the filing—commencement—of a claim against Mr. Seery.  Any post-filing activity in the case would then be "pursuit" of that claim.  Neither happened here.  Highland cites no authority supporting its broad reading, and the bankruptcy court's own reliance, R.000035, on its *post hoc* personal definition of these terms is wholly insufficient.

2.    The context of the order and the challenged motion also support the plain reading of the Seery Order as more limited than Highland suggests.  According to Highland, at 17-18, the Seery Order exists to protect "court-approved officers from being distracted from or intimidated from doing their jobs" by the "threat" of litigation.  Even if true, that it is irrelevant.  The case against Highland was already properly filed, R.001771, and Mr. Seery would necessarily have been involved in its defense anyway, regardless whether he was named as a defendant.  Insulating him from claims stemming from his role as a corporate officer adds literally nothing, was

6

improper to begin with, and certainly does not support an expansive reading of the Seery Order.  If "context is key," Appellee's Br. 17, the proper context is that the motion for leave never required a response, was denied before even being served on Mr. Seery, and was not renewed.  Appellants' Br. 8-9.  Highland's hypothetical concerns, at 18, that a motion *could have* distracted somebody, even if it did not do so here, again emphasizes the limitless theory it advances, and the importance of *actual* context in not imposing sanctions that are pointless and excessive, other than as intended punishment. [2]

Looking to both the language and the context of the Seery Order, it only extends to the filing and *subsequent* prosecution of a claim, which does not encompass Appellants' motion for leave.  The bankruptcy court abused its discretion in concluding otherwise and imposing sanctions.

### B.    If Highland is correct, the Seery Order failed to provide clear notice to support sanctions.

Even assuming *arguendo* that an expansive reading of the Seery Order could forbid requesting permission from this Court to file an amended complaint, the Order failed to provide Appellants with clear notice of such hypothetical breadth, and thus

---

[2] Highland's inflamed rhetoric, at 18, that the circumstances were "alarming," is not even plausible given that the motion for leave was in fact harmless. The same is true of Highland's claim, at 18, that the motion for leave "harass[ed]" Mr. Seery. Highland does not explain how something can harass someone if they are not aware of it.

sanctions are unfounded.  *See Travelhost, Inc.* v. *Blandford*, 68 F.3d 958, 961 (5th Cir. 1995) ("A party commits contempt when he violates a definite and specific order of the court[.]").  As the Second Circuit explains, the order must leave "*no doubt* in the minds of those to whom it was addressed" about "precisely what acts are forbidden."  *In re Gravel*, 6 F.4th 503, 512-13 (2d Cir. 2021) (emphasis added).  Highland's failure, at 21-23, to address any of this authority speaks volumes.

Instead, Highland relies on the preposterous argument, at 21, that Appellants had clear notice of the Seery Order's reach because Highland, in its authoritative and self-serving wisdom, informed Appellants that Highland believed the motion would violate the Seery Order.  But Highland's adversarial interpretation does not substitute for clear notice by the Order itself.  Appellants were certainly entitled to seek this Court's review of that erroneous assertion and, if anything, the Parties' divergent reading of the Seery Order only *confirms* that it failed to provide sufficiently clear notice.

Highland, at 22, raises the strawman that the bankruptcy court need not "anticipate every action to be taken in response to its order, nor spell out in detail the means in which its order must be effectuated."  Highland Br. 22 (quoting *Am. Airlines* v. *Allied Pilots Ass'n*, 228 F.3d 574, 578 (5th Cir. 2000)).  Of course, no one has suggested otherwise.  But Appellants were entitled to "a definite and specific order of the court," *Travelhost*, 68 F.3d at 961, leaving "no doubt in [their] minds"

8

about "precisely what acts are forbidden," *In re Gravel*, 6 F.4th at 512-13.   And where such notice is lacking, draconian sanctions are unlawful.   Rather, the bankruptcy court should have taken the opportunity to clarify its vague order to ensure that the parties were on notice going forward.[3]

## C.   Appellants' arguments are timely.

The Court should also reject Highland's argument, at 25-26, that Appellants' challenge to the Seery Order's notice is untimely.   Appellants are challenging the sufficiency of the Seery Order's notice because it has only now been applied to them in a way that shows the reach the bankruptcy court believes the Order to have. Highland's claim that Appellants "had ample opportunity to" mount a facial challenge earlier is nonsense.   Certainly, Highland does not mean to argue that Appellants should have immediately filed a facial challenge to the Seery Order raising every possible way that the Order could be applied in the future.   That likely would have triggered a sanctions motion itself and would have ground the bankruptcy proceedings to a halt.

---

[3] Highland also overstates, at 22-23, Fifth Circuit law on whether a party should seek clarification of an order it believes is vague.   The cases Highland cites merely state that if a party has "doubts about the meaning of any part of the injunction, it could have sought district court clarification."   *Gulf King Shrimp Co.* v. *Wirtz*, 407 F.2d 508, 517 (5th Cir. 1969).   And that is exactly what they did—they filed a motion for leave "out of an abundance of caution" in light of the Seery Order.   R.001964.

Furthermore, there is no evidence in the record that undersigned Appellants even had notice of the Seery Order when it was issued, or that they could have filed a timely appeal even if they wanted to.[4]  Indeed, the Seery Order was not even a "final" appealable order because the bankruptcy court "retain[ed] jurisdiction." R.000584 ¶ 8; *Ruiz* v. *United States*, 243 F.3d 941, 948-49 (5th Cir. 2001).[5]  Thus, Highland is wrong to argue, at 25, that the Seery Order was final and that "*res judicata* binds those in privity with a party."  Other judges in this district say otherwise.  Indeed, Judge Kinkeade recently found that another of the bankruptcy court's orders that reserved jurisdiction over the continued enforcement of the order was not final and was still interlocutory.  *See In re Highland Cap. Mgmt., L.P.*, No. 3:21-CV-0879-K, 2022 WL 394760 (N.D. Tex. Feb. 9, 2022).

Highland is similarly wrong, at 25, in arguing that a collateral attack on the Seery Order is improper.  While the Fifth Circuit has rejected collateral attacks on an injunction "if earlier review of the injunction was available," *W. Water Mgmt., Inc.* v. *Brown*, 40 F.3d 105, 108 (5th Cir. 1994), that predicate does not apply here.  In *Western Water Management*, the alleged contemnors had "attack[ed]" the

---

[4] Moreover, the Attorney Appellants could not have challenged the Seery Order when it was issued because they had not yet entered the case.  Appellants' Br. 22. And while they are Appellants' agents, they were nonetheless without notice that the Seery Order would be applied in such an atextual way.

[5] The sanctions order, by contrast, required prompt payment by Appellants, and thus is final for those purposes, notwithstanding retention of jurisdiction.

challenged injunction "[i]n their previous appeal," and the Fifth Circuit rejected their efforts to "reopen consideration of the issue." *Id.* Here, Appellants are asking the Court to address these issues for the first time because, to state the obvious, a party "may not challenge [an order] as applied" until it is "applie[d] … to [them]." *McCampbell Royalty Int.* v. *Nat'l Park Serv.*, 112 F.3d 1283, 1288 (5th Cir. 1997). The Seery Order has now been applied to Appellants in a harmful way, which makes this challenge entirely appropriate and timely.[6]

### D. Appellants' good faith efforts to comply with the Seery Order counsel against sanctions.

In addition to the above reasons, Appellants' good faith efforts and other mitigating factors demonstrate that the bankruptcy court should have "with[eld] exercising its contempt power." *In re Heritage Org.*, No. 04-35574-BJH-11, 2010 WL 3516174, at *2 (Bankr. N.D. Tex. Sept. 3, 2010).

Highland concedes, at 18-19, that Appellants could have simply filed an amended complaint as a matter of right to add claims against Mr. Seery. The motion

---

[6] That the motion for leave involved claims that had not even accrued at the time of the Seery Order also favors appealability. Even if viewed as implicating the Orders of the bankruptcy court, the potential claims against Mr. Seery at best touch upon the bankruptcy court's July 2020 order regarding Seery's employment as CEO. Appellants' motion was within one year of that order, Appellants were certainly and excusably "surprised" by the application of the Seery Order to causes of action that had not yet accrued as of the time of that order, and thus they would satisfy Rule 60(b)(1).

for leave was "unnecessary" under the Federal Rules. *Id.* Appellants did not do so precisely because *that* would have violated the Seery Order, and they instead chose to proceed in a forthright and candid way—raising the Seery Order with this Court, asking this Court to determine whether the Order was enforceable as it stood, and requesting permission to file claims against Mr. Seery in light of that Order. R.001911-22. Appellants confirmed as much to Highland, stating during the conferral process that Appellants would "raise and brief" the Seery Order. R.001921.[7] That is the *opposite* of contempt.

Highland's argument, at 19-21, that Appellants could have and should have sought bankruptcy court authorization for their proposed amended complaint rather than filing their motion for leave in this Court is misplaced. In a nutshell, Highland argues that Appellants are in contempt for asking the wrong court for permission. But the dockets are replete with trustees and receivers being sued in the wrong courts without imposition of sanctions. And Highland notably fails to identify any other court holding that asking for leave under a *Barton* Doctrine order is sanctionable, much less because such leave was sought in the wrong court.

---

[7] Highland is misguided when it suggests that the Court should ignore these arguments because "*subjective* good faith" does not "insulat[e]" a party from a civil contempt order. Highland Br. 24 (citing *Taggart* v. *Lorenzen*, 139 S. Ct. 1795, 1802-03 (2019) (emphasis added)). *Taggart* addressed "difficult-to-prove states of mind." 139 S. Ct. at 1803. Here, Appellants rely not on their secret "states of mind," but rather their demonstrable good-faith actions reflected in the record.

In any event, the futility of Highland's suggested course of action also counsels against any sanctions. The bankruptcy court was not open-minded on these issues, and even took the opportunity during the contempt proceedings to state its belief that Appellants' claims are "wholly frivolous," which the bankruptcy court suggests should carry weight because it "is in a better position" than this Court "to realize its frivolousness[.]" R.000034; R.000034-35 ("hard sell" to convince it to allow claims).[8] These comments confirm that filing the motion with the bankruptcy court would have been an entirely futile effort.

Ultimately, the futility of filing the motion for leave first with the bankruptcy court, which would have increased the time and expense imposed on the parties, should further mitigate against any sanctions award.

## II. The Bankruptcy Court Extended the *Barton* Doctrine Far Beyond its Proper Reach.

Even if the Court concludes that Appellants' motion for leave violated the Seery Order, the Court should vacate the sanctions order because the *Barton* Doctrine—on which the Seery Order is based—does not apply to Mr. Seery.

---

[8] Furthermore, the Seery Order itself only contemplated potentially granting permission for claims "of willful misconduct or gross negligence against Mr. Seery," R.00584 ¶ 5, thus predetermining the denial of permission for Appellants' potential common law, contract, and negligence claims. In this regard, the Seery Order does not function as a gatekeeper order at all. Rather, it is the equivalent of a non-debtor release or injunction of the sort explicitly prohibited by the Fifth Circuit. *See In re Pacific Lumber Co.*, 584 F.3d 229, 251-52 (5th Cir. 2009).

While the parties agree that *Barton* is binding on this Court, "[a]cquiescence in a precedent does not require approval of its extension." *Dennis* v. *United States*, 339 U.S. 162, 181 (1950) (Frankfurter, J., dissenting).  This Court should thus reject Highland's request, at 27-29, to extend *Barton* in ways not previously recognized in this Circuit.  The Fifth Circuit has never extended *Barton* beyond court-appointed trustees or their appointees.  *See* Appellants' Br. 24.  Highland does not suggest otherwise, arguing instead, at 28, that *Barton* should be extended because Mr. Seery is "equivalent" to a court-appointed trustee.

Highland does not identify a single case from the Fifth Circuit expanding the *Barton* Doctrine to a debtor's officers, and its rhetorical ode to the importance of such officers only emphasizes the improper policy-making nature of its request.  Highland's citation, at 27-28, to a handful of nonbinding, inapposite cases from circuits and district courts fares no better, and highlights the now-rejected purpose-based reasoning that has plagued *Barton* from the outset.  *See* Appellants' Br. 29-31 (discussing the case law rejecting purposivism).

In each case Highland cites, the court found that *Barton* shielded officers from liability for actions related to the bankruptcy proceedings done in their official capacity, rather than in an ordinary business capacity.  Take, for example, *Carter* v. *Rogers*, 220 F.3d 1249 (11th Cir. 2000).  Contrary to what Highland would have this Court believe, the *Carter* court did not allow blanket *Barton* immunity for a trustee

or other bankruptcy-court-approved officer.  Instead, *Barton* immunity only shielded those people from liability for "acts done in the actor's official capacity."  *Id.* at 1252.  In *Lawrence* v. *Goldberg*, the Eleventh Circuit did the same thing again, this time protecting a trustees' agents from liability for things done in their official capacity with respect to the estate.  573 F.3d 1265, 1270 (11th Cir. 2009).

The Sixth Circuit applied the same principles in *In re DeLorean Motor Co.*, 991 F.2d 1236 (6th Cir. 1993), where it held that the *Barton* Doctrine shielded agents of the trustee who "act at the direction of the trustee and for the purpose of administering the estate or protecting its assets."  *Id.* at 1241.  And the Fourth Circuit followed suit in *Gordon* v. *Nick*, which—citing *In re DeLorean Motor Co.*— concluded that *Barton* protected a debtor's managing partner from liability for harm caused by "acts done in the official capacity of the trustee and within the trustee's authority as an officer of the court."  *Gordon* v. *Nick*, 162 F.3d 1155 (4th Cir. 1998) (per curiam) (table).  Finally, the bankruptcy court in *In re Silver Oak Homes, Ltd.*, found that the president and counsel of a debtor were protected by *Barton* because they were exercising their court-appointed authority to "liquidat[e] the debtor's business," and the plaintiffs sued them for an alleged "breach of fiduciary duty in the administration of a bankruptcy estate."  167 B.R. 389, 395 (Bankr. D. Md. 1994).

That is not the case here.  Mr. Seery had no court-appointed authority with respect to the bankruptcy proceedings and he was not "tasked by the Court with

15

liquidating the estate." Appellants' Br. 25. Instead, he was the "CEO of a private company, appointed by its privately designated board … to make private business decisions about Highland, hire and fire employees, and purchase and dispose of Highland's property, all without court direction and without court approval." *Id.* at 25-26. On those facts, it is hard to imagine a better case falling with the exception to *Barton* found in 28 U.S.C. § 959(a) for "acts or transactions in carrying on business connected with such property."

Highland's argument for extending *Barton* also fails because it ignores the fact that the purpose-driven interpretive approach employed in *Barton* is now disfavored both in the Supreme Court and in this Circuit. Whatever the propriety when *Barton* was decided in 1881 of reading an "implied requirement [in]to the statutory code," Appellants' Br. 29, the Supreme Court now recognizes that "deference to the supremacy of the Legislature" forbids such interpretative gamesmanship. *Lamie* v. *U.S. Tr.*, 540 U.S. 526, 538 (2004); *see also Ziglar* v. *Abbasi*, 137 S. Ct. 1843, 1855 (2017) (rejecting "ancien regime" that assumes it a "proper judicial function to provide such remedies as are necessary to make effective a statute's purpose" (citations omitted)); *In re Miller*, 570 F.3d 633, 639 (5th Cir. 2009) ("With no precise legislative history to rely on, we should generally not stray from the language in an attempt to implement 'legislative intent.'").

The reason for rejecting implied causes of action, or an implied ability to invent gatekeeping orders, "can … be condensed to one concern—respect for the separation of powers." *Hernandez* v. *Mesa*, 140 S. Ct. 735, 749 (2020). Rather than expand a doctrine based on some monolithic and overarching presumed "purpose" of the multifaceted bankruptcy laws, this Court should reject the bankruptcy court's extension of *Barton* beyond the narrow application recognized by the Fifth Circuit: to court-appointed trustees, receivers, or their agents. *Barton* has never applied to ordinary corporate officers like Mr. Seery in this circuit, and the Court should not extend it to apply to him now.

## III.   The Bankruptcy Court Lacked Jurisdiction to Issue its Punitive Contempt Order.

Bankruptcy courts "do not have inherent *criminal* contempt powers[.]" *In re Hipp, Inc.*, 895 F.2d 1503, 1511 (5th Cir. 1990) (emphasis in original). Where, as here, a sanction seeks to "punish the contemnor and vindicate the authority of the court," the order is a criminal sanction. *Lamar Fin. Corp.* v. *Adams*, 918 F.2d 564, 566 (5th Cir. 1990). Civil contempt, by contrast, seeks only to compel current compliance, or to compensate another party for harms caused by the contemnor's violation. *Id*. Because the bankruptcy court imposed criminal contempt sanctions, it acted well beyond its jurisdiction.

Highland has no answer for the fact that the sanctions order is clearly punitive and aimed at vindicating the bankruptcy court's authority. Indeed, civil contempt is

conditional.  As the Supreme Court explained, "a flat, unconditional fine totaling even as little as $50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance."  *Int'l Union, United Mine Workers of Am.* v. *Bagwell*, 512 U.S. 821, 829 (1994).  In other words, a civil contempt order is one that may be lifted if the contemnor changes course.  *United States* v. *Rizzo*, 539 F.2d 458, 465 (5th Cir. 1976).  But Highland fails to identify anything conditional about the sanctions order; the bankruptcy court did not afford Appellants the opportunity to do anything to lift the order.  What Appellants might have done—withdraw their motion for leave— was wholly unnecessary because the motion had been denied before the contempt proceedings even began.

Highland further concedes, at 18, that the sanctions order did not compensate it for any injury *caused by* the allegedly contemptuous behavior.  Here again, that makes the sanction criminal.  *Petroleos Mexicanos* v. *Crawford Enters.*, 826 F.2d 392, 399 (5th Cir. 1987).  Highland acknowledges, at 9, that this Court denied the motion for leave before any defendants had been served and, after the motion was denied, it was not renewed.  Highland has not explained how it or Mr. Seery could be injured by something about which they knew nothing.

Highland, at 18, instead relies on counterfactual hypotheticals about motions that "if known to their targets, would be expected to cause their targets to seek legal

18

advice about the claims being asserted against them, and to oppose the motions." But such things never happened here, and hence there was nothing requiring compensation. Indeed, Highland erroneously states, at 36, that its expenses were "associated with [its] efforts to remediate Appellants' contemptuous conduct," notwithstanding that the conduct in question had long-since ceased and there was nothing left to "remediate." The only costs for which the bankruptcy court ordered sanctions were those involved in the contempt proceedings themselves, which Highland initiated. In other words, the but-for cause of the costs was Highland's desire to punish Appellants, not to halt a continuing supposed violation.

And even those costs were unnecessary, particularly for the extensive discovery into issues entirely irrelevant to whether an overt and candid motion for leave violated the Seery Order. The text of the Seery Order and the fact that Appellants filed the motion for leave are not in dispute, and hence there was no need to spend significant time (or *any* time) in discovery. Highland simply used the discovery process to harass Appellants and Mr. Dondero and to drive up the sanctions award it undoubtedly expected to receive given the bankruptcy court's professed animosity toward Appellants. In such instances, an attorneys' fee award is improper, as litigants normally are expected to pay the fees for the litigation tactics they employ. *Buckhannon Bd. & Care Home* v. *W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 602 (2001).

Furthermore, had Appellants first filed the motion for leave in the bankruptcy court, Highland certainly would have expended resources in those proceedings. This Court's quick action on the motion likely saved Highland money relative to briefing the question before the bankruptcy court, eliminating any but-for causation for the fees awarded. *Goodyear Tire & Rubber Co.* v. *Haeger*, 137 S. Ct. 1178, 1187 (2017) (complaining party in a contempt action "may recover only the portion of his fees that he would not have paid but for the misconduct" (cleaned up)); *see also* Appellants' Br. 35-36 (discussing tort principles of causation).[9]

Highland is also mistaken when it suggests, at 37, that fees were appropriate because courts may award costs for time spent litigating contempt motions. The authority on which Highland relies is inapposite or supports Appellants. For instance, in *Ravago Americas L.L.C.* v. *Vinmar International Limited*, 832 F. App'x 249 (5th Cir. 2020) (per curiam), the Fifth Circuit vacated a $50,000 sanction after concluding that it was a criminal sanction because the district court had "offered [the contemnor] no … opportunity to purge the $50,000 sanction." *Id.* at 255-56. Rather, the court concluded, "despite its incidental coercive effect," the sanction clearly sought to "vindicate the court's authority" and was thus "best characterized as

---

[9] Surprisingly, Highland states, at 38, that Appellants have not challenged "the sum Highland spent on its contempt motion" as "unreasonable" or "grossly excessive." That blinks reality.   Appellants made that precise argument, at 37 n.12, demonstrating that Highland engaged in unnecessary discovery during the contempt proceedings to "drive up the supposed damages[.]"

punitive, or criminal." *Id.* at 256.  So too here.  The bankruptcy court imposed a sanction without affording Appellants any opportunity to cure, in an obvious effort to vindicate its authority.[10]

And while the *Ravago* court also affirmed the district court's award of attorneys' fees for time spent to enforce an injunction against soliciting employees to change jobs, the enforcement was far more closely related to a violation and seeming intent to continue such conduct, as opposed to a completed single motion for permission that was denied and never renewed.  Furthermore, the issue was not even in dispute given that the parties in *Ravago*, unlike here, *agreed* that attorneys' fees in that case were a civil remedy.  *Id*. at 260-61.  In this case the attorney's fees were utterly unnecessary and, indeed, were run up beyond all reason through irrelevant discovery against Mr. Dondero.  That is punitive, not compensatory.  *Id.* at 258-59.

Highland's reliance, at 37, on *In re SkyPort Global Communications*, 661 F. App'x 835 (5th Cir. 2016), fares no better.  There again, fees "as an element of damages" are possible where a party seeks sanctions "for the[] enforcement of [an] injunction[.]"  *Id*. at 841.  In this case there was nothing requiring "enforcement"

---

[10] In fact, when discussing the notice requirements for a sanctions order earlier in its brief, Highland argued that the bankruptcy court was "entitled to a degree of flexibility *in vindicating [her] authority*[.]" Highland Br. 22 (quoting *Hornbeck Offshore Servs.* v. *Salazar*, 713 F.3d 787, 792 (5th Cir. 2013)) (emphasis added).

given that the challenged conduct had concluded without imposing any harm or cost on Highland and was not renewed.

The punitive nature of the order is also reflected in its excessive amount. The bankruptcy court sanctioned Appellants with a nearly quarter-of-a-million-dollar sanction for conduct that did not cost Highland a dime. And despite Highland's bald statement to the contrary, at 36, the bankruptcy court pulled a large portion of this sum out of thin air, stating that it merely "assume[d]" there were additional amounts expended on "the contempt matter." R.000037.

The bankruptcy court then took the extraordinary step of trying to insulate herself from appellate review, imposing a $100,000 sanction for every unsuccessful stage of appellate review. *Id.* That harsh sanction is particularly galling considering that the Fifth Circuit expressly prohibits sanctioning parties for exercising their right to seek an appeal. *See Conner* v. *Travis Cnty.*, 209 F.3d 794, 800 (5th Cir. 2000) (per curiam).

On this point, Highland concedes, at 35 n.7, as it must, that this appellate sanction was beyond the bankruptcy court's authority. But Highland cannot get off that easily, given that the $100,000 per appeal sanction was imposed *at Highland's request*. R.000017. Had Appellants elected not to pursue an appeal, fearing the risks of such additional sanctions, Highland's efforts to stifle Appellants' protected right of access to courts and counsel would have been complete, underscoring the punitive

nature of the sanctions Highland sought and the bankruptcy court imposed. This
Court should vacate the criminal sanctions awarded because they are beyond the
bankruptcy court's jurisdiction.

## IV.   The Bankruptcy Court's Order Raises Serious Constitutional Issues.

Finally, beyond the previous flaws, this Court should vacate the sanctions to
avoid the myriad constitutional issues they raise. It is telling that Highland largely
ignores these issues, attempting, at 39-41, to cast them aside as meritless without
any serious discussion. Highland is mistaken.

*First*, the contempt order is the product of serious due process violations.
Appellants' Br. 40-46. Whether from the lack of clear notice of the breadth of the
Seery Order, the lack of opportunity to conform their behavior to avoid the
threatened sanction, or the apparent prejudgment, the sanctions order does not
measure up to the requirements of due process. In response, Highland largely misses
the point, arguing, at 40, that Appellants had notice and due process *during the
contempt proceedings*. That, of course, does not cure the bankruptcy court's failure
to provide clear notice before the motion for leave was filed regarding the breadth
of the Seery Order. And it is not even true of the contempt proceedings themselves,
given the seemingly pre-ordained outcome, the failure to apply the rule of lenity, and
the lack of any opportunity to cure what was erroneously billed as civil contempt.
Highland's reliance, at 40, on the bankruptcy court's own inevitable denial of having

prejudged the issues falls far short, particularly where the facts tell a different story. Whether in characterizing Appellants as "the violators" before Appellants ever had an opportunity to explain its motion for leave, R.001876, as Highland had framed them, improperly shifting the burden of proof onto Appellants, *id.*; *see also La. Educ. Ass'n* v. *Richland Par. Sch. Bd.*, 421 F. Supp. 973 (W.D. La. 1976), *aff'd*, 585 F.2d 518 (5th Cir. 1978), or seeking to deter the right to counsel and appeal by sanctioning the lawyers, *United States* v. *Stein*, 541 F.3d 130, 143 (2d Cir. 2008) (government pressure on third party paying defendant's attorneys' fees burden right to counsel), and threatening further sanctions for any unsuccessful appeal, Appellants effectively had two opponents—Highland and the bankruptcy court—during the contempt proceedings.  That is not due process.

*Second*, the bankruptcy court's unfettered view of its very limited authority raises serious separation of powers concerns.  Article I officials cannot strip an Article III court of its jurisdiction, yet that is what the bankruptcy court's effort to block even a motion for leave effectively does.  But that has it exactly backwards. It is the bankruptcy court whose jurisdiction is derivative of the District Court's.  *In re 7303 Holdings, Inc.*, No. 08-36698, 2010 WL 3420477, at *3 (Bankr. S.D. Tex. Aug. 26, 2010).  By trying to prevent Appellants from filing claims against Mr. Seery in this Court, the gatekeeping and contempt orders raise serious separation of powers concerns.

Highland's mere request, at 41, to extend the *Barton* Doctrine is no response, as *Barton* never reached this far and is itself suspect based on separation of powers concerns. While the latter issue ultimately is for the Supreme Court to decide (and Appellants expressly preserve such a challenge), refusing to *extend* that suspect doctrine is well within this Court's purview.

Similarly, Highland's passing response, at 41, to Appointments Clause concerns, Appellants' Br. 47, is inadequate. The single unpublished decision it cites is from another circuit, adopting without explanation an unpublished district court decision rejecting a narrower Appointments Clause challenge regarding the claimed right to have claims "heard and determined by an Article III federal judge," absent consent to having a bankruptcy judge hear the case. *In re Khan*, No. 10-46901-ess, 2014 WL 4956676, at *45, *46 (Bankr. E.D.N.Y. Sept. 30, 2014). The district court rejected the argument absent relevant decisions, but much water has passed under the Appointments Clause bridge since then. For the reasons Appellants stated, at 46-51, that nonbinding decision should not stand as a bar to this Court concluding that the bankruptcy court's actions and its view of its authority run afoul of the Appointments Clause.

*Third*, the bankruptcy court's order raises a host of other constitutional concerns. A fine that significantly dwarfs any allegedly injury violates the Eighth Amendment, which is offended by "an extreme disparity between crime and

sentence." *United States* v. *Jones*, 569 F.3d 569, 573 (6th Cir. 2009). Indeed, the "touchstone" is "proportionality." *United States* v. *Madison*, 226 F. App'x 535, 548 (6th Cir. 2007). Additionally, by selectively barring Appellants from maintaining certain claims, the bankruptcy court has violated the Takings Clause, as "causes of action are property rights when they protect legally-recognized property interests." *Aureus Asset Managers, Ltd.* v. *United States*, 121 Fed. Cl. 206, 212 (2015). Highland's unexplained assertion, at 38 n.8, that the fee award and sanction "bear[s] some relationship to the gravity of the offense" again falls far short. Nearly $250,000 in sanctions, plus additional sanctions for exercising a right to appeal, in response to a motion that was literally harmless, does not have the slightest relationship to the "gravity" of that non-offense.

In sum, the Court should avoid having to decide these serious constitutional issues by interpreting the Seery Order (and *Barton*) narrowly and vacating the sanctions order.

## CONCLUSION

Apart from animosity and pique, there is little justification for the large sanctions imposed by the bankruptcy court. Appellants did not violate the Seery Order, which itself is on shaky ground. And they acted in good faith to comply with that Order, despite their serious reservations about whether the bankruptcy court had

the authority to issue the Order in the first place. For these and the other reasons discussed above, this Court should vacate the sanctions order.

March 21, 2022                               Respectfully submitted,

Mazin A. Sbaiti                              */s/ Erik S. Jaffe*
Jonathan Bridges                            Erik S. Jaffe*
SBAITI & COMPANY PLLC                        Brian J. Field*
JPMorgan Chase Tower                         SCHAERR | JAFFE LLP
2200 Ross Avenue                            1717 K Street, NW
Suite 4900W                                 Suite 900
Dallas, TX 75201                            Washington, DC 20006
Phone: (214) 432-2899                       Phone: (202) 787-1060
mas@sbaitilaw.com                           ejaffe@schaerr-jaffe.com

                                            *Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2022, a true and correct copy of the foregoing was served via the Court's CM/ECF system on counsel for Appellee and all other parties.

*/s/ Erik S. Jaffe*
Erik S. Jaffe

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the type-volume limitations of Federal Rule of Bankruptcy Procedure ("Rule") 8015(h) as it contains 6,428 words, excluding the portions of the document exempted by Rule 8015(g).

I further certify that this document complies with the typeface requirements of Rule 8015(a)(5) and the type style requirements of Rule 8015(a)(7)(B) because it has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Times New Roman.

*/s/ Erik S. Jaffe*
Erik S. Jaffe